# EXHIBIT 2

## FULL AND FINAL RELEASE AND SETTLEMENT AGREEMENT

This Full and Final Release and Settlement Agreement ("Agreement") is made this 26th day of February, 2019, by Raymond Lyall, Garry Anderson, Thomas Peterson, Frederick Jackson, Brian Cooks, and William Pepper, as individuals, and as representatives of the Certified Rule 23(b)(2) Class ("Plaintiffs"), and the City and County of Denver ("Defendant" or "the City").

**WHEREAS**, on August 25, 2016, Plaintiffs filed a Complaint in the United States District Court for the District of Colorado against the City and County of Denver on behalf of themselves and a putative class, related to the City's alleged custom or practice (written or unwritten) of clearing away an encampment of multiple homeless persons by immediately seizing and discarding the property found there, captioned *Raymond Lyall, et al. v. City and County of Denver*, Civil Action No. 1:16-cv-2155-WJM-CBS.

**WHEREAS**, on  April 27, 2017, the Court certified a Fed. R. Civ. P. 23(b)(2) Class ("Certified Rule 23(b)(2) Class") for injunctive relief defined as follows: "All persons in the City and County of Denver whose personal belongings may in the future be taken or destroyed without due process on account of the City and County of Denver's alleged custom or practice (written or unwritten) of sending ten or more employees or agents to clear away an encampment of multiple homeless persons by immediately seizing and discarding the property found there;"

**WHEREAS**, Counsel for the Parties and Plaintiffs, in their individual capacities and as class representatives, and City officials, participated in extensive settlement discussions between January 17, 2019, and February 26, 2019, including a full-day mediation session with Judge Richard Caschette, and ultimately reached a proposed agreement to resolve the individual and Certified Rule 23(b)(2) Class claims;

**WHEREAS**, Counsel for Plaintiffs, on behalf of the Certified Rule 23(b)(2) Class have fully investigated the facts and law relevant to the above-referenced lawsuit, including the completion of discovery, and said Counsel have concluded that the proposed settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Certified Rule 23(b)(2) Settlement Class Members. Therefore, as a result of the proposed agreement reached, Plaintiffs, as individuals and as representatives of the Certified Rule 23(b)(2) Class Members, desire to resolve the above-referenced lawsuit without a trial to the Court, and to enter into various agreements related to said Lawsuit, in accordance with the provisions and upon the terms and conditions hereafter set forth;

**IN CONSIDERATION** of the terms identified in **Exhibit A** attached to this Agreement to resolve the Certified Rule 23(b)(2) Class claims and **IN CONSIDERATION** of payment by the City of the total sum of Thirty Thousand Dollars ($30,000.00) to the individually named Plaintiffs, Raymond Lyall, Garry Anderson, Thomas Peterson, Frederick Jackson, Brian Cooks, and William Pepper, to resolve their individual damage claims unrelated to the Certified Rule 23(b)(2) Class, issued in six separate drafts in the amount of Five Thousand Dollars ($5,000.00), made payable to the Killmer, Lane & Newman, LLP COLTAF Account, the parties agree as follows:

1

1.      The individually named Plaintiffs, hereby release, acquit, and forever discharge the City and County of Denver, and any all other related persons and entities, both past and present, including but not limited to all departments, divisions, principals, attorneys, agents, employees, employers, successors, servants, elected officials, officers, and directors (the "Released Parties"), of and from any and all liabilities, claims, demands, rights, controversies, agreements, damages, actions, causes of actions, expenses, attorney fees, interest, compensation, judgment and any and all consequential and punitive damages, of whatsoever kind and nature, either in law or in equity, which might exist or might be in any way related to or giving rise to above-referenced Lawsuit, including, but not limited to, any and all claims arising out of the City's alleged custom or practice (written or unwritten) of sending ten or more employees or agents to clear away an encampment of multiple homeless persons by immediately seizing and discarding the property found there.

2.      Plaintiffs, as Certified Rule 23(b)(2) Class Representatives, hereby release, acquit, and forever discharge the  Released Parties, of and from any and all liabilities, claims, demands, rights, controversies, agreements, actions, causes of actions, and judgment, either in law or in equity, for injunctive or declaratory relief which might exist or might be in any way related to or giving rise to above-referenced Lawsuit, including, but not limited to, any and all claims arising out of the City's alleged custom or practice (written or unwritten) of sending ten or more employees or agents to clear away an encampment of multiple homeless persons by immediately seizing and discarding the property found there.

3.      The Parties understand and acknowledge that the terms of this Agreement as it pertains to the Certified Rule 23(b)(2) Class Members, and not to the individual Plaintiffs, must be approved by District Court Judge William Martinez pursuant to Fed. R. Civ. P. 23(e)(2) before the Agreement becomes effective and binding on the Parties. Counsel for the Parties agree that they will take all reasonable steps to ensure that this Agreement is approved by the District Court and becomes effective.  Absent approval from Judge Martinez, the City and County of Denver shall have no obligation to provide any of the Terms identified in Exhibit A to this Agreement and Plaintiffs shall retain, and will not have waived, any of their claims against the City.

