**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-2985-WJM-SKC

DENVER HOMELESS OUT LOUD, *et al.*,

      Plaintiffs,

v.

DENVER, COLORADO,[1] *et al.*,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR LIMITED EXPEDITED DISCOVERY**

---

This civil rights dispute is before the Court on Plaintiffs' Motion for Limited

Expedited Discovery (the "Motion"). (ECF No. 58.) Defendants The City and County of

Denver and Governor Jared Polis[2] (jointly, "Defendants") filed a response in opposition

(ECF No. 60), and Plaintiffs replied (ECF No. 62). For the following reasons, the Motion

is granted in part and denied in part.

## I. BACKGROUND

On October 5, 2020, Plaintiffs Denver Homeless Out Loud and several people

experiencing homelessness filed a putative class action against the City and County of

Denver and several of its officials, Governor Polis, an environmental services company,

---

[1] Defendants note that Plaintiffs have incorrectly designated "The City and County of Denver" as "Denver, Colorado." (ECF No. 60 at 1 n.1.)

[2] Governor Polis, in his official capacity, responds to the Motion. Plaintiffs have clarified that they do not seek an injunction against either the Governor in his individual capacity or individual Colorado State Patrol troopers. (ECF Nos. 60, 67 at 1 n.1.)

and numerous city and state law enforcement officers.  (ECF No. 1.)  Plaintiffs later filed

an amended Class Action Complaint (the "Complaint"), alleging numerous state and

federal constitutional violations, breach of contract, and other common law and

statutory claims.  (ECF No. 46.)

       In the Complaint, Plaintiffs allege that Defendants have swept numerous

homeless encampments around Denver without notice and have seized or disposed of

homeless individuals' property without due process.  (*Id.* ¶¶ 1–3.)  The COVID-19

pandemic has allegedly exacerbated the detrimental effects of the sweeps and

endangered the lives of these displaced individuals.  Instead of living in encampments,

Plaintiffs allege the sweeps have forced many people experiencing homelessness to

live in shelters, which, according to the Centers for Disease Control and Prevention

("CDC") guidance, may increase the risk for contracting COVID-19 for people

experiencing homelessness and the community.  (*Id.* ¶ 7.)

       Plaintiffs also filed a Motion for Preliminary Injunction and Expedited Hearing (the

"PI Motion"), which is not yet fully briefed.[3]  (ECF No. 47.)  At issue in the PI Motion are

Plaintiffs' claims under *Monell v. Department of Social Services,* 436 U.S. 658 (1978),

under the Fourteenth Amendment (substantive and procedural due process), under the

Fourth Amendment, and for breach of contract.  (ECF No. 58 at 6.)

       In anticipation of the hearing, Plaintiffs have requested limited expedited

discovery.  (*See* ECF No. 58.)  Plaintiffs acknowledge that Defendants have agreed to

provide certain expedited discovery but have declined to provide much of the

---

[3] The Court anticipates that the PI Motion will be fully briefed by November 16, 2020.
(ECF No. 53.)

documentation Plaintiffs request.  (*See* ECF Nos. 58, 60.)  Plaintiffs have filed a reply explaining why they believe they are entitled to all of the requested expedited discovery. (ECF No. 62.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(d) generally provides that formal discovery will not commence until after the parties have conferred as required by Rule 26(f).  *See Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003).  However, exercising its broad discretion over the control of discovery and pursuant to Rule 26(d), a court may modify the normal time limitations that apply under the discovery rules where good cause is shown by the party seeking expedited discovery.  *See Grayeyes v. Cox*, 2018 WL 3421340, at *1 (D. Utah July 13, 2018) (internal quotation marks and citations omitted).

A party seeking expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures.  *Qwest*, 213 F.R.D. at 419 (citing *Pod–Ners, LLC v. Northern Feed & Bean of Lucerne, Ltd. Liability Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002)).  To determine whether good cause exists, "the Court should examine the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances," which may include consideration of: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Icon Health &*

*Fitness, Inc. v. Johnson Health Tech N. Am., Inc.*, 2011 WL 13136539, at *1 (D. Utah Mar. 1, 2011).

