IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-2985-WJM-SKC

DENVER HOMELESS OUT LOUD, *et al.*, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

DENVER, COLORADO, *et al.*

    Defendants.

---

**RESPONSE TO DEFENDANTS HANCOCK, MCDONALD,
AND ROBINSON'S MOTION TO QUASH SUBPOENAS,
OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

---

Plaintiffs, by and through undersigned counsel, hereby submit this Response to Defendants Hancock, McDonald, And Robinson's Motion To Quash Subpoenas, Or, In The Alternative, For A Protective Order [Doc. #88], and state in support as follows:

1. **INTRODUCTION**

Denver's final policymakers,[1] Defendants Hancock, McDonald, and Robinson, seek to avoid testifying at the preliminary injunction hearing about whether their decisions relating to the sweeps caused the violation of Plaintiffs' constitutional rights. Defendants Hancock, McDonald, and Robinson all have personal knowledge relating to the sweeps. Their state of mind is directly

---

[1] During conferral on this motion, Plaintiffs' counsel did not "insist[] that Defendants' testimony was essential to Plaintiffs' ratification theory of municipal liability" nor was he "opaque as to the specific evidence being sought from Defendants." [Doc. #88], p. 6. Plaintiffs' counsel relayed to counsel for Defendants that part of Plaintiffs' *Monell* theory of liability was that Defendants are final policymakers and that, therefore, their testimony about their decisions, knowledge, and state of mind relating to the sweeps was directly relevant to the issues being decided by this Court at the preliminary injunction hearing. During the conferral, counsel for Defendants did not contest that Defendants are final policymakers for Defendant Denver.

1

at issue given that they are final policymakers. And, their decisions form the basis for *Monell* liability as to the sweeps. Simply put, their testimony is *essential* to Plaintiffs' case against Defendant Denver. Courts have recognized that the testimony of high-ranking officials is appropriate when they are final policymakers whose actions, and state of mind, are at issue in the litigation. *See Green v. Baca*, 226 F.R.D. 624, 648-49 (C.D. Cal. 2005); *Thomas v. Baca*, No. CV 04-8448-DDP (SH), 2006 U.S. Dist. LEXIS 99261, at *1-3 (C.D. Cal. May 10, 2006).

And, even when high-ranking government officials (and, specifically, higher-ranking government officials than Defendants) are not final policymakers but have this sort of personal knowledge and centrally relevant evidence, courts have routinely allowed their testimony to proceed as any other witness. *See Freedom from Religion Found., Inc. v. Abbott*, No. A-16-CA-00233-SS, 2017 U.S. Dist. LEXIS 170183, at *31 (W.D. Tex. Oct. 13, 2017) (allowing deposition of the governor of Texas); *Sherrod v. Breitbart*, 304 F.R.D. 73, 76 (D.D.C. 2014) (allowing deposition of Secretary of Agriculture); *Energy Capital Corp., v. United States*, 60 Fed. Cl. 315, 318 (Fed. Cl. 2004) (permitting videotaped deposition of former Secretary of Housing and Urban Development); *FTC v. Nudge, LLC*, No. 2:19-cv-00867-DBB-DAO, 2020 U.S. Dist. LEXIS 218269, at *8-9 (D. Utah Nov. 20, 2020) (allowing testimony of attorney general); *Andrich v. Dusek*, No. CV-17-00173-TUC-RM, 2019 U.S. Dist. LEXIS 136133, at *4-5 (D. Ariz. Aug. 13, 2019) (allowing deposition of Arizona's Director of Corrections).

This Court should follow precedent and allow Plaintiffs to call Defendants, who are Denver's final policymakers as to decisions relating to the sweeps, to testify at the preliminary injunction hearing.

