**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-2985-WJM-SKC

DENVER HOMELESS OUT LOUD, *et al.*,

    Plaintiffs,

v.

DENVER, COLORADO, *et al.*,

    Defendants.

## ORDER ON MOTIONS TO QUASH SUBPOENAS

This civil rights dispute is before the Court on: (1) the Governor's Motion to Quash Subpoena to Testify (the "Governor's Motion") (ECF No. 83), to which Plaintiffs responded in opposition (ECF No. 91); and (2) Defendants Hancock, McDonald, and Robinson's Motion to Quash Subpoenas, or, In the Alternative, for a Protective Order (the "Denver Defendants' Motion") (ECF No. 88), to which Plaintiffs responded in opposition (ECF No. 92).

The parties are well-versed with the background that precedes these Motions, so the Court limits its discussion to the issues necessary to decide them. The Court has set an in-person evidentiary hearing on Plaintiffs' Motion for Preliminary Injunction and Expedited Hearing ("PI Motion") (ECF No. 47) for December 15–16, 2020. (ECF No. 75.) Plaintiffs have subpoenaed Governor Jared Polis (ECF No. 83-1), Mayor Michael Hancock, Executive Director of Denver's Department of Public Health and Environment ("DDPHE") Bob McDonald, and Executive Director of Denver's Department of Safety

Murphy Robinson (ECF Nos. 88-1–88-3) to testify at the evidentiary hearing.[1]  For the following reasons, the Court grants the Governor's Motion and grants in part and denies in part the Denver Defendants' Motion.

## I. LEGAL STANDARD

A party may issue a subpoena commanding the person to whom it is directed to attend and testify at a hearing at a specified time and place.  Fed. R. Civ. P. 45(a)(1)(A)(iii).  A court must quash or modify a subpoena that "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  To establish an undue burden, a party moving to quash a subpoena generally must show good cause or privilege to be protected.  *S.E.C. v. Goldstone*, 301 F.R.D. 593, 646 (D.N.M. 2014).  The decision to quash a subpoena is within the sound discretion of the Court.  *Gulley v. Orr*, 905 F.2d 1383, 1386 (10th Cir. 1990).

Absent extraordinary circumstances, high-level government officials should not be called to testify in federal court about their official actions.  *See Tierra Blanca Ranch High Country Youth Program v. Gonzales*, 329 F.R.D. 694, 697 (D.N.M. 2019), *objections overruled*, 2019 WL 1487241 (D.N.M. Apr. 4, 2019) (collecting cases); *see also Feldman v. Bd. of Educ. Sch. Dist. #1 City & Cnty. of Denver*, 2010 WL 383154, at *2 (D. Colo. Jan. 28, 2010).  Generally, high-ranking government officials have limited immunity from being deposed in matters about which they have no personal knowledge.  *See Cooke v. Hickenlooper*, 2013 WL 5799995, at *2 (D. Colo. Oct. 28, 2013) (citations

---

[1] Polis is sued in his individual and official capacities; Hancock is sued in his individual capacity; McDonald is sued in his individual capacity; and Robinson is sued in his individual and official capacities.  (ECF No. 46.)

omitted).

To rebut the presumption of this immunity, a party seeking the deposition of a high-ranking government official bears the burden of demonstrating that: (1) the particular official's testimony will likely lead to the discovery of admissible evidence, and (2) is *essential* to the party's case. *See id.* (citation omitted; emphasis in original). "[D]epositions of high ranking officials may be permitted where the official has *first-hand knowledge* related to the claim being litigated . . . [and] where it is shown that other persons cannot provide the necessary information." *Feldman*, 2010 WL 383154, at *2 (emphasis in original) (citing *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)). Thus, even if the high-ranking official's testimony is essential, a party seeking to depose that official must additionally demonstrate that the information sought is not available through an alternative source or via less burdensome means. *See Cooke*, 2013 WL 5799995, at *2 (citation omitted).

## II. THE GOVERNOR'S MOTION

The Governor argues that Plaintiffs have not satisfied their burden of demonstrating extraordinary circumstances sufficient to compel the Governor's testimony, as he has no direct factual information relevant to their request for injunctive relief. (ECF No. 83 at 8–10.) Further, the Governor argues alternative methods are available to establish relevant facts at the hearing. (*Id.* at 10–11.) Finally, the Governor argues that requiring his testimony at the evidentiary hearing would be unduly burdensome and harassing, particularly during the ongoing COVID-19 pandemic. (*Id.* at 11.) Plaintiffs dispute these positions. (ECF No. 91.)

The Court finds that Plaintiffs have failed to rebut the Governor's contention that other persons can provide the necessary information they seek through the Governor's testimony. To begin, the Governor states he has no direct factual information relevant to Plaintiffs' PI Motion, as he did not make decisions regarding the Lincoln Park sweep. (ECF No. 83 at 8.) To support this statement, Major Steve Garcia at the Colorado State Patrol ("CSP") and Richard Lee, Division Director for the Division of Capital Assets at the Colorado Department of Personnel and Administration ("DPA"), provided declarations stating that the Governor directed neither the CSP nor the DPA's actions in connection with the Lincoln Park sweep. (ECF No. 67-4 ¶ 21; ECF No. 67-5 ¶ 10.) In addition, the Governor points out that there are at least three other witnesses who can testify about who made these decisions and other specific descriptions of what occurred before, during, and after the Lincoln Park sweep. (ECF No. 83 at 10.)