4.      The individual Plaintiffs understand and acknowledge that monetary settlement of $30,000 referenced herein is conditioned upon approval of the Denver City Council. In the event that the Denver City Council fails to approve or fund the payment of the monetary consideration set forth herein, this Agreement as to the individual Plaintiffs becomes null and void and Plaintiffs, in their individual capacities, shall retain, and will not have waived, any of their claims against the City. If the monetary settlement is approved by City Council, the City will issue the six settlement drafts in the amount of $5,000 each made payable as set forth above, no later than thirty days after the Resolution is formally signed by the City Council President.

5.      Plaintiffs and the City and County of Denver, acknowledge and agree that this Agreement, and the terms thereof, shall be binding on their agents, attorneys, servants, employers, employees, principals, heirs, executors, administrators, insurers, successors, assigns, subrogees, and any and all other persons or entities which have or may have any claim on behalf of themselves or be entitled to share in any settlement thereof.

6.    The individual Plaintiffs hereby assume responsibility for any and all tax consequences associated with the settlement referenced herein.  The individually named Plaintiffs and their attorneys agree to complete all necessary documents, including, but not limited to W-9 forms in order to fully execute this Agreement.

7.    The individual Plaintiffs understand and agree that the payment of the above-referenced sum is in full settlement of and is a compromise of individually named Plaintiffs' disputed claims against the Released Parties related to the events outlined in the above-referenced Lawsuit and that payment made under this Agreement and the non-monetary terms contained in this agreement are not to be construed as an admission of liability on the part of the persons and entities hereby released; and that any liability by said persons and entities is hereby expressly denied.

8.    The individual Plaintiffs acknowledge that a portion of the consideration given for this Agreement is being given for the full and final release of any and all unknown losses, claims, injuries, costs, expenses, and damages which either may have occurred in the past and are not yet known, or which may occur in the future and are not presently known with respect to their claims for individual damages asserted in the above-referenced Lawsuit or which could have been raised as part of their Lawsuit. The individual Plaintiffs agree to voluntarily and knowingly assume the risk of any mistake of fact, either mutual or unilateral, with respect to said losses, claims, injuries, costs, expenses, and damages, and shall not, under any circumstances, seek to present further claims on behalf of themselves, or on behalf of their agents, attorneys, servants, employers, employees, heirs, executors, administrators, insurers, successors, assigns and subrogees as against the persons and entities herein released.

9.    The individual Plaintiffs further covenant and agree that they will not bring any action at law, proceeding in equity, administrative proceeding, or otherwise, nor prosecute or sue by way of complaint, counterclaim, or by any other manner at all, relating to the facts and claims which were or could have been asserted in their Claim against the Released Parties or in a subsequent lawsuit relating to the facts and allegations concerning the events outlined in the Amended Complaint or any damage to the class members resulting from the cleanup of homeless encampments by Denver.

10.    It is further understood and agreed that no promise, inducement, or agreement not herein expressed have been made to Plaintiffs; that this Agreement contains the entire terms of the agreement between the parties to settle the herein described dispute; that the terms are contractual and not a mere recital; and that this Agreement shall be construed according to the laws of the State of Colorado.

11.    The City and County of Denver understands and acknowledges that Counsel for Plaintiffs are entitled to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988 and agrees to pay such reasonable fees and costs in the amount to be determined by Judge William Martinez, or another judge that is assigned the determination by Judge Martinez.  The amount ultimately awarded by the Court to be paid by the City and County of Denver shall be the only attorney fees and costs to which Plaintiffs' counsel shall be entitled. All parties understand and agree that the attorney fees and costs awarded by Judge Martinez, or another judge authorized to determine what

attorney fees Plaintiff's counsel is entitled to pursuant to 42 U.S.C. § 1988, pursuant to this Agreement, should it be approved by the District Court and City Council, are further intended to and does release, acquit, and forever discharge any and all claims for attorney fees or other litigation expenses which might exist that are not awarded by Judge Martinez, or another judge authorized to determine what attorney fees Plaintiff's counsel is entitled to pursuant to 42 U.S.C. § 1988, as part of the above-referenced Lawsuit.

12.     This Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties, either previously or in connection with negotiations or proceedings connected with this Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, an acknowledgement or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

13.     Neither this Agreement nor any of its terms shall be offered or used as evidence by any of the Parties or their respective counsel in the Action or in any other action or proceeding; provided, however, that nothing contained in this section shall prevent this Agreement from being used, offered, or received in evidence in any proceedings to enforce, construe or finalize the settlement and this Agreement, or from being used in defense of any claims released under the Agreement.

14.     Exhibit A contains the material nonmonetary terms of this Agreement. Exhibit A is incorporated herein and the nonmonetary terms therein are governed by the terms outlined in this Agreement and as enforceable as any other provision of this Agreement.