"Expedited discovery may also be appropriate in cases where physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation." *Qwest*, 213 F.R.D. at 419 (citing *Pod–Ners*, 204 F.R.D. at 676). "However, in every case, the court has the discretion, in the interests of justice, to prevent excessive or burdensome discovery." *Id.* (citing Fed. R. Civ. P. 26(b)(2); *Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989) (noting the trial court's power to deal with the problem of over-discovery); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985) (recognizing that district court judges are given broad discretion to supervise the discovery process, and their decisions are subject to review only for abuse of discretion)).

## III. PARTIES' DISCOVERY REQUESTS

### A.    Agreed Discovery Requests

Defendants have agreed to provide several categories of discovery to Plaintiffs before the preliminary injunction hearing:

Both sets of Defendants have agreed to produce:

- Any and all final written policies and/or procedures promulgated regarding the cleanups or area restrictions at Lincoln Park on July 29, 2020, Morey Middle School on August 5, 2020, and/or the South Platte River on September 15, 2020; and

- Any and all policies and/or procedures related to the declaration of a public health emergency that led to the area restrictions at Lincoln Park on July 29, 2020, Morey Middle School on August 5, 2020, and/or the South Platte River on September 15, 2020.

4

Denver Defendants have agreed to produce:

• Written records showing what property was stored relating to the area restrictions at Lincoln Park on July 29, 2020, Morey Middle School on August 5, 2020, and/or the South Platte River on September 15, 2020;

• Written communications between City officials and the CDC regarding CDC guidance related to homeless encampments during COVID-19; and

• Video recordings and/or transcripts of press conferences and/or press releases referencing the area restrictions at Lincoln Park on July 29, 2020, Morey Middle School on August 5, 2020, and/or the South Platte River on September 15, 2020, including but not limited to the press conferences conducted on July 29, 2020 (by Defendant Robinson) and July 31, 2020 (by Defendants Hancock and McDonald).

Defendant Jared Polis has agreed to produce:

• Any and all video recordings and/or transcripts of press conferences and/or press releases referencing the cleanups or area restrictions at Lincoln Park on July 29, 2020 including but not limited to the press conferences conducted on: July 23, 2020 (by Defendant Polis); and

• Any and all written communications (including, but not limited to, emails, text messages, and/or call logs) to and/or from Defendant Polis and/or his executive staff relating to the CDC's guidance on Unsheltered Homelessness and Coronavirus Disease 2019 (COVID-19) for Homeless Service Providers and Local Officials and People Experiencing Homelessness. This request is not intended to cover any constituent communications that mention the CDC guidance.

(ECF No. 58 at 1–2.)

    **B.    Disputed Discovery Requests**

        Plaintiffs seek the following discovery, which Defendants oppose providing at this

stage of the proceedings:

• Any and all written communications (including emails, text messages, and/or call logs) to and/or from Defendant McDonald (and his subordinates at DDPHE ["Denver Department of Public Health and Environment"]), Defendant Hancock (and the Mayor's staff), Defendant Bronson (and the City Attorney's staff), Defendant Robinson (and the Department of Public Safety's staff) relating to the sweeps at Lincoln Park (on July 29, 2020), Morey Middle School (on August 5,

2020), and/or the South Platte River (on September 15, 2020) (including drafts);

• Any and all evidence and/or written communications (including, but not limited to, emails, text messages, and/or call logs) related to the declaration of a public health emergency that led to the sweeps at Lincoln Park (on July 29, 2020), Morey Middle School (on August 5, 2020), and/or the South Platte River (on September 15, 2020);