2. **STANDARD OF REVIEW**

Under Rule 45, a court must quash or modify a subpoena if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Defendants bear the burden of showing good cause for the issuance of an order quashing Plaintiffs subpoena. *See, e.g., Morales v. E.D. Etnyre & Co.*, 228 F.R.D. 694, 696 (D.N.M. 2005) ("The party seeking a protective order or moving to quash a subpoena has the burden to demonstrate good cause . . ."); *Wopsock v. Dalton*, No. 2:12-cv-0570-RJS-EJF, 2018 U.S. Dist. LEXIS 54605, at *11-12 (D. Utah Mar. 29, 2018).

3. **ARGUMENT**

There is substantial case law requiring a high-ranking government official to testify where the party seeking the deposition can show that the government official has personal knowledge relevant to the claims at issue. *Fish v. Kobach*, 320 F.R.D. 566, 579 (D. Kan. 2017) (holding that when "the official is shown to have exclusive first-hand knowledge directly relevant to the claims being litigated, this standard is met"); *Church of Scientology v. IRS,* 138 F.R.D. 9, 11 (D. Mass 1990) (holding that "[a]n exception to this general rule exists concerning top officials who have direct personal factual information pertaining to material issues in an action"); *see also Spreadmark, Inc. v. Federated Department Stores, Inc.*, 176 F.R.D. 116 (S.D.N.Y. 1997) (permitting the plaintiff to depose the corporate defendant's chief executive officer where the officer likely possessed relevant personal knowledge).

Some courts have outlined an additional requirement that the information sought to be elicited must be unobtainable elsewhere. *Alexander v. FBI*, 186 F.R.D. 1, 4 (D. D.C. 1998) (holding that "high ranking government officials are generally not subject to depositions unless they have some personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere"); *Community Federal Sav. & Loan Asso. v. Federal Home Loan Bank Bd.,* 96 F.R.D. 619 (D. D.C. 1983) (holding that the

3

deposition of an agency official may be permitted when the official has relevant first-hand knowledge of matters material to the decision and not available from some other source); *Warzon v. Drew*, 155 F.R.D. 183, 185 (E.D. Wis. 1994) (holding that "[a]n exception to th[e] general rule exists concerning top officials who have direct personal factual information pertaining to material issues in an action . . . [and] where the information to be gained . . is not available through any other source.").

However, not all courts require that the government official be the "exclusive source" of the information sought. *FTC*, 2020 U.S. Dist. LEXIS 218269, at *8-9; *see Hunt v. Cont'l Cas. Co.*, 2015 U.S. Dist. LEXIS 44304, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015) (noting that "formal exhaustion" has not "been viewed as an absolute requirement").

### 3.1 Defendants are final policymakers, making their testimony essential to Plaintiffs' *Monell* claims.

Plaintiffs agree with Defendants that they are high-ranking public officials. In fact, their rank within Defendant Denver makes them, by operation of state law, final policymakers. Denver City Charter §§ 2.2.1-2, 2.3.2, 2.4.2, 2.6.1, 2.6.5, 2.12.1. Defendants did not dispute that Defendant Hancock, McDonald, and Robinson are final policymakers in their response to Plaintiffs' motion for preliminary injunction. *See* [Doc. #68], pp. 22-23. In their motion to quash, Defendants acknowledge the unreviewable authority that Defendants possess. [Doc. #88], p. 4. And, because of that authority, the law is clear that they are final policymakers. *See Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986). Since Defendants are final policymakers, their testimony is *crucial* to Plaintiffs' *Monell* claims and this Court should allow Plaintiffs to call them to testify at the preliminary injunction hearing.

First, since they are final policymakers, Defendants' decisions and actions (and rationale for those decisions and actions) are the decisions and actions (and rationale for those decisions

4

and actions) of Denver. *See Pembaur*, 475 U.S. at 480; *Gronowski v. Spencer*, 424 F.3d 285, 297 (2d Cir. 2005) (holding that where a municipal official "'has final authority over significant matters involving the exercise of discretion,' his choices represent government policy"); *Diodati v. City of Little Falls,* No. 6:04-CV-446, 2007 U.S. Dist. LEXIS 4322, at *6 (N.D.N.Y. Jan. 18, 2007) ("A policymaker is an individual whose 'decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions."). Therefore, Defendants' testimony relating to their decisions and actions (and rationale for those decisions and actions) is central to Plaintiffs' *Monell* claim.