Bolstering the Court's decision is the fact that Plaintiffs' statements about the Governor's personal knowledge of the sweep are thin, while their statements about the information the Governor *likely* possesses are lengthy. (ECF No. 91 at 5–6.) Under these circumstances, the Court grants the Governor's motion to quash the subpoena to testify.[2]

### III. DENVER DEFENDANTS' MOTION

Denver Defendants argue that Hancock, McDonald, and Robinson do not have personal knowledge pertaining to the material allegations in the Amended Complaint

---

[2] Because the Court grants the Governor's Motion, the Court will not rule on the jurisdictional defenses raised in his response to Plaintiffs' PI Motion before the upcoming evidentiary hearing. (*See* ECF No. 83 at 3.)

4

(ECF No. 46), or if they possess information at all, it can be obtained from another source. (ECF No. 88 at 2.) Further, they argue that these Defendants' testimony is not essential to Plaintiffs' case and, again, that the information sought is available from other sources. (*Id.* at 8–9.) Finally, they argue the information sought is protected by deliberative-process or executive privilege. (*Id.* at 9–10.)

By contrast, Plaintiffs contend each of these Defendants has personal knowledge relating to the sweeps and that the state of mind of each is directly at issue because they are final policymakers for Denver. (ECF No. 92 at 1–2.) As such, their decisions and states of mind form the basis for *Monell v. Department of Social Services,* 436 U.S. 658 (1978) liability as to the sweeps, which makes their testimony essential to Plaintiffs' case against Denver. Plaintiffs contend that even if the factual evidence they seek is available from other sources, because the Defendants' state of mind is at issue, that information cannot be obtained from other sources. (*Id.* at 8–9.) Finally, Plaintiffs argue that the Denver Defendants have not met their burden in demonstrating that the deliberative-process privilege requires quashing the subpoenas. (*Id.* at 11–14.)

The Court has carefully considered the parties' arguments and the circumstances under which this evidentiary hearing will be held—in the middle of the COVID-19 pandemic. The Court also emphasizes that this case is still in very early stages, and there will be ample opportunity for merits discovery going forward.[3] There

---

[3] The Court is aware that the Denver Defendants have filed a 43-page motion to dismiss (ECF No. 82) which is not yet ripe for decision, and the Governor states he will file a motion to dismiss at some point (ECF No. 83 at 11 n.4). With this Order, the Court does not prejudge the merits of these motions or any other motion in this case.

appears to be no dispute that these three Defendants are final policymakers for the City and County of Denver, a Defendant in this case, as well as for the respective municipal departments headed up by McDonald and Robinson. (ECF No. 88 at 3–4; ECF No. 92 at 1 n.1.) Notably, and most unhelpfully, Plaintiffs do not distinguish among the three Defendants in terms of identifying what personal knowledge they each allegedly have, something which does not aid the Court in its analysis.[4] (*See* ECF No. 92 at 7 (listing eleven categories of personal knowledge Plaintiffs believe the three Defendants have without distinguishing among them).)

Given the undifferentiated assertions of alleged knowledge in their response (ECF No. 92), Plaintiffs have failed to convince the Court that they cannot obtain the information they claim Hancock possesses from another source. Further, given the ongoing pandemic, it would be unduly burdensome to require Hancock to testify at the evidentiary hearing. By contrast, however, the Court finds that as executive directors and final decisionmakers of their respective departments, the testimony of McDonald and Robinson is indeed essential to Plaintiffs' *Monell* claims. Accordingly, the Court has determined that it will grant the Denver Defendants' Motion as to Hancock, but will deny it as to McDonald and Robinson.

---

[4] Though this case is in its infancy, the Court has started seeing this approach—of Plaintiffs lumping Defendants together without distinguishing among them—in several contexts (for example, the numerous claims in the Amended Complaint (ECF No. 46), the request for injunctive relief (ECF No. 47 at 4), and now the responses to the motions to quash (ECF Nos. 91, 92)). This requires the Court to caution Plaintiffs that they must request **specific** relief and make arguments (when relevant) as to **each Defendant**, as appropriate, in order to enable the Court to evaluate the claims against each Defendant fairly and properly. With numerous Defendants in this case—not to mention the multiple John & Jane Boes, Does, Foes, Joes, Loes, and Moes, etc.—such broad and undifferentiated requests are not helpful to the Court in ruling on the numerous motions and issues in this case.

Alternatively, the Denver Defendants ask the Court to issue a protective order preventing Plaintiffs from requiring the testimony of Hancock, McDonald, and Robinson. The Court can discern no meaningful difference between the request for a protective order and the request to quash the subpoenas—as both would prevent the testimony of the three Defendants.[5]  Therefore, the Court declines to issue a protective order for McDonald and Robinson.

### IV. CONCLUSION

For the reasons stated above, the Court ORDERS:

1. Governor's Motion to Quash Subpoena to Testify (ECF No. 83) is GRANTED, and said subpoena is hereby QUASHED; and

2. Defendants Hancock, McDonald, and Robinson's Motion to Quash Subpoenas, or, In the Alternative, for a Protective Order (ECF No. 88) is GRANTED in part as to Defendant Hancock only, and DENIED in part as to Defendants McDonald and Robinson.  The subpoena on Hancock is hereby QUASHED, and the subpoenas on McDonald and Robinson shall remain in FULL FORCE AND EFFECT.

---

[5] The Denver Defendants ask for "a protective order barring Plaintiffs from requiring the presence and testimony of Mayor Hancock and Executive Directors Robinson and McDonald for the December 15-16 hearing."  (ECF No. 88 at 3, 9.)

Dated this 8th day of December, 2020.

BY THE COURT:

_____

William J. Martínez
United States District Judge