15.     The parties further agree that they will confer in good faith if they believe any terms set forth in Exhibit A have not been complied with in an effort to resolve the dispute without court intervention.  After good faith conferral, if the parties are unable to resolve their dispute, the parties understand and agree that the party may file an action to enforce Exhibit A to this Agreement. If it is determined by a court of competent jurisdiction that any party has violated Exhibit A to this Agreement, the party that has been determined to have violated the Agreement and/or Exhibit A to this Agreement shall be liable for reasonable attorney fees and costs related to the filing of the enforcement action.

16.     The parties have exchanged drafts of press releases, which the parties agree will constitute their respective initial statements to the press.  With respect to the preparation of the press release, the parties acknowledge that this Agreement was negotiated in good faith and that both parties, as part of the settlement process, have worked diligently and in good faith to ensure that people who are experiencing homelessness in Denver have their personal property rights adequately protected.

17.     Class Counsel, the individually named Plaintiffs, and the City each agree that any public statement other than the above-referenced press release will be consistent with the terms of this Agreement and the press release. The parties have also agreed to conduct a joint press conference on March 1, 2019.

18.     This Agreement may only be amended by written agreement of the Parties.

19.     The parties declare that they have fully and carefully read this Agreement, that they have had the opportunity to consult legal counsel of their own choice concerning this Agreement, that they understand the contents thereof, and that they sign their name upon this Agreement of their own free act.

20.     This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement, even though all Parties do not sign the same counterparts.

Dated: February 26, 2019

IN HIS INDIVDIUAL CAPACITY AND IN HIS
CAPACITY AS A CLASS REPRESENTATIVE:

_____
Raymond Lyall

STATE OF COLORADO                    )
                                     )  ss.
CITY AND COUNTY OF DENVER            )

SUBSCRIBED and SWORN to this ___11th___ day of ~~February~~ March 2019, by
_Raymond Lyall_____.

DEBRA A. SEBASTIAN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20034036670
MY COMMISSION EXPIRES NOVEMBER 6, 2021

_____
Notary Public

My Commission expires: _November, 6, 2021_

6

IN HIS INDIVDIUAL CAPACITY AND IN HIS
CAPACITY AS A CLASS REPRESENTATIVE:

_____

**Garry Anderson**


STATE OF ~~COLORADO~~ Idaho          )
                                     ) ss.
CITY AND COUNTY OF ~~DENVER~~ Ada )

    SUBSCRIBED and SWORN to this 27th day of February 2019, by
Gary Anderson .

_____

Notary Public

My Commission expires: 2.14.25 _____

JORDAN SCHNEIDER
COMMISSION NO. 61106
NOTARY PUBLIC
STATE OF IDAHO

IN HIS INDIVDIUAL CAPACITY AND IN HIS
CAPACITY AS A CLASS REPRESENTATIVE:

**Thomas Peterson**

STATE OF COLORADO                    )
                                     ) ss.
CITY AND COUNTY OF DENVER            )

SUBSCRIBED and SWORN to this _8th_ day of ~~February~~ *March* 2019, by
_Thomas Peterson_____.

_____
Notary Public

My Commission expires: _November 6, 2021_____

DEBRA A. SEBASTIAN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20034036670
MY COMMISSION EXPIRES NOVEMBER 6, 2021

8

IN HIS INDIVDIUAL CAPACITY AND IN HIS
CAPACITY AS A CLASS REPRESENTATIVE:

**Fredrick Jackson**

STATE OF COLORADO                )
                                 ) ss.
CITY AND COUNTY OF DENVER        )

SUBSCRIBED and SWORN to this __28th__ day of February 2019, by
Fredrick Jackson .

> TIMOTHY MOORE
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 201740363325
> MY COMMISSION EXPIRES AUGUST 29, 2021

Notary Public

My Commission expires: __August 29, 2021__

9

IN HIS INDIVDIUAL CAPACITY AND IN HIS
CAPACITY AS A CLASS REPRESENTATIVE:


_____

**Brian Cooks**



STATE OF COLORADO                    )
                                     )  ss.
CITY AND COUNTY OF DENVER            )

  SUBSCRIBED and SWORN to this _____ day of February 2019, by
_____.



_____
Notary Public

My Commission expires: _____

IN HIS INDIVDIUAL CAPACITY AND IN HIS
CAPACITY AS A CLASS REPRESENTATIVE:

_Willie Pepper_

**William Pepper**

_WiLLie_

STATE OF COLORADO            )
                             ) ss.
CITY AND COUNTY OF DENVER    )

    SUBSCRIBED and SWORN to this _4th_ day of ~~February~~ _March_ 2019, by
_Willie Pepper-_            .

_Debra Sebastian_
Notary Public

My Commission expires: _November 6, 2021_

DEBRA A. SEBASTIAN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20034036670
MY COMMISSION EXPIRES NOVEMBER 6, 2021

11

ON BEHALF OF THE CITY AND COUNTY
OF DENVER:

_____

Evan Dreyer, Deputy Chief of Staff

STATE OF COLORADO     )
           ) ss.
CITY AND COUNTY OF DENVER    )

SUBSCRIBED and SWORN to this _1st_ day of _March_ 2019, by Evan
Dreyer, in his capacity as the Deputy Chief of Staff.