• Any and all written communications (including, but not limited to, emails, text messages, and/or call logs) to and/or from Defendant McDonald (and his subordinates at the Denver Department of Public Health and Environment), Defendant Hancock (and the Mayor's staff), Defendant Bronson (and the City Attorney's staff), Defendant Robinson (and the Department of Public Safety's staff) relating to the CDC's guidance on Unsheltered Homelessness and Coronavirus Disease 2019 (COVID-19) for Homeless Service Providers and Local Officials and People Experiencing Homelessness;[4] and

• Any and all written records showing what property was seized, stored, and/or destroyed relating to the sweeps at Lincoln Park (on July 29, 2020), Morey Middle School (on August 5, 2020), and/or the South Platte River (on September 15, 2020).[5]

(ECF No. 58 at 2–3.)

In the response, Defendants ask for reciprocal discovery. Specifically, Defendants request that, should the Court be inclined to grant Plaintiffs any expedited discovery into past events or prior conduct, the Court require Plaintiffs to provide Defendants with the necessary information to defend against such allegations. (ECF No. 60 at 10.)

---

[4] According to Plaintiffs, the Denver Defendants have only agreed to produce the following subset of this information: "Written communications between City officials and the CDC regarding CDC guidance related to homeless encampments during COVID-19." (ECF No. 58 at 3.)

[5] According to Plaintiffs, the Denver Defendants have only agreed to produce the following subset of this information: "Written records showing what property was stored relating to the area restrictions at Lincoln Park (on July 29, 2020), Morey Middle School (on August 5, 2020), and/or the South Platte River (on September 15, 2020)." (ECF No. 58 at 3.)

**IV. PARTIES' ARGUMENTS**

Plaintiffs summarily argue that early discovery is appropriate, given the impending preliminary injunction hearing.  (ECF No. 58 at 6.)

Next, Plaintiffs contend their discovery requests are limited and narrowly tailored to the issues presented to the Court in the PI Motion: two constitutional claims, a contractual claim, and their *Monell* theory of liability.[6]  (*Id.* at 6.)

Third, Plaintiffs state the discovery is sought to provide the Court with evidence relevant to the PI Motion.  (*Id.* at 7.)  For instance, Plaintiffs state they must demonstrate deliberate indifference for their Fourteenth Amendment claim and *Monell* theory by showing that Defendants knew of a risk of exposing Plaintiffs to danger, and despite that risk, took action to expose them to such danger.  (*Id.*)  They assert pre-sweep and post-sweep communications would reveal such knowledge.  (*Id.*)  Further, Plaintiffs state they must show that Defendants customarily destroyed their property to prove their Fourth Amendment claim, which requires records related to property seizure, storage, and destruction.  (*Id.*)  Finally, to prove lack of notice in connection with their Fourth Amendment, Fourteenth Amendment, and breach of contract claims, Plaintiffs argue they require evidence related to the pre-planning of the sweeps, including communications to and/or from Defendants related to the sweeps.  (*Id.*)

Fourth, Plaintiffs assert the burden on Defendants is "not substantial," as they would have sought—and will seek—the same discovery during the normal course of the

_____

[6] Based on the Court's review, it appears as though Plaintiffs' PI Motion is based on their Fourteenth Amendment procedural and substantive due process claims, Fourth Amendment claim, and breach of contract claim.  (ECF No. 47.)

litigation.  (*Id.*)

Finally, Plaintiffs assert that although their request is in advance of the normal discovery process, the request is not unreasonable because of the pending PI Motion. (*Id.*)

In response, Defendants state that Plaintiffs' requests are overly broad, possibly privileged, impermissibly backward-looking, and prejudge that the requested discovery will be permitted in the normal course of the litigation.  (ECF No. 60.)