Second, since Defendants are final policymakers, their knowledge, and deliberate indifference, is the knowledge, and deliberate indifference, of Denver. Since a single act by a final policymaker constitutes municipal policy, "a single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 127, 129 (2d Cir. 2004) (noting that in such cases, "there is no need . . . to establish that policymaking officials maintained a consistent 'policy' of deliberate indifference"). Therefore, Defendants' testimony relating to their knowledge, and deliberate indifference, is central to Plaintiffs' *Monell* claim.

Courts have noted that cases requiring that a plaintiff show municipal action "amounts to deliberate indifference to plaintiffs' constitutional rights [are] the quintessential municipal liability claim[s] in which the state of mind of the [] official with ultimate responsibility is relevant." *Thomas*, 2006 U.S. Dist. LEXIS 99261, at *1-3; *see also Green*, 226 F.R.D. at 648-49 (permitting plaintiff to call the sheriff of Los Angeles to testify regarding jail release policies, where the sheriff was the final policymaker for the County in setting and implementing jail release policies and did not assert that he had no knowledge of those policies); *see also Andrich*

5

*v. Dusek*, No. CV-17-00173-TUC-RM, 2019 U.S. Dist. LEXIS 136133, at *4-5 (D. Ariz. Aug. 13, 2019) (holding that because the Director of the Arizona Department of Corrections had "first-hand knowledge" plaintiffs could depose him). For example, in *Thomas*, the Court held that, for this reason, plaintiffs were entitled to depose the Sheriff of Los Angeles because he was "the official with ultimate responsibility for prisoners' safekeeping while in the county jails." 2006 U.S. Dist. LEXIS 99261, at *1-3. Likewise, here, Defendants, as they admit, are the ones with ultimate authority as to when, how, and why the sweeps are conducted. Their testimony is essential if Plaintiffs are to be able to prove that Defendant Denver's state of mind and, consequently, deliberate indifference in this case.

Third, Defendants claim that their testimony is not relevant because subordinates were the officials on the ground during the sweeps (and that Plaintiffs should be forced to call these officials instead of Defendants) misunderstands final policymaker liability. These lower-level officials are not final policymakers. Their decisions are not directly attributable to Defendant Denver. They do not know what Defendants' state of mind was while making the decisions at issue in this case. Plaintiffs must be allowed to put on the testimony of *final policymakers* to show final policymaker liability for purposes of *Monell*.

Ultimately, the fact that Defendants are final policymakers is dispositive. By operation of their final policymaker status, they possess personal knowledge that is relevant and unobtainable elsewhere.

3.2 **Defendants possess personal knowledge that is relevant to Plaintiffs' claims.**

Courts in this Circuit have often allowed the testimony of high-ranking government officials above Defendants' level when they have personal knowledge related to the claims at issue. See [Doc. #91-1], *Howards v. Reichle Order Reversing Magistrate Judge's Denial Of*

6

*Plaintiff's Renewed Motion To Serve Subpoena* (allowing deposition of former Vice President Cheney); *FTC*, 2020 U.S. Dist. LEXIS 218269, at *8-9 (allowing deposition of attorney general because he had "firsthand knowledge related to the claim being litigated"); *Fish*, 320 F.R.D. at 579 (allowing deposition of the secretary of state); *Vanmeter v. Briggs*, No. CV 18-0970 RB/JHR, 2019 U.S. Dist. LEXIS 204085, at *10-11 (D.N.M. Nov. 25, 2019) (allowing depositions of University of New Mexico's executives because they had "personal knowledge which [wa]s relevant to the claims" in the lawsuit); *see also Asarco Ltd. Liab. Co. v. Noranda Mining, Inc.*, No. 2:12-cv-00527, 2015 U.S. Dist. LEXIS 55650, at *9 (D. Utah Apr. 28, 2015) (allowing deposition of non-party "high level corporate executive" who had personal knowledge relating to the plaintiffs' claims).