_____

Notary Public

My Commission expires: _October 17, 2020_

PATRICIA L. THILL
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20164039559
MY COMMISSION EXPIRES OCT. 17, 2020

12

ON BEHALF OF THE CITY AND COUNTY
OF DENVER:

_____
Michael J. Hyman, Deputy City Attorney

STATE OF COLORADO                    )
                                     )  ss.
CITY AND COUNTY OF DENVER            )

   SUBSCRIBED and SWORN to this _____ day of _____2019, by Michael
J. Hyman, in his capacity as the Deputy City Attorney.

_____
Notary Public

My Commission expires: _____

# EXHIBIT A TO FULL AND FINAL SETTLEMENT AGREEMENT

**A.**     **Public Works Cleanups/Encumbrance Removal**

    **1.**     **Large-Scale Encumbrance Removal/Cleanups** – The City, to the extent reasonably possible, shall give at least seven days' notice prior to a large-scale encumbrance cleanup and shall include such language in its written protocol for large-scale encumbrance removal. The City may conduct large-scale cleanups with less than seven days' notice only if the City determines that a public health or safety risk exists which requires it. If a large-scale cleanup is conducted with less than seven days' notice, the City shall provide reasonable notice of the cleanup, with the determination of reasonableness based upon the nature of the public health and safety risk present in the area. The City will document the public health and safety risk and such documentation will be kept by the City for one year. The written notice shall include the information identified in paragraph (3)(a) – (d). A copy of the notice the City shall provide prior to conducting a large-scale encumbrance cleanup is attached as **Exhibit A-1**.

    **2.**     **Regular Public Works Cleanups** – For the purpose of Exhibit A, the term regularly scheduled cleanups or regular cleanups means when Public Works, three times a week or more, ensures that the public rights-of-way in a specific area are clear of trash and items blocking the right-of way so the area may be power washed (when appropriate) and trash left behind in the right-of-way is thrown away. During the cleanings, any person who is present in the right-of-way to be cleaned is asked to move from the area, and temporarily remove any items they have with them, so that the area may be cleaned. When the cleaning is finished, people may return to the right-of-way with their belongings so long as the right-of-way remains clear for others to use. For regularly scheduled cleanups by Public Works, written notice shall be posted in the area where the regular cleanup will take place and the written notice shall include the days and hours during which the cleanups of the area will be taking place. Currently, these regular cleanups take place between 8 a.m. – 1 p.m., Monday through Friday. Should these hours change, the City shall repost written notice which includes the hours during which the regular cleanup will occur; however, the hours during which these regular cleanups occur will not exceed a period of five hours daily. A copy of the notice the City shall post regarding regularly scheduled cleanups is attached as **Exhibit A-2**.

    At the time this Agreement was entered into, the only location where the City was conducting regular cleanups in the highlighted area identified on the Map attached as **Exhibit A-3**. The City shall only designate another area a regular clean-up area if a public health and safety risk requires that the area be designated as such. If a public health and safety risk can be satisfied

with any other solution, that solution shall be implemented before designating a new area a regular cleanup area. In the event that the City determines that due to a public health and safety risk another area of the City requires regular cleanups, the City shall post notice of the regular cleanup schedule in the specific area where the regular cleanups will occur according to the above-referenced protocol and document the reason for the need for regular cleanups in that specific area. The City will keep such documentation for one year. Should the areas where the regular cleanups are occurring at the time of this Agreement need to be changed or expanded, prior to starting the regular cleanup, the City shall post written notice of an emergency meeting with the Advisory Group (as defined in Section H, below), which will occur within five business days of the posting. During the meeting, the City will state the need to conduct a regular cleanup in the specified area, and provide documentation supporting the City's determination that regular cleanups need to occur in the specified area.

3.   **Information to be Included in Written Notice Provided by the City for any Regular or Large-Scale Cleanup** - The City shall include the following information on any written notice provided for any Public Works regular cleanup or large-scale cleanup:

a. Language indicating that stored property may be retrieved at no cost, without fear of arrest;
b. A phone number for individuals to call who may have questions regarding property retrieval;
c. The location and hours of the storage facility;
d. The length of time that the property shall be stored at the facility and the length of time that the City shall store the property until it shall be disposed of. The City shall store any personal property that does not pose a public health or safety risk for at least 60 days.

4.   **Written Notice for Encumbrance Removal in Areas Not Within Designated Regular Cleanup Area or Area Posted for Large-Scale Cleanup** – The City shall provide forty-eight hour written notice prior to the removal of personal property that does not pose a public health or safety risk, which is in violation of the Encumbrance Ordinance, and is not located in the area of regular Public Works cleanings or in an area where notice has been provided of a large-scale cleanup. The written notice shall be securely affixed to the property and shall include the information identified in above in paragraph (3)(a) – (d). The notice shall also indicate the date the notice was affixed to the personal property. A copy of the notice the City shall affix to unattended personal property that does not post a public health or safety risk is attached as **Exhibit A-4**. Any property determined to pose a public health or safety risk pursuant to City protocol may be disposed of.