First, Defendants characterize Plaintiffs' requests as "so broad" as to be potentially impermissible in the normal course of discovery and as a "fishing expedition," rather than an attempt to support injunctive relief.  (*Id.* at 1.)  Requests 1, 2, and 3 (as numbered by Defendants in their response) use the overly broad phrases "relate to," "and their staff," and "his subordinates" in seeking documents from Mayor Michael Hancock, City Attorney Kristin Bronson, Director Murphy Robinson of the Denver Department of Public Safety, and Director Bob McDonald of the DDPHE. Defendants point out that the scope of the term "staff" is unclear and overbroad: the Mayor's staff likely encompasses at least 31 people; DDPHE has five divisions over which Executive Director McDonald presides; the Department of Public Safety encompasses four safety departments; and the City Attorney's Office likely seeks information from at least 50 to over 100 individuals.  (*Id.* at 5.)

Next, Defendants emphasize that the requests encompass communications between the City Attorney and her staff, many of which are likely protected by attorney-client privilege and/or deliberative process privilege.  (*Id.*)  They also protest that the

requests set no reasonable limitations on the scope of the requested information.  (*Id.*)

Defendants also state that the information Plaintiffs seek is not unusually difficult or impossible to determine, particularly considering the length of Plaintiffs' Complaint (112 pages) and initial motion for preliminary injunction (82 pages).  (*Id.* at 6.)  With the information Defendants have agreed to provide and the information to be filed in the response to the PI Motion, Defendants posit that Plaintiffs should be able to present their case at the evidentiary hearing without the need for additional expedited discovery. (*Id.*)

Defendants argue Plaintiffs' requests are backward-looking and focus only on incidents in the past.  (*Id.*)  Because preliminary injunctive relief is reserved for harms that have yet to occur, Defendants contend that the requests can have no bearing on the irreparable harm prong of Plaintiffs' PI Motion.  (*Id.*)

Finally, Defendants assert that Plaintiffs' assertion that "[t]he burden on Defendants is not substantial given that the documents and information sought would need to be produced during the normal course of the litigation" misstates the issue.  (*Id.* at 7.)  Although Defendants do not contest that Plaintiffs will request these documents in regular discovery, they observe that Plaintiffs' position "severely prejudges the relevance and proportionality of such requests (to say nothing of the success of any objections Defendants would assert)."  (*Id.*)

To that end, Defendants argue the point is not that they would possibly have to produce the documents during the normal course of litigation—expedited discovery is not the "normal" course.  Requiring Defendants to review hundreds of documents and

tens of thousands of communications,[7] determine relevancy, and produce responsive

documents or prepare a privilege log for any responsive documents not produced, all

on a highly compressed timeline while preparing their responses to the PI Motion,[8] is

"unduly burdensome" and "not proportional to the needs of this case—including the

pending [PI Motion]."  (*Id.*)

Governor Polis responds separately, noting that as an initial matter, he is not a

proper party to the preliminary injunction proceedings but recognizes that some

discovery may be required from him nonetheless.  (*Id.* at 8.)  To that end, he agreed to

the discovery listed above in Part III.A but argues the additional requested discovery

extends far beyond that which is necessary to ascertain whether there are grounds to

enjoin him on an ongoing basis.  He highlights that Plaintiffs' discovery requests lump

all Defendants together and are neither narrowly tailored nor proportional to the

Governor's limited role in this case: directing Colorado State Patrol to provide additional

security for the Lincoln Park sweep.  (*Id.*)

In their reply, Plaintiffs attempt to demonstrate the tailored nature of their

requests by delineating what information they do *not* seek.  (ECF No. 62 at 1–2.)  They

argue they require evidence of past misconduct to prove their *Monell* claim.  (*Id.* at 2.)

---

[7] Defendants attempt to put into perspective for the Court the volume of communications that would need to be collected and searched to respond to Plaintiffs' requests and state that "as of the date of the filing of this Motion, the email accounts of the four named Denver Officials alone—without consideration of their staff or subordinates—contain over 375,000 emails totaling approximately 35 GB of data."  (ECF No. 60 at 7.)

[8] While the Motion was pending, Defendants filed their responses to the PI Motion on November 6, 2020 (ECF Nos. 67, 68).  Defendants attached numerous exhibits to their responses that directly relate to several of Plaintiffs' discovery requests and which Plaintiffs will very likely find helpful in preparing for the evidentiary hearing.