Defendants have personal knowledge of highly relevant evidence relating to Plaintiffs' claims, including: (1) what they knew about the CDC, and other public health, guidance relating to homeless encampments; (2) what they knew about the CDC, and other public health, guidance relating to the increased vulnerability of homeless individuals to COVID-19; (3) what they knew about the facts on the ground at the Lincoln Park, Morey, South Platte, and other encampments prior to the sweep; (4) why they decided to order the sweeps; (5) why they chose not to provide notice prior to the sweeps; (6) what information they had about COVID-19 prevalence rates within congregate shelters and encampments; (7) what they knew about the risks that sweeps posed to homeless individuals from COVID-19; (8) what alternative public health interventions there were to conducting the sweeps; (9) whether there were individual housing options available at the time of the sweeps and whether they were offered to those swept; (10) whether they were on notice that conducting the sweeps during the COVID-19 pandemic would present unreasonable dangers to Plaintiffs; and (11) what instructions were given to low-level Denver

7

officials about how the sweeps should be conducted (including whether property should be stored). All of this personal knowledge is directly relevant to Plaintiffs claims, and is made even more relevant by the fact Plaintiffs seek to elicit it from final policymakers. *See Smith v. City of Stockton*, No. 2:15-cv-0363 KJM AC, 2017 U.S. Dist. LEXIS 44767, 2017 WL 11435161, at *7 (E.D. Cal. Mar. 27, 2017) (denying motion for protective order where evidence showed sheriff "is the person with knowledge of why he did not recommend discipline for the officers, why he did not recommend discipline for the officers involved in prior incidents, why he later wrote a policy on officer shootings, and what was his response to the two memos he received about this shooting").

Finally, Defendants claim that they do not have personal knowledge but, like the sheriff in *Green*, Defendants only provide hearsay statements in the motion by their attorneys that they do not have personal factual knowledge. *Green*, 226 F.R.D. at 649. And, that statement is contained in a heading. It is unsubstantiated by any elaboration, let alone a declaration or other attested document showing that Defendants had no part in the sweeps that are at issue at the preliminary injunction hearing. Courts have held that such statements are insufficient to justify quashing a subpoena to testify. *Id.*; *see also Rodriguez v. City of L.A.*, No. CV 11-01135 DMG (JEMx), 2013 U.S. Dist. LEXIS 201978, at *7-8 (C.D. Cal. Oct. 30, 2013). And, even if this statement were sufficient, it is implausible and contradicted by Defendants' own public statements after the sweeps.

### 3.3 **The information sought from Defendants cannot be obtained elsewhere.**

The information, outlined *supra*, that Plaintiffs wish to obtain from Defendants is not available from other sources. And, even if the factual evidence that could ostensibly be obtained through other individuals' testimony, Defendants' state of mind is directly at issue at the

8

preliminary injunction hearing and that is unobtainable for other sources. Courts have repeatedly allowed testimony from high-ranking officials where state of mind is at issue because of the inherent inability to obtain this evidence from other sources. *See Sherrod*, 304 F.R.D. at 76 (allowing deposition of Secretary of Agriculture where the Secretary's motive in requesting resignation of plaintiff was central to plaintiff's defamation claim); *United States v. Rosenschein*, No. 16-4571 JCH, 2020 U.S. Dist. LEXIS 106903, at *7 (D.N.M. June 18, 2020) (requiring testimony of government official when it was relevant to "questions of intent"); *see also Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 142 (D. Mass. 1987) ("When the motives behind corporate action are at issue, an opposing party usually has to depose those officers and employees who in fact approved and administered the particular action.").