5.    **Determination Regarding Whether Personal Property Poses a Public Health or Safety Risk** – The City shall continue with its current written protocol regarding how its employees or contractors determine whether unattended personal property poses a public health or safety risk and should be disposed of or should be stored. That current written protocol states:

    a.  Any items that present an immediate risk to public health or safety, such as illegal drugs, used syringes, medical waste, and perishable food items may be disposed of immediately.

    b.  Any trash or litter, such as used napkins, dirty diapers, food wrappers or used food containers, empty cans, used Styrofoam containers or paper cups, cigarette butts, may be disposed of immediately.

    c.  To ensure appropriate sanitation, the following items will be deemed to be trash and immediately disposed of: mattresses.

    d.  Public Works employees shall bring any weapons found to the attention of a police officer and it will be up to the police officer to determine how the weapon will be stored.

    e.  Any items of personal property that could reasonably be assumed to have value to any person will be collected and stored. These items include: tents, sleeping bags, and any other camping equipment; backpacks, suitcases, duffle bags, and any other containers of personal items; clothing; bicycles; phones, electronic devices, and musical instruments; and other similar identifiable items of personal property, including furniture. Public Works Employees will take particular care to identify, collect and store sensitive personal items and documents, such as wallets and purses, prescription drugs, birth certificates, identification cards, drivers' licenses, and health care documents.

    f.  If there is any question concerning whether an item should be considered as trash or valuable property, the City will assume the property has value and it should be stored.

The determination regarding whether personal property poses a of public health and safety risk governs every section of this Exhibit A. Personal property shall be stored for sixty days unless the property is determined by a City employee or contractor, pursuant to the above protocol, to pose a public health or safety risk.

6.    **Storage Facility Hours** - The City shall extend the hours the storage facility shall be open to 6:00 a.m. – 8:30 a.m. Monday, Tuesday, Wednesday, and

Friday and 12:00 p.m. – 6:00 p.m. on Thursdays. The City shall reassess the need to continue these hours after forty-five days of operation using these hours. The City reserves the right to reduce the storage facility hours if property is not being retrieved during these extended hours. If the City believes that the hours should be changed due to a lack of use or due to a public health or safety risk, the City shall document the reason for its decision and discuss the reasons for any reduction/change in hours at the next regularly scheduled Advisory Group meeting and shall solicit input from the Advisory Group prior to making any final determination regarding the hours of operation for the storage facility. The City will keep any documentation regarding its decision for one year.

**B.** **Notice to Remove Personal Property from Parks or Recreational Areas** – The City shall provide forty-eight hour written notice prior to the removal of personal property that does not pose a public health or safety risk, which is in violation of ordinances applicable to Parks and Recreational Areas. If the unattended personal property poses an immediate public health or safety risk, it may be disposed of. The written notice shall be securely affixed to the property and shall include the information identified in above in paragraph (3)(a) – (d). The notice shall also indicate the date the notice was affixed to the personal property. A copy of the notice the City shall affix to unattended personal property that does not pose a public health or safety risk is attached as **Exhibit A-5**. Any property determined to pose an immediate public health or safety risk pursuant to City protocol shall be disposed of.

**C.** **Formal Notification System that Personal Property Has Been Removed from an Area and Stored by Public Works or Parks and Recreation** – The City shall create a formal system to provide public notification when unattended personal property has been removed by City employees or contractors and stored. The City shall work with service providers, Denver Homeless Out Loud, and the Colorado Coalition for the Homeless, to provide such notification and is in the process of determining the feasibility of creating a page on the City's Website to indicate areas from which unattended personal property was removed and stored. If feasible, the City shall also post information regarding the removal and storage of personal property on its Website and send out email notifications to service providers, including shelters and Denver Homeless Out Loud and the Colorado Coalition for the Homeless. If determined not feasible, the City shall provide the reasons that creating a webpage was not feasible to Plaintiffs and provide alternative options for a formal notification system. The City's notification system shall provide the date when the unattended personal property was removed and stored and the general area where the unattended personal property was located. The notification system shall also include the information identified above in A.3(a) – (d).

**D.** **Storage Lockers** – The City shall place storage lockers in a location at the Minoru Yasui Plaza building. Combination locks shall be provided for the lockers and an estimated 200 lockers shall be available for use depending upon what the space shall accommodate. Lockers shall be accessible Monday through Friday from 7 a.m. to 9 a.m. and 3 p.m. to 7 p.m. Lockers may be used for up to thirty days.

The City reserves the right to reduce the facility hours if the storage lockers are not being used. If the City believes that the hours should be changed due to a lack of use or due to a public health or safety risk, the City shall document the reason for its decision, discuss the reasons for any reduction/change in hours at the next regularly scheduled Advisory Group meeting, and solicit input from the Advisory Group prior to making any final determination regarding the hours of operation for the storage facility.