They reiterate that Defendants would have to provide the requested discovery later in the litigation anyway, so the Court should order the discovery now. (*Id.*)  They explain in great detail the relevance of the documents they seek and try to explain its limited nature—to leadership teams and executive staff.  (*Id.* at 3.)  They contest that the privilege doctrines bar their discovery requests, particularly in the civil rights context. (*Id.* at 4–8.)  Finally, they argue Defendants can adequately defend against the claims in the PI Motion because the evidence is in their possession.  (*Id.* at 8.)

## V. ANALYSIS

In analyzing Plaintiffs' discovery requests and the parties' arguments, the Court has carefully considered the *Icon Health* factors.  For the following reasons, the Court grants in part, and denies in large part, Plaintiffs' Motion.

**Preliminary Injunction.**  As to the first factor, it is undisputed that Plaintiffs' discovery requests relate to an impending evidentiary hearing on the PI Motion.  The remaining four factors, however, are hotly contested.

**Breadth of Discovery Requests.**  In applying the "good cause" standard under Rule 26(d), a court should consider the scope of the requested discovery.  *See Qwest*, 213 F.R.D. at 419.  Plaintiffs argue their discovery requests are not overbroad and are "narrowly tailored," but their own statements belie their argument.  In their reply, Plaintiffs admit they do not know what they are truly asking Defendants to provide; specifically, they admit that the terms "staff" and "subordinates" "could have been clearer (Plaintiffs do not know how Defendant Denver organizes its departments, or how these departments characterize certain staff)."  (ECF No. 62 at 3 n.2.)

To the extent Plaintiffs dispute Defendants' argument that their requests would require searching "every single employees' [*sic*] emails, texts, and call logs" and state they only request documentation related to Defendants' executive staff (*id.* at 3 n.1), their argument is unpersuasive.  Plaintiffs do not provide the Court with an estimate, much less a specific number, of people comprising the executive staff of each Defendant, or a sense of how many documents are at issue.  *See Qwest*, 213 F.R.D. at 420 (observing the relief requested in plaintiff's motion "belies the reference to 'limited discovery'").  By contrast, Defendants state the e-mail accounts of the four named Denver Officials alone contain over 375,000 e-mails totaling approximately 35 GB of data.  (ECF No. 60 at 7.)

Moreover, the cases on which Plaintiffs rely are inapposite.  In another civil rights action, *Carranza v. Reams*, Case No. 1:20-cv-0977-PAB-SKC, ECF No. 36, (D. Colo. Apr. 21, 2020), the court permitted expedited discovery of a limited number of daily reports, copies of policies and procedures concerning COVID-19, and an inspection of a jail by a medical expert.  (*See* ECF No. 58-1.)  In *Grayeyes v. Cox*, the court authorized limited expedited discovery, including taking two depositions of election officials close to an election and serving requests for production related to a complaint and its subsequent investigation.  *See Grayeyes v. Cox*, 2018 U.S. Dist. LEXIS 187276, at *5 (D. Utah July 3, 2018).  To the contrary, Plaintiffs in this case wish to obtain "any and all" evidence of communications among multiple city and state officials and their executive staff, some of which Defendants contend may be subject to attorney-client or deliberative-process privilege.

12

Like the *Qwest* court, the Court is "hard pressed to define the outer boundary" of Plaintiffs' requests.  *See Qwest*, 213 F.R.D. at 420.  As Defendants point out, Plaintiffs use broad terms such as "any and all" and "related to" in their requests.  (ECF No. 58 at 2–3.)  *Cf. W. Res., Inc. v. Union Pac. R.R. Co.*, 2001 WL 1718368, *3 (D. Kan. Dec. 5, 2001) (noting that the "use of a broad term such as 'relate to' provides no basis upon which a party can reasonably determine what documents may or may not be responsive").  Under these circumstances, the Court finds that Plaintiffs' expedited discovery requests are impermissibly overbroad.