Plaintiffs are required to prove that Defendants "were aware of a known or obvious risk" creating a high probability that serious harm will follow, and nonetheless proceeded with a "conscious and unreasonable disregard of the consequences." *Medina v. City & Cty. of Denver*, 960 F.2d at 1496 (citations omitted). It will be difficult, and nearly impossible, to demonstrate "conscious" disregard of a "known" risk absent testimony from the government officials who are alleged to have "consciously" disregarded the "known" risk.

Additionally, here, there are allegations that Defendants provided no notice at the sweeps not because of a health and safety issue, but for improper political reasons. Courts have repeatedly allowed for deposition of high-ranking government officials where there are allegations that the official acted with an improper motive, again, because of the inherent inability to obtain this evidence from other sources. *See U.S. v. Sensient Colors*, 649 F. Supp. 2d 309, 323 (D.N.J. 2009) (allowing deposition of high-ranking EPA official where plaintiff alleged specific facts demonstrating bad faith); *Bagley v. Blagojevich*, 486 F. Supp. 2d 786, 789 (C.D.

9

Ill. 2007) (permitting deposition where plaintiffs alleged that the governor ordered their jobs eliminated in retaliation for their attempt to organize on behalf of a union that was a rival to a group that had contributed heavily to his election campaign); *Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 370 (N.D. Cal. 2000) (permitting deposition where the chief of police took the "unusual" step of intervening personally in disciplinary proceedings against a police officer to ensure lighter discipline for the officer); *Virgo Corp. v. Paiewonsky*, 39 F.R.D. 9, 10 (D.V.I. 1966) (permitting deposition of a Governor accused of taking arbitrary actions as a result of Congressional pressures and personal friendships).

Finally, even assuming, *arguendo*, there are other sources for the knowledge possessed by Defendants, this alone does not preclude requiring them to testify. One court in this Circuit required the testimony of Utah's attorney general even when he was "not the exclusive source of information" (and the parties seeking his testimony personally witnessed everything the attorney general did) because the attorney general had "exclusive knowledge of his own observations" and "the basis" for his statements. *FTC*, 2020 U.S. Dist. LEXIS 218269, at *8-9. Similarly here, Defendants' direct observations, knowledge, and the basis for their decision making is at issue and this Court should allow Plaintiffs to examine Defendants even if Defendants are not the "exclusive source" of the information sought.

### 3.4 **The equities weigh in favor of requiring Defendants to testify.**

Plaintiffs agree with Defendants that the pandemic is unprecedented. That is why they brought this lawsuit. Even so, throughout the pandemic, high-ranking public officials have testified time and again in cases relating to COVID-19, and the protection of the public, and vulnerable populations, from the pandemic. *See e.g. 910 E Main L L C v. Edwards*, No. 6:20-CV-00965, 2020 U.S. Dist. LEXIS 152366, at *8 (W.D. La. Aug. 21, 2020) (noting that the

10

governor testimony at the preliminary injunction hearing); *Libertarian Party v. Sununu*, Civil No. 20-cv-688-JL, 2020 U.S. Dist. LEXIS 133437 (D.N.H. July 28, 2020) (noting that governor testified at the preliminary injunction hearing); *Carranza v. Reams*, No. 20-cv-00977-PAB, 2020 U.S. Dist. LEXIS 82299, at *4 (D. Colo. May 11, 2020) (noting that the Weld County sheriff testified at the preliminary injunction hearing); *Landers v. Pritzker*, 2020 IL App (4th) 200356-U, ¶ 16 (Ill. 4th Dist. Ct. November 16, 2020) (noting that sheriff testified at the preliminary injunction hearing); *Mays v. Dart*, 456 F. Supp. 3d 966, 980 (N.D. Ill. 2020) (noting that the Executive Director of the Cook County Department of Corrections testified at the preliminary injunction hearing); *Gallagher v. N.Y. State Bd. of Elections*, 2020 U.S. Dist. LEXIS 138219, at *26 (S.D.N.Y. Aug. 3, 2020) (noting that the New York State Board Of Elections' Executive Director testified at the preliminary injunction hearing). These high-ranking officials were not unduly burdened by testifying and neither are Defendants.