The lockers shall be installed within a year of entry of this agreement, but barring any unforeseen circumstances, the City estimates that it could take up to six to eight months to get the lockers ordered, installed, and ready for use.

### E.    **Trash Receptacles, Port-O-Lets, & Needle Disposal**

#### 1.    **Trash Receptacles**

a.    The City's Public Works Department shall place a total of fifteen additional trash receptacles in the Ballpark Neighborhood, including the areas of California and Park Ave., 22nd and Stout, and Lawrence and Park Ave. The locations of the trash receptacles shall be determined by the City. The City shall not relocate or remove these trash receptacles for at least three years after installation unless a public health or safety reason requires relocation or removal or due to a lack of use. If a trash receptacle is relocated or removed, the reason shall be documented by the City. The City will keep such documentation for one year.

b.    The City's Parks and Recreation Department shall also expand the number of trash receptacles in the City's parks and recreational areas by 25% during spring and summer months. The locations of such trash receptacles are identified on the map attached as **Exhibit A-6**. Expansion of trash receptacles shall include locations along the Cherry Creek Trail, Colorado Boulevard to Confluence Park, and Johnson Habitat to Globeville. The City shall not relocate or remove these trash receptacles for at least three years after installation unless a public health or safety reason requires relocation or removal or due to a lack of use. If a trash receptacle is relocated or removed, the reason for the removal shall be documented by the City and the documentation will be kept for one year. The City shall also discuss the removal or relocation decision during the next regularly scheduled Advisory Group meeting, and the City shall obtain input from the Advisory Group regarding other possible areas where the trash receptacles might be relocated during the spring and summer months. The City shall consider such input prior to making any final determination regarding the trash receptacle(s).

2.    **Port-o-Lets** – The City shall place two port-o-lets in Sonny Lawson Park in an area that is accessible twenty-four hours a day. The port-o-lets shall be serviced daily. The City shall also determine the feasibility of placing two port-o-lets in the area near the RiNo sign. If feasible, the City shall place two port-o-lets in this area that are accessible twenty-four hours a day. The City shall not relocate or remove the port-o-lets for at least three years unless (a) a public health or safety risk  exists that requires relocation or removal, or (b) if other restroom facilities are provided in the area, or (c) the port-o-lets need to be temporarily removed to address a legitimate City purpose (such as construction in the area that necessitates removal). If the port-o-lets are relocated or removed for a public health or safety reason, the reason shall be documented by the City.

3.    **Needle Disposal ("Sharps") Boxes** – The City shall place sharps disposal boxes in Governor's Park, Lincoln/La Alma Park, Macintosh Park, and consider whether it is feasible to also place a sharps disposal box in Sonny Lawson Park. The City shall not relocate or remove these sharps boxes for at least three years after installation unless a public health or safety reason requires relocation or removal or due to a lack of use. If a sharps box is relocated or removed for a public health or safety reason, the reason shall be documented by the City.

4.    **Relocation or Removal of Trash Receptacle, Port-o-Let or Needle Disposal Boxes** –If the City determines that of one or more of the above-referenced trash receptacles, port-o-lets or needle disposal boxes need to be relocated or removed, the City shall document its reasoning and the City will keep any documentation for one year. The City will also discuss the reasons for the relocation or removal decision at the next regularly scheduled Advisory Group meeting. As part of the meeting, if a trash receptacle, port-o-let or needle disposal box are removed, the City shall obtain input from the Advisory Group regarding other possible areas where the trash receptacle, port-o-let or needle disposal box might be relocated and shall consider such input prior to making any final determination.

F.    **Advisory Group** – The City welcomes the opportunity for City officials to meet with an advisory group of people experiencing homelessness and their representatives on a quarterly basis to obtain feedback on City programs, listen to concerns, and to discuss proposals of additional possible solutions, etc. The City shall make its public libraries and day centers available for this purpose and shall post advance notice of such meetings in the day centers and libraries. The City shall also work with service providers, Denver's Road Home, and/or other advocacy groups to also provide notice of the meetings. At least one mayor staff member shall be present for the regularly scheduled meetings. The advisory group shall have the primary responsibility of providing input on topics to be discussed during the meeting. Meetings of the Advisory Group shall occur once every three months.

**G.     PLAY Program** – The City shall allow use of "homeless ID" cards as a form of picture identification and shall allow the use of labor pay stubs, letters from shelters, and letters from other homeless service providers as documentation for proof of income for participation. The City shall not place a limit on the total number of PLAY passes.