***Purpose for Requesting Discovery.***  As noted above, Plaintiffs state that they request the discovery to provide the Court with evidence relevant to their PI Motion. (ECF No. 58 at 7.)  The Court finds this purpose to be consistent with furtherance of the PI Motion, and an appropriate advancement of the litigation.

As explained throughout this Order, however, the potential relevance of the requests is not the most pressing concern—though the Court is mindful of Defendants' assertion that Plaintiffs have essentially assumed their requests are relevant and would need to be produced in the normal course of discovery, which "severely prejudges" the relevance, proportionality, and ultimate discoverability of the documents requested. (ECF No. 60 at 7.)  Rather, it is the scope of the requests in the limited time available that gives the Court pause.

Because the Court finds that Plaintiffs' expedited discovery requests are broad, burdensome, and directed toward the merits of the dispute, this factor weighs against expedited discovery.  *See Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst.*

*for Clinical Research*, 2016 WL 7325466, at *3 (S.D. Cal. Dec. 16, 2016) (citing *Palermo v. Underground Sols., Inc.*, 2012 WL 2106228, at *3 (S.D. Cal. June 11, 2012) (denying plaintiff's motion for expedited discovery in advance of its motion for preliminary injunction where plaintiff's request "appear[ed] to be a vehicle to conduct the entirety of his discovery prior to the Rule 26(f) conference" and would impose an undue burden on defendant)); *see also Better Packages, Inc. v. Zheng*, 2007 WL 1373055, at *5 (D.N.J. May 17, 2006) (granting the requests "would lead to the parties conducting nearly all discovery in an expedited fashion under the premise of preparing for a preliminary injunction hearing, which is not the purpose of expedited discovery").

   ***Undue Burden.*** In addition to the breadth of discovery prong, the undue burden element most concerns the Court. Plaintiffs' repeated reliance on the idea that simply because they would request this discovery in the normal course of litigation means the Court should grant the instant Motion is conclusory and unavailing. Importantly, all Plaintiffs can demonstrate at this juncture is that the discovery would be *requested*, not necessarily *granted* in full or in part. Further, their position ignores the logistical burden on Defendants to produce the requested discovery in a compressed timeframe.

   As discussed in this Order, the burden on Defendants to produce these documents before the hearing on the PI Motion would be substantial, given the unknown number of individuals in play and the potentially very large volume of communications at issue. Further, Governor Polis underscores that the burden of the requested discovery is "especially acute at this time," as Colorado faces a marked increase in coronavirus cases and the largest fires in Colorado's history, "both of which

necessitate additional state action and the Governor's attention."  (ECF No. 60 at 9.)

Another potential issue Defendants raise is that the documents requested from the City Attorney and her staff may be subject to attorney-client or deliberative-process privilege.  (ECF No. 60 at 5.)  Plaintiffs protest that Defendants have not met their burden in demonstrating that the deliberative-process privilege precludes the Court from ordering expedited discovery; they argue that purely factual material is not protected, courts have found the privilege is outweighed by the interest in disclosure where federally protected civil rights are at issue, and the privilege is a qualified one that can be overcome by a sufficient showing of need.  (ECF No. 62 at 4–5.) Additionally, Plaintiffs argue Defendants' attorney-client privilege argument is vague, does not necessarily show that Plaintiffs seek communications between a lawyer and client for the primary purpose of obtaining legal advice, and may not cover the requests because the crime or fraud exception to attorney-client privilege extends to intentional torts.  (*Id.* at 6–8.)

At this juncture of the litigation, with the overly broad requests before the Court, even under the fairly flexible "good cause" standard, the Court finds that Plaintiffs have failed to "show[] sufficient cause shown to justify expedited discovery . . . , given the breadth of Plaintiffs' document requests and the likelihood of disputes over assertions of privilege by Defendants."  *Raza v. City of N.Y.*, 998 F. Supp. 2d 70, 75 (E.D.N.Y. 2013).  In the Court's assessment, the aggregate burden on Defendants to fully or even substantially comply with Plaintiff's discovery requests is simply too great at this preliminary juncture of the litigation.