Additionally, generally, the reason for limiting depositions of high-ranking government officials is based on the time constraints imposed upon them pursuant to their official duties. Where, as here, Defendants testimony would be conducted in less than a few hours in the city in which they reside, this justification is unpersuasive. *See Clinton v. Jones*, 520 U.S. 681, 691-92 (1997); *Halperin v. Kissinger,* 606 F.2d 1192, 1211 (D.C.Cir.1979) ("Presidents are scarcely immune from judicial process").

### 3.5 **Defendants have not met their burden in demonstrating that the deliberative process privilege requires quashing the subpoenas.**

"[T]he party asserting the [deliberative process] privilege has the burden of proving each element of the privilege." *SEC v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2009 U.S. Dist. LEXIS 8365, at *13 (D. Colo. Jan. 29, 2009). "As with all privileges, the deliberative process privilege must be narrowly construed." *Id*. In order to fall under the protection of this privilege, materials

must be both predecisional and deliberative. *Id*. (citation omitted). Unless inextricably interwoven with deliberative sections of protected documents, purely factual material is not protected. *Id*. (citation omitted).

Importantly, the deliberative process "privilege is not absolute and requires the Court to conduct a balancing process, tipping the scales in favor of disclosure when public interest in accurate judicial determination outweighs public interest in assuring the free flow of opinions so as to promote effective governmental functioning." *Equal Employment Opportunity Comm'n v. Bok Fin. Corp.*, No. 11-1132 RB/LFG, 2013 WL 12040729, at *3 (D.N.M. Jan. 2, 2013) (citations omitted). Because of this, "[c]ourts have consistently found that the [deliberative process] privilege is outweighed by the interest in disclosure where a case is based on alleged violations of federally-protected civil rights." *Hinsdale v. City of Liberal, Kansas*, No. 96-1249-FGT, 1997 U.S. Dist. LEXIS 13779, at *1 (D. Kan. Aug. 27, 1997).

At the outset, any factual material that would be elicited from Defendants is not protected by the deliberative process privilege. *Gambina v. Fed. Bureau of Prisons*, No. 10-CV-02376-MSK-KLM, 2012 WL 4040335, at *4 (D. Colo. Sept. 12, 2012).

Additionally, as recognized by the case principally relied on by Defendants, there are numerous "[e]xceptions to the deliberative process privilege." *Marisol A. by Forbes v. Giuliani*, 95 Civ. 10533 (RJW), 1998 U.S. Dist. LEXIS 3719, at *20 (S.D.N.Y. Mar. 23, 1998). One of those exceptions is "[w]here the decision-making process itself is the subject of the litigation, the deliberative privilege may not be raised as a bar against disclosure of critical information." *Id*. (quoting *Burka v. New York City Transit Authority*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986)). That exception clearly applies here, where the decision-making process related to when, why, and how to conduct the sweeps is directly at issue at the preliminary injunction hearing. Another

exception is when "there are allegations of misconduct or misbehavior." *Id.* (citing *United States v. American Telephone and Telegraph Co.*, 524 F. Supp. 1381, 1389 (D.D.C. 1981)). Again, here, there are allegations that the sweeps were conducted, and notice was not given, for improper political, and not public health, reasons.

Further, courts in this District have held that the deliberative process privilege "is a qualified [one,] which can be overcome by a sufficient showing of need." *Gambina*, 2012 WL 4040335, at *3. In Section 1983 actions, "a claim that relevant evidence is privileged must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action." *Spell v. McDaniel*, 591 F. Supp. 1090, 1116 (E.D.N.C. 1984); *Hinsdale,* 1997 U.S. Dist. LEXIS 13779, at *1; *Crawford v. Dominic*, 469 F. Supp. 260, 262 (E.D. Penn. 1979); *Wood v. Breier*, 54 F.R.D. 7, 13 (E.D. Wis. 1972). Several factors, which courts have relied to order disclosure in spite of the applicability of the deliberative process privilege, weigh in Plaintiffs' favor here.