**H.     Mobile Health Unit** – The City shall seek requests for qualifications to operate a Mobile Health Unit ("Unit") and, with a qualifying response to the request for proposal, fund the operation of a Unit. Attendants of the Unit shall be trained to deliver Naloxone. The City is requesting that the Unit have sharps disposal available and shall agree to have the Unit distribute supplies, such as feminine products, gauze, medical tape, triple antibiotic ointment, etc. If possible, depending upon the responses received, the City will also request that members of the Unit be available to treat soft skin tissue infections with antibiotics, in addition to other services. The City shall work with the contractor to determine appropriate locations for the Unit to serve people who are injecting drugs and/or those who are experiencing homelessness.

**I.     Denver Day Works** – The City continues to be committed to considering further expansion of the Denver Day Works program in 2020, as it did in 2019. While the City cannot agree to appropriate funds as part of this settlement for 2020, the City reaffirms its commitment to considering further expansion of this program in 2020.

**J.     Identification and Prescription Medications** – The City shall continue its current practices concerning forms of identification and prescription medication found in property that has been removed and stored by City employees or contractors. The City shall retain all forms of identification and prescription medication found in property that is removed and stored by City employees or contractors even after other personal property that is not reclaimed is disposed of. The City shall keep prescription medication until its expiration date and all forms of identification shall be kept indefinitely unless the identification has an expiration date. Forms of identification with an expiration date shall be kept until the form of identification has expired. Depending upon the circumstances, the forms of identification or prescription medications may be turned over to the Denver Police Department for investigation purposes.

**K.     Work Release** – If the City is able to find a reasonable alternative to using inmates as part of work release to assist with the regular cleanups, the Denver Sheriff Department shall no longer use inmates to clean up trash as part of the regular cleanup process.

**L.     Training** – The City shall train employees and contractors on any changes in policy/procedures and on the procedures/protocols set forth in this Exhibit A. Denver's Road Home shall also develop training on homeless sensitivity for City employees and contractors who regularly interact with people who are experiencing homelessness. Denver Homeless Out Loud and other advocacy groups may provide suggestions or recommendations concerning the sensitivity training, but Denver's Road Home shall retain the ultimate responsibility for developing and providing the training. The sensitivity training shall take place on an annual basis.

# NOTICE

Pursuant to DRMC Sec. 49-246, all public streets, alleys, sidewalks and other public way or place must remain free from unauthorized encumbrances and obstructions.

## ON [*DATE THAT IS 7 DAYS FROM THE POSTING OF THE NOTICE TO THE EXTENT REASONABLY POSSIBLE*] THE CITY WILL REMOVE ALL ITEMS ENCUMBERING OR OBSTRUCTING PUBLIC AREAS DURING A COORDINATED MULTI-AGENCY CLEANUP OF THE AREA

Any property removed will be temporarily stored at [LOCATION] for 30 days. You may claim any property at this location at no charge, and without fear of arrest, between the hours of [TIME] on [DAYS]. After 30 days, property is moved offsite and stored at a different location for an additional 30 days. Call 311 to inquire and/or make arrangements to collect property.

## ALL PROPERTY NOT CLAIMED WITHIN 60 DAYS FROM THE DATE OF REMOVAL WILL BE DISPOSED OF

**EXHIBIT A-1**

# NOTICE

Pursuant to DRMC Sec. 49-246, all public streets, alleys, sidewalks and other public way or place must remain free from unauthorized encumbrances and obstructions.

## THE CITY WILL REMOVE ALL ITEMS ENCUMBERING OR OBSTRUCTING PUBLIC AREAS ON LARIMER STREET AND ARAPAHOE STREET BETWEEN 22nd STREET AND 24th STREET, AND ON 22nd STREET, 23rd STREET, 24th STREET, AND BROADWAY BETWEEN LARIMER STREET AND ARAPAHOE STREET DURING REGULAR CLEANUPS (Monday – Friday, 8am – 1pm)

Any property removed will be temporarily stored at [LOCATION] for 30 days. You may claim any property at this location at no charge, and without fear of arrest, between the hours of [_HOURS_] on [_DAYS_].  After 30 days, property is moved offsite and stored at a different location for an additional 30 days. Call 311 to inquire and/or make arrangements to collect property.

## ALL PROPERTY NOT CLAIMED WITHIN 60 DAYS FROM THE DATE OF REMOVAL WILL BE DISPOSED OF

**EXHIBIT A-2**

# NOTICE

DATE / TIME: _____

Pursuant to D.R.M.C. Chapter _____-____ and other applicable laws, all public streets, alleys, sidewalks and other public spaces must remain free from unauthorized encumbrances and obstructions.

## REMOVE ALL PERSONAL ITEMS FROM THIS AREA IMMEDIATELY

If these items are not removed within 48 hours and are unattended the City and County of Denver will regard the items as abandoned and will remove them.

Any property removed will be temporarily stored for 60 days. You may claim property at no charge, and without fear of arrest, between the hours of [HOURS] on [DAYS]. Call 311 to ask any questions and make arrangements to collect property.