*Timing.*  Given the current posture of the case, the Court finds the timing of Plaintiffs' request to be appropriate.  The PI Motion was filed with the Complaint, and the hearing on the PI Motion has yet to be set.  Under such circumstances, the Court does not find the expedited discovery request to be too far in advance of the normal discovery process.

*Conclusion.*   Given that Defendants have agreed to produce certain limited discovery as set forth in Part III.A above, the Motion will be granted to the extent it seeks production of these materials.  In light of the Court's considerable concerns about the scope of Plaintiffs' requests, and the undue burden production would place on Defendants in the limited time available, the Court denies the Motion in all other respects.

## VI. COURT-ORDERED DISCOVERY

In considering what evidence would be most helpful in ruling on the PI Motion, the Court has additionally identified at least three other categories of information it will direct Defendants to provide, as set forth below.  The Court finds that this information will assist it in its consideration of the PI Motion, and as a consequence in its discretion, and in the exercise of its inherent authority over this litigation, the Court directs Defendants to provide the following discovery:

•      Any evidence concerning the possibility of sanctioned homeless encampments, which were discussed by Mayor Hancock in the summer of 2020 but have seemingly not come to fruition, including funding available, approved locations for sanctioned encampments, and the length of time anticipated to move people experiencing homelessness to such sanctioned encampments;

•      Any evidence regarding the frequency and geographic scope of COVID-19 testing in homeless encampments in Denver, including a comparison of the rates

16

of COVID-19 positivity in encampments versus congregate shelters; and

•    Any evidence that provides context for Director of the Public Health Investigations Division of the DDPHE Danica Lee's statement that "Currently in Denver, of the 326 deaths of people from COVID-19 in Denver to date seven have been people who were experiencing homelessness from COVID-19." (ECF 68-1 ¶ 34.) The Court wishes Defendants to put these numbers in perspective by providing the latest estimate of the number of people experiencing homelessness in Denver.

## VII. CONCLUSION

For the reasons stated above, the Court ORDERS:

1.    Plaintiffs' Motion for Limited Expedited Discovery (ECF No. 58) is GRANTED to the extent the parties shall exchange the agreed-upon discovery set forth above in Part III.A by **December 1, 2020**, and it is otherwise DENIED, without prejudice to Plaintiffs' ability to propound these discovery requests in the course of merits discovery later in this litigation.

2.    Defendants shall serve the Court-ordered discovery set forth above in Part VI on Plaintiffs and shall also file these discovery materials with the Court by **December 1, 2020**.

3.    A two-day, in-person evidentiary hearing on Plaintiffs' PI Motion (ECF No. 47) is hereby set for **December 15 and 16, 2020 at 9:00 a.m.** in Courtroom A801 of the Alfred J. Arraj United States Courthouse. The Court will use the following procedure at the Evidentiary Hearing: Counsel will have no more than five minutes each for opening statements. Plaintiffs and Defendants will then put on their evidence, to be followed by

Plaintiffs in the event they have true rebuttal evidence. Counsel for both sides shall have no more than ten minutes each for closing statements. The parties shall familiarize themselves with the undersigned's Revised Practice Standards with regard to evidentiary hearings, and with particular emphasis on WJM Revised Practice Standard V.F.1, which requires the parties to meet and confer regarding the proposed exhibits and, to the maximum extent possible, stipulate to the authenticity and admissibility thereof.  The parties are also encouraged to consult the "Morning-of-Trial Deliverables" portion of the undersigned's Trial Preparation Conference & Pretrial Checklist, available here.

Dated this 10th day of November, 2020.

BY THE COURT:

William J. Martínez
United States District Judge

18