First, when a municipality is named as a defendant, this "typically weighs in favor of disclosure[.]" *See Moreland Props., LLC v. City of Thornton,* No. 07-cv-00716-EWN-MEH, 2007 U.S. Dist. LEXIS 64755, 2007 WL 2523385, at *5 (D. Colo. Aug. 31, 2007). In this case, Denver has been named as a defendant and Plaintiffs seek information from Defendants at the hearing in their capacity as final policymakers for Denver.

Second, as discussed above, the testimony sought is central to Plaintiffs' Section 1983 and *Monell* claims and restricting access would prohibit the legal inquiry into whether Defendants violated Plaintiffs' civil rights. *Fourhorn v. City & Cty. of Denver*, Civil Action No. 08-cv-01693-MSK-KLM, 2009 U.S. Dist. LEXIS 71042, at *10-14 (D. Colo. Aug. 3, 2009)

13

(holding that the materiality of the documents to Section 1983 and *Monell* claims weighs in favor of disclosure); *Hinsdale,* 1997 U.S. Dist. LEXIS 13779 at *1.

Third, applying the privilege in this case, where the claims at issue at the preliminary injunction hearing are brought pursuant to Section 1983, would undercut Congress' intention in enacting Section 1983, which was to provide a vehicle to litigants to "deliberately expose[] government decisionmaking to the light." *In re Subpoena Duces Tecum,* 145 F.3d 1422, 1424 (D.C. Cir. 1998).

Fourth, disclosure is warranted because it "may caution [Denver] officials to take similar issues seriously and adopt policies calculated to correct and minimize future mistakes." *Fourhorn*, 2009 U.S. Dist. LEXIS 71042, at *13-14. The ongoing sweeps, in contravention of CDC guidance and in blatant violation of Plaintiffs' constitutional rights, illustrate the dangers of protecting *all* testimony of Defendants as privileged, lest that behavior be allowed to continue unchecked.

Ultimately, the deliberative process privilege does not justify quashing Plaintiffs' subpoena because they seek to elicit factual testimony from Defendants, any testimony that would arguably covered by the privilege falls neatly within one of the exceptions to it, and this is the exact type of case where the deliberative process privilege "must yield" to disclosure. *Fourhorn*, 2009 WL 2407569, at *4.

4. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants Hancock, McDonald, And Robinson's Motion To Quash Subpoenas, Or, In The Alternative, For A Protective Order [Doc. #88].

Dated: December 3, 2020.

KILLMER, LANE & NEWMAN, LLP

*/s/ Andy McNulty*
David A. Lane
Darold W. Killmer
Andy McNulty
Reid Allison
1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Facsimile: (303) 571-1001
dlane@kln-law.com
dkillmer@kln-law.com
amcnulty@kln-law.com
rallison@kln-law.com

COUNSEL FOR PLAINTIFFS

15

CERTIFICATE OF SERVICE

      I hereby certify that on December 3, 2020, I electronically filed the **RESPONSE TO DEFENDANTS HANCOCK, MCDONALD, AND ROBINSON'S MOTION TO QUASH SUBPOENAS, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER** with the Clerk of the Court using the CM/ECF system which will send notification to the following counsel.


Kathleen Spalding
Stephanie Lindquist Scoville
Emely Garcia
Senior Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Kit.spalding@coag.gov
stephanie.scoville@coag.gov
emely.garcia@coag.gov

Wendy Shea
Michele Horn
Conor Farley
Director Civil Litigation Section
City and County of Denver
Wendy.shea@denvergov.org
Michele.horn@denvergov.org
Conor.farley@denvergov.org

                                              */s/ Charlotte Bocquin Scull*
                                              Paralegal