## ALL PROPERTY NOT CLAIMED WITHIN 60 DAYS FROM THE DATE OF REMOVAL WILL BE DISPOSED OF

**EXHIBIT A-3**





**EXHIBIT A-4**

# NOTICE

DATE / TIME: _____

    Pursuant to D.R.M.C. Chapter 39-____ and any applicable park rules, it is unlawful to store personal possessions on public property or to leave anything unattended in a park, parkway, mountain park, or recreational facility.

## REMOVE ALL PERSONAL ITEMS FROM THIS AREA IMMEDIATELY

If these items are not removed within 48 hours and are unattended the City and County of Denver will regard the items as abandoned and will remove them.

Any property removed will be temporarily stored for 60 days. You may claim property at no charge, and without fear of arrest, between the hours of [HOURS] on [DAYS]. Call 311 to ask any questions and make arrangements to collect property.

## ALL PROPERTY NOT CLAIMED WITHIN 60 DAYS FROM THE DATE OF REMOVAL WILL BE DISPOSED OF

**EXHIBIT A-5**





Globeville Landing

Globeville Rec Center

South Platte River Trail

34th & Arkins

| | Proposed Trash Can Location |
| | Existing Trash Can Location |
| | Regional Trail |
| | Park Land |

# South Platte River Corridor

Greenway Workmap Series:   Map 2



0   100  200    400    600 Feet

1 inch = 200 feet when print at 24"x36"





DENVER
PARKS & RECREATION

City & County of Denver

The City and County of Denver shall not be liable for damages of any kind arising out of the use of this information.  The information is provided "as is" without warranty of any kind, express or implied, including, but not limited to the fitness for a particular use.

**EXHIBIT A-6 [2]**



**South Platte River Corridor**

Greenway Workmap Series:   Map 3

| | Proposed Trash Can Location |
| | Existing Trash Can Location |
| | Regional Trail |
| | Park Land |

City of Cuernavaca

City of Cuernavaca

Community Plaza
Community Plaza

Highland Gateway

Skatepark

Railyard

Commons

City & County
of Denver

**DENVER**
PARKS & RECREATION

0  100  200     400       600 Feet

1 inch = 200 feet when print at 24" x36"

The City and County of Denver shall not be liable for damages of any kind arising out of the use of this information. The information is provided "as is" without warranty of any kind, express or implied, including, but not limited to the fitness for a particular use.

**EXHIBIT A-6 [3]**



**South Platte River Corridor**

Greenway Workmap Series:   Map 4

Proposed Trash Can Location

Existing Trash Can Location

Regional Trail

Park Land

0  100  200    400      600 Feet

1 inch = 200 feet when print at 24"x36"

DENVER
PARKS & RECREATION

EXHIBIT A-6 [4]



**South Platte River Corridor**

Greenway Workmap Series:   Map 5



Milstein

West-Bar-Val-Wood

Byers & Pecos

Valverde

Proposed Trash Can Location

Existing Trash Can Location

Regional Trail

Park Land

City & County of Denver

**South Platte River Corridor**

Greenway Workmap Series:   Map 6

0   100   200      400         600
Feet

1 inch = 200 feet when print at 24"x36"

**DENVER**
PARKS & RECREATION

The City and County of Denver shall not be liable for damages of any kind arising out of the use of this information. The information is provided "as is" without warranty of any kind, express or implied, including, but not limited to the fitness for a particular use.

**EXHIBIT A-6 [6]**



Proposed Trash Can Location

Existing Trash Can Location

Regional Trail

Park Land

**South Platte River Corridor**

Greenway Workmap Series:  Map 7

0  100  200    400    600 Feet

1 inch = 200 feet when print at 24"x36"

City & County
of Denver

DENVER
PARKS & RECREATION

The City and County of Denver shall not be liable for damages of any kind arising out of the use of this information. The information is provided "as is" without warranty of any kind, express or implied, including, but not limited to the fitness for a particular use.

**EXHIBIT A-6 [7]**



**Cherry Creek Corridor**

Greenway Map Series: Map 1







**EXHIBIT A-6 [8]**



**Cherry Creek Corridor**

Greenway Map Series: Map 2

Legend:
- Proposed Trash Can Location
- Existing Trash Can Location
- Cherry Creek Trail
- Park Land

City & County of Denver

Quality Hill

Sunken Gardens

Zeckendorf Plaza

0  100  200    400    600 Feet
1 inch = 200 feet when printed at 24" x 36"

DENVER
PARKS & RECREATION

**EXHIBIT A-6 [9]**



**Cherry Creek Corridor**

Greenway Map Series: Map 3

Proposed Trash Can Location

Existing Trash Can Location

Cherry Creek Trail

Park Land

0  100  200      400      600
Feet

1 inch = 200 feet when printed at 24" x 36"







**DENVER**
**PARKS & RECREATION**

**EXHIBIT A-6 [10]**



**Proposed Trash Can Location**
**Existing Trash Can Location**
Cherry Creek Trail
Park Land

**Cherry Creek Corridor**

Greenway Map Series: Map 4



1 inch = 200 feet when printed at 24" x 36"





**DENVER**
**PARKS & RECREATION**

**EXHIBIT A-6 [11]**