**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-2985-WJM-SKC

DENVER HOMELESS OUT LOUD, *et al.,*

      Plaintiffs,

v.

DENVER, COLORADO, *et al.,*

      Defendants.

---

**STATE DEFENDANTS' MOTION TO DISMISS**

---

State Defendants, Governor Jared Polis, and Colorado State Patrol Troopers Alec Barkley, J.P. Burt, William Caldwell, Umair Cheema, Jacob Cleveland, Crystal Crenshaw, Colin Daugherty, Gregory Davey, David Dinkel, Joe Dirnberger, Andrew Gasparovic, Christopher Gonzales, Nathan Hardy, Jeremy Harrington, Heidi Jewett, Geoffrey Keeling, Doug Kline, Bryan Larreau, Thomas Major, Sean McCall, Brandon Novy, Haas E. Pratt, Kevin Rae, Kyle Ross, Rusty Sanchez, Victor Sargenti, Tye Simcox, Jonathan Strickland, Nicholas Trujillo, Ryan Voss, Darce Weil, and Patrick Williams (State Patrol Defendants), move to dismiss Plaintiffs' Amended Complaint (Doc. 46) under Fed. R. Civ. P. 12(b)(1) and (6).

**STATEMENT REGARDING CONFERRAL**

Undersigned counsel conferred with counsel for both Plaintiffs and Denver Defendants. Counsel for State Defendants outlined the grounds asserted for dismissal of Plaintiffs' claims. Plaintiffs oppose the relief requested in this motion.

**BACKGROUND**

Plaintiffs' claims against State Defendants are based on a single incident: Denver's July 29, 2020 clean-up of Lincoln Park.[1] There is no dispute that this clean-up was planned and ordered by the City and County of Denver and primarily carried out by its employees. Am. Compl., ¶¶ 193, 194 (Doc. 46). According to Plaintiffs' amended complaint, Denver officials posted the notice that the park would be closed due to health concerns, *id*. ¶ 204; advised campers that they needed to remove their belongings from the park, *id*. ¶ 206; and coordinated the seizure and destruction of campers' property. *Id*. ¶204. In fact, Plaintiffs acknowledge that it was "Denver's customs, policies, and/or practices, and the decisions of its final policymakers, [that] were the moving force behind the Defendants' violation of Plaintiffs' constitutional rights." *Id*. ¶¶ 446, 459, 477, 494.

Plaintiffs nonetheless sue the Governor and 32 Colorado State Patrol troopers, attempting to also hold them responsible for Denver's actions in clearing Lincoln Park. Of the 592 paragraphs of factual allegations in the Amended Complaint, only a handful mention either the Governor or State Patrol troopers, and none identify the actions of any individual trooper. Plaintiffs only claim that "CSP Defendants" or "CSP troopers" set up a fence along the perimeter of the park, *id*. ¶ 205, and, over four hours after the clean-up began, *id*. ¶¶ 203, 216, prevented campers from re-entering the park to retrieve their property. *Id.* ¶¶ 209, 222, 229, 252. As for the Governor, Plaintiffs claim

---

[1] Lincoln Park is also known as Veteran's Park. The park is located west of the State Capitol in Denver, between Colfax to the north and 14th Avenue to the south, and between Lincoln to the east and Broadway to the west.

that he "welcomed" the park clean-up, *id.* ¶ 190; that he "directed" the actions of CSP troopers, *id.* ¶ 222; and that he was aware that troopers prevented campers from re-entering the park to retrieve their property. *Id.* All of Plaintiffs' remaining allegations are directed to Denver or generically to all "Defendants," even though the State Defendants' role in the actions described in the amended complaint was plainly limited.

## ARGUMENT SUMMARY

Plaintiffs claim that the Governor and State Patrol Defendants violated the Fourth Amendment, as well as the Fourteenth Amendment, by violating the Takings Clause and Plaintiffs' substantive and procedural due process rights. Am. Compl., Claims 1 - 4, ¶¶ 436- 498 (Doc. 46). In passing, Plaintiffs also claim to be seeking declaratory injunctive relief against "other Defendants" under § 13-21-131, C.R.S., in which they assert violations of the State Constitution. *Id*. ¶¶ 508, 517, 525, 537, 551, 561. The Governor and CSP troopers are named in their individual capacities on the federal claims for money damages; the Governor is named in his official capacity on the federal and state law claims to the extent Plaintiffs request injunctive relief.

Plaintiffs have not asserted proper claims against any State Defendants. The claims against the Governor in his official capacity are barred by Eleventh Amendment immunity. An exception to Eleventh Amendment immunity permits suits against state officials seeking to enjoin alleged ongoing violations of federal law. But in making a state officer a party defendant, a plaintiff must establish a connection with the enforcement of an act alleged to be unconstitutional. Plaintiffs' complaint neither plausibly alleges an ongoing violation of federal law by the Governor nor establishes a

connection between the Governor and the enforcement of the municipal codes and city health regulations at issue in the July 29, 2020 clean-up of Lincoln Park.

Additionally, Plaintiffs' request for permanent injunctive relief from the Governor fails because Plaintiffs do not have standing based on the face of their complaint to obtain an injunction. Because the Lincoln Park operation was set in motion and directed by Denver, Plaintiffs have not established an ongoing injury-in-fact that was caused by the Governor or that could be remedied by him.

Plaintiffs' purported claims for injunctive relief under the State Constitution fail for the same reasons as the other official capacity claims. In addition, Plaintiffs cannot use § 13-21-131, C.R.S. as a vehicle to hold the Governor liable because that statute solely provides a cause of action against peace officers.

The individual capacity claims against the Governor cannot stand because Plaintiffs have failed to allege facts which, if true, would support a finding that the Governor personally violated their constitutional rights. Plaintiffs claim that the Governor "directed" the actions of CSP troopers and "knew" what actions the troopers were taking. But these allegations are wholly conclusory and insufficient to find that the Governor himself violated Plaintiffs' constitutional rights. Nor have Plaintiffs plausibly established that the Governor has supervisory authority over the day-to-day activities of State Patrol troopers simply by virtue of his office. Plaintiffs' failure to establish the personal involvement of the Governor in a constitutional violation is fatal to Plaintiffs' claims because they 1) fail to state § 1983 claims; and 2) the Governor is entitled to qualified immunity.

The § 1983 claims against the State Patrol Defendants in their individual capacities are likewise barred because Plaintiffs have not plausibly identified which troopers personally participated in the claimed constitutional violations or what unlawful actions those individual troopers took. Claims alleging that all "defendants" collectively violated Plaintiffs' constitutional rights fail to state the personal participation of each trooper. As a result, Plaintiffs have not stated a claim and the State Patrol Defendants are entitled to qualified immunity.

Plaintiffs' § 1983 claims further fail because Plaintiffs have not established the elements of the various constitutional violations they allege. Plaintiffs' allegations do not support the elements of the Fourteenth Amendment takings, substantive due process, or procedural due process claims. These failures to state a claim require dismissal and entitle all State Defendants to qualified immunity.

## ARGUMENT

### I.      Standard of Review

A motion to dismiss based on Eleventh Amendment immunity is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Harris v. Owens*, 264 F.3d 1282, 1288 (10th Cir. 2001). Because federal courts may exercise jurisdiction only when authorized to do so, there is a presumption against federal jurisdiction. *Neiberger v. Hawkins*, 150 F. Supp. 2d 1118, 1120 (D. Colo. 2001). The party invoking the Court's jurisdiction – here, Plaintiffs – bear the burden of establishing the Court's jurisdiction. *Id.*

In reviewing a Rule 12(b)(6) motion for the failure to state a claim for relief, a

court must accept well-pleaded allegations as true and view the allegations in a light most favorable to the plaintiff. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). But Rule 12(b)(6) requires that a complaint contain more than conclusory allegations or conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint does not need to include detailed factual allegations, but "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

As part of their Rule 12(b)(6) motion, State Defendants also assert their right to qualified immunity. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (quotation marks omitted). Plaintiffs bear a heavy burden of establishing both a constitutional violation and that the constitutional right was clearly established at the time of the alleged violation. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008)) (quotation marks omitted).

## II.   Plaintiffs' official capacity claims against the Governor are jurisdictionally barred.

### A.   The Governor has Eleventh Amendment immunity on the official capacity claims against him.

As outlined in the Governor's response to Plaintiffs' motion for preliminary injunction (Doc. 67), Plaintiffs' official capacity claims against the Governor are barred by Eleventh Amendment immunity, and they should be dismissed under Rule 12(b)(1). The State and its officers are not subject to suit in federal court, even on claims for injunctive relief. *See, e.g., Eastwood v. Dep't of Corrs. of Okla.*, 846 F.2d 627, 631 (10th Cir. 1988) (The Eleventh Amendment "prohibits suits in federal court against a state by its own citizens.").

The *Ex parte Young* doctrine is a notable exception to this immunity, permitting some suits seeking prospective relief against state officials in order to enforce the observance of federal rights by states. *Buchheit v.Green*, 705 F.3d 1157, 1159 (10th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). That exception is not applicable here for two reasons: 1) there is no ongoing violation of federal law; and, 2) the Governor has no connection with the enforcement of Denver's municipal code or Denver's health regulations.

The *Ex parte Young* exception may be invoked only when a plaintiff has plausibly alleged an ongoing violation of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). To determine whether the *Ex parte Young* exception applies, courts need not determine whether an actual violation of federal law occurred. *Id*. Instead, courts "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id*. (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Plaintiffs do not allege any ongoing violation of federal law by the Governor requiring injunctive relief. Plaintiffs plead only that the Governor acted in a single instance over four months ago to direct the actions of State Patrol Defendants in Lincoln Park. Plaintiffs do not allege, and there are no facts to support, that the Governor is conducting any ongoing enforcement actions in the Park. Because Plaintiffs have not, and cannot, assert an ongoing violation of their federal constitutional rights by the Governor, the Governor is entitled to Eleventh Amendment immunity.

The *Ex parte Young* exception does not apply for a second reason. For a state official to be subjected to an injunction, "it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Peterson v. Martinez,* 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). "Defendants are not required to have a special connection to the unconstitutional act or conduct. Rather, state officials must have a particular *duty* to enforce the statute in question and a demonstrated willingness to exercise that duty." *Id.* (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir.2007)) (internal quotations omitted) (emphasis added).

Again, Plaintiffs allege only State Defendants' involvement in a clean-up of Lincoln Park pursuant to municipal ordinances and a municipal public health order. Plaintiffs do not allege, nor is there independent authority for the proposition, that the Governor has a duty to enforce municipal ordinances such as the Denver camping ban or Denver public health orders, even on State property. As a result, the *Ex parte Young*

doctrine may not be invoked, and the Governor may not be sued for prospective injunctive relief.

### B.   Plaintiffs have not established standing for their request that a permanent injunction be entered against the Governor.

For the same reasons outlined in the Governor's response to Plaintiffs' motion for preliminary injunction (Doc. 67), Plaintiffs have not established the basic elements of standing to seek permanent injunctive relief against the Governor. Plaintiffs must demonstrate standing for each kind of relief they seek. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (noting that a plaintiff may have standing to pursue damages but not injunctive relief). In order to invoke the Court's jurisdiction, a plaintiff must demonstrate, at an irreducible minimum, that: 1) he has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant; 2) the injury is traceable to the challenged conduct; and 3) the injury is likely to be redressed if the requested relief is granted. *PeTA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002). When these elements are not met, allowing courts to oversee executive actions intrudes into the policy making functions of the executive. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Here, Plaintiffs cannot establish any of the elements of standing.

### 1.   Because they do not face an immediate and substantial threat of injury from the Governor, Plaintiffs cannot establish an injury-in-fact.

To seek injunctive relief, Plaintiffs must show that they are under threat of suffering an injury in fact that is concrete and particularized; "the threat must be actual and imminent, not conjectural or hypothetical." *Summers*, 555 U.S. at 493. Put another

way, the threatened injury must be "real, immediate, and direct." *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 756 (10th Cir. 2010) (internal citations omitted). The alleged injury must be "certainly impending" and may not be based "merely on subjective apprehensions that the defendant might act unlawfully." *Finstuen v. Crutcher*, 496 F.3d 1139, 1143–44 (10th Cir. 2007) (internal quotations omitted). While past harm may be relevant, past harm alone is not sufficient to establish standing to obtain injunctive relief. *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983) ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief....") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974)). Claims for prospective relief require a continuing injury. *PeTA*, 298 F.3d at 1202.

Here, Plaintiffs have not established a real or immediate threat that they will again be harmed by the complained-of conduct by the Governor. Plaintiffs recognize that the July 29, 2020 clean-up of the Park was directed by Denver; it was not an enforcement action initiated under state law or the Governor's independent enforcement authority. *See, e.g.*, Am. Compl., ¶¶ 163, 193-195 (Doc. 46). Even according to Plaintiffs' description, State actors provided only limited support services. *Id*. ¶ 196. More importantly, Plaintiffs have not established either a continuing injury or a real and immediate threat of future injury. They have not established that there will be another clean-up of Lincoln Park, and in fact, this injury is unlikely to repeat since the Park is fenced and closed indefinitely. As a result, Plaintiffs have not established standing to seek prospective injunctive relief.

**2.    Plaintiffs have not established an ongoing injury traceable to the Governor's conduct or that the Governor could redress their claimed injury.**

Plaintiffs also fail to establish standing because their alleged injuries are not traceable to any conduct by the Governor. To demonstrate the requisite causation, a plaintiff must show "a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court…". *State of Utah v. Babbit*, 137 F.3d 1193, 1202 (10th Cir. 1998) (internal citation omitted). Likewise, Plaintiffs have not established that an injunction against the Governor would redress their injuries when the Governor was not responsible for the clean-up of Lincoln Park. *See Lawrence v. Colo.*, 455 F. Supp. 3d 1063, 1072-73 (D. Colo. 2020).

Plaintiffs challenge Denver's camping ban and Denver's enforcement of that ban. Plaintiffs repeatedly reiterate that "Denver's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force" behind the violation of their constitutional rights." Am. Compl., ¶¶ 446, 459, 477, 494 (Doc. 46). Plaintiffs have not established a similar injury caused by the Governor. Because Plaintiffs have not shown that their alleged injuries are traceable to any decisions or acts of the Governor, they cannot establish standing to obtain injunctive relief against him.

**III.    Plaintiffs fail to state claims for injunctive relief under the State Constitution.**

Plaintiffs also bring five claims, Claims 7 – 12, under § 13-21-131, C.R.S. (2020), a new state law that provides a vehicle for asserting claims under the Colorado Constitution, much like § 1983. Plaintiffs sue various Denver Defendants, and in

passing, state that they intend to seek relief from "other Defendants" for declaratory and injunctive relief. Am. Compl., ¶¶ 508, 517, 525, 537, 551, 561 (Doc. 46). The Governor, however, is the only State Defendant sued in his official capacity, and he is the only defendant who could provide the injunctive relief Plaintiffs seek.

But Plaintiffs cannot obtain injunctive relief from the Governor by asserting state law claims in federal court. The Eleventh Amendment bars "any suit, in law or equity" brought by citizens of a state against the state itself. *Welch v. Texas Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 473 (1987) (citations omitted); *see also Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995) (holding that the *Ex parte Young* exception does not permit suits seeking to enjoin state officials from violating state law). For this reason, Plaintiffs' claims for injunctive relief based on alleged violations of the Colorado Constitution are jurisdictionally barred.

The State Constitution claims are barred for another reason – the statute Plaintiffs use does not apply to the only State Defendant sued who could provide injunctive relief to Plaintiffs – the Governor in his official capacity. Section 13-21-131(1) provides for a cause of action against a "peace officer" who is "employed by a local government" for depriving any individual of the rights secured by article II of the Colorado Constitution. Therefore, the only proper defendants under the statute are those who are both peace officers and employees of a local government. The Governor is plainly neither; and Plaintiffs do not allege otherwise.[2] And even if Plaintiffs could

---

[2] While CSP troopers are peace officers, they also are not employees of a local government. Therefore, § 13-21-131, C.R.S. does not provide a vehicle for Plaintiffs to sue any State Defendants for damages or for injunctive or declaratory relief.

bring an injunctive relief claim against the Governor in his officiality capacity under this

state law, it would fail for the jurisdictional reasons stated in sections II.A. and II.B.

above.

**IV.     Plaintiffs' individual capacity claims against the Governor are barred for failure to sufficiently establish that he personally violated clearly established federal constitutional rights.**

**A.     Plaintiffs have failed to state plausible individual capacity claims against the Governor.**

Plaintiffs' Claims 1 – 4 are § 1983 claims against State Defendants, including the

Governor, in their individual capacities. Plaintiffs assert various constitutional violations.

Personal participation is an essential element of a § 1983 action. *Gallagher v. Shelton*,

587 F.3d 1063, 1069 (10th Cir. 2009).  When a plaintiff asserts a constitutional claim

against an individual, he must allege specific facts that demonstrate how that individual

personally participated in the asserted constitutional violation. *Henry v. Storey*, 658 F.3d

1235, 1241 (10th Cir. 2011). "A plaintiff's failure to satisfy this requirement will trigger

swift and certain dismissal." *Estate of Roemer v. Johnson*, 764 F. App'x 784, 790 n. 5

(10th Cir. 2019).

Moreover, to state a plausible claim for relief, a plaintiff must provide defendants

with the grounds on which the claim rests. *Robbins,* 519 F.3d at 1248. "[I]f [the

allegations in a complaint] are so general that they encompass a wide swath of conduct,

much of it innocent, then the plaintiffs 'have not nudged their claims across the line from

conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations

must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S.

at 555. Conclusory allegations are not entitled to the presumption that the allegations are true. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

Plaintiffs' allegations against the Governor in his individual capacity satisfy neither of these standards. Plaintiffs' individual capacity claims are based on two allegations: first, that the Governor "directed" the actions of the CSP troopers, and second, that the Governor "knew" that hours after the clean-up began, troopers were preventing campers from re-entering the park. Am. Compl., ¶ 222 (Doc. 46). These paltry allegations are insufficient to plausibly establish that the Governor personally engaged in a violation of Plaintiffs' constitutional rights.

Plaintiffs offer no facts explaining when or how the Governor directed CSP troopers and this conclusory statement is not enough to establish his personal participation in a constitutional violation. Plaintiffs make no allegation that the Governor performed some role in formulating the CSP's operational plan for the Lincoln Park clean-up or that on the day of the clean-up he directed troopers to do any particular action. They certainly do not establish that the Governor himself directed conduct that was wrongful or even that his direction caused some constitutional violation. Nor have Plaintiffs alleged any facts or law showing that the Governor, by virtue of his office, supervises CSP troopers. The CSP's chief, not the Governor, is responsible for the high-level supervision of CSP troopers.[3] As a result, Plaintiffs' allegation that the Governor directed CSP troopers is a conclusory allegation not entitled to the

---

[3] The Colorado State Patrol is a division of the Colorado Department of Public Safety and is overseen by CSP's chief, who "supervise[s] and direct[s] the administration and all activities of the Colorado state patrol." § 24-33.5-204, C.R.S.

presumption of truth. Absent supporting facts, Plaintiffs' allegations never rise above the speculative level. *See Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (noting that to state a claim against a government official for the violation of an individual's constitutional rights, "a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the constitution.").

Similarly, Plaintiffs' claims that the Governor "knew" that CSP troopers were preventing campers from re-entering Lincoln Park, hours after the clean-up began, cannot serve as the plausible basis for Plaintiffs' constitutional claims. Even if the Governor knew what was happening in Lincoln Park, his knowledge is not unconstitutional *conduct*. Mere knowledge of, or even acquiescence, is insufficient to establish the Governor's liability in an individual capacity. *See, e.g., Id.* ("vicarious liability is inapplicable to ... § 1983 suits"). And even if the Governor could be considered the troopers' supervisor, occupying a rung in a supervisory chain is not sufficient. Supervisory liability for constitutional claims requires a causal connection between a supervisor's involvement and the alleged constitutional violation. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Plaintiffs have alleged no such connection here, and therefore, the claim against him in his individual capacity should be dismissed.

### B.    The Governor is entitled to qualified immunity.

For the same reason that the individual capacity claims against the Governor are deficient, the Governor is also entitled to qualified immunity. A government official is entitled to qualified immunity "when 'the facts that a plaintiff has alleged' fail to 'make

out a violation of a constitutional right.'" *Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2108) (quoting *Pearson*, 555 U.S. at 232). Because Plaintiffs plead no facts showing that the Governor took actions that might plausibly be regarded as unconstitutional, the Governor is entitled to qualified immunity. As a result, Plaintiffs' First, Second, Third and Fourth Claims against the Governor in his individual capacity should be dismissed.

**V.   Plaintiffs' federal constitutional claims against the individual State Patrol Defendants fail because Plaintiffs' collective allegations do not adequately state specific constitutional violations by each individual trooper.**

**A.   Plaintiffs fail to allege that any State Patrol Defendant personally participated in a violation of constitutional rights.**

The authorities cited above requiring personal participation by an individual § 1983 defendant, as well as the authorities requiring plausible, specific allegations against each individual, apply with equal force to State Patrol Defendants.

The Amended Complaint predominantly makes allegations against all Defendants collectively. *See, e.g.,* Am. Compl., ¶¶ 441, 445, 471, 472, and 485 (Doc. 46) (alleging federal constitutional violations by "Defendants" in Plaintiffs' First, Second, Third and Fourth claims); *see also* ¶¶ 202, 211 – 215; 217, 219, 221, 238, 242, 253 (describing the allegedly unlawful actions of "Defendants" in the cleanup of Lincoln Park). This sort of collective pleading is insufficient to state a § 1983 claim against individually named defendants. *See Walker v. Mohiuddin*, 947 F.3d 1244, 1249-50 (10th Cir. 2020); *Robbins*, 519 F.3d at 1250 ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these

individuals to ascertain what particular unconstitutional acts they are alleged to have committed."). When multiple defendants are sued under §1983, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins*, 519 F.3d at 1249-50 (emphasis in original).

Contrary to these well-established principles, Plaintiffs bring numerous § 1983 claims against 32 individual CSP troopers with no allegations that any one of them in particular engaged in a specific act that was unconstitutional. The Amended Complaint makes no reference to the individual State Patrol Defendants outside of the paragraphs stating the Court's jurisdiction over each officer. The Amended Complaint does not identify the supposed unlawful act taken by each trooper. Plaintiffs never identify that any individual trooper seized Plaintiffs' property, failed to provide them with some process, or placed Plaintiffs in danger. As a result, Plaintiffs have not identified any basis for the individual capacity claims against State Patrol Defendants.

Likewise, because Plaintiffs have not established constitutional violations, the individual CSP troopers are entitled to qualified immunity. As a result, Plaintiffs' First, Second, Third, and Fourth Claims against the State Patrol Defendants should be dismissed.

**VI.   Plaintiffs further fail to establish the elements of their federal claims, which also entitles all State Defendants to qualified immunity.**

**A.   Plaintiffs' takings claim**

17

In Plaintiffs' Second Claim for Relief, Plaintiffs aver that "[b]y seizing and destroying Plaintiffs' property, "Defendants" meaningfully and permanently interfered with Plaintiffs' possessory interest in their property and destroyed Plaintiffs' property without just compensation." Am. Compl., ¶ 455 (Doc. 46). But as stated above, the Amended Complaint lacks facts showing that any State Defendant actually seized or destroyed Plaintiffs' property. Plaintiffs thus fail to state any takings claim, and all State Defendants are entitled to qualified immunity.

The claim suffers a legal defect as well. The Takings Clause forbids the taking of property for public use without just compensation. U.S. Const. amend. V. But the seizure of property pursuant to a governmental entity's police power is not a taking for public use. *See Bennis v. Michigan*, 516 U.S. 442, 452–53 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.") (citing cases); *Lawmaster v. Ward*, 125 F.3d 1341, 1351 (10th Cir. 1997) (finding plaintiff who alleged law enforcement agents seized his property pursuant to a search warrant had nevertheless failed "to allege any facts showing how his property was taken for public use in violation of the Fifth Amendment."); *Lech v. Jackson*, 791 F. App'x 711, 719 (10th Cir. 2019) (holding that because police officers who damaged a residence while pursuing a criminal suspect acted pursuant to its police power, rather than the power of eminent domain, the officers' actions did not constitute a taking for purposes of the Takings Clause). Recognizing this principle, district courts in other circuits have dismissed takings claims for seizures of homeless individuals' property

where the officials were not acting pursuant to eminent domain. *See, e.g., Cooley v. City of Los Angeles*, No. 2:18-CV-09053-CAS-PLAX, 2019 WL 1936437, at *5 (C.D. Cal. May 1, 2019); *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1106-07 (E.D. Cal. 2012) (dismissing takings claim where city seized and destroyed property during cleanup of homeless encampments).

Here, Plaintiffs acknowledge that the Denver Department of Public Health and Environment ordered the closure of Lincoln Park over public health concerns. Am. Comp., ¶¶ 194, 201, 204 (Doc. 46). Because Plaintiffs allege their property was seized pursuant to an exercise of Denver's police power, Plaintiffs fail to state a claim for a taking. The failure to establish a constitutional violation of the Takings Clause further entitles all State Defendants to qualified immunity on that claim.

## B.   Plaintiffs' procedural due process claim

In Plaintiffs' Third Claim for Relief, Plaintiffs state that unspecified Defendants seized and destroyed Plaintiffs' property without affording them a pre- or post-deprivation process for challenging the seizure of their property. Am. Compl., ¶¶ 471-72 (Doc. 46). But while Plaintiffs claim that the Denver Defendants seized and destroyed their property, they make no such claim with respect to State Defendants none of whom seized property. Nor do Plaintiffs establish any process that State Defendants, who did not plan the cleanup, were obligated to provide to Plaintiffs. Finally, as stated above, Plaintiffs fail to allege that any individual trooper personally participated in an action that violated any Plaintiff's procedural due process rights.

Plaintiffs fail to state a claim for the violation of their procedural due process rights as to State Defendants, and because Plaintiffs have failed to state a claim, the State Defendants are entitled to qualified immunity.

### C.   Plaintiffs' substantive due process rights

In their Fourth Claim for Relief, Plaintiffs claim State Defendants violated their substantive due process rights by creating a risk to Plaintiffs of greater exposure to COVID-19 and/or the elements in conducting the Lincoln Park cleanup. Am. Compl., ¶ 485 (Doc. 46). Denver's Motion to Dismiss (Doc. 82, pp. 17-22) accurately cites the five-part test for a plaintiff to show that a defendant created a "special danger" sufficient to trigger substantive due process protections, and correctly emphasizes that a state actor must have created the danger and acted with a conscious disregard of an obvious risk to Plaintiffs' safety. *See, e.g., Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). The test also requires a plaintiff "to do more than show that a government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Id*. "[P]laintiff[s] must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* (the standard requires a "high level of outrageousness."). State Defendants adopt Denver's additional description of the test and the cases Denver cites applying this standard to the rights of homeless persons.

As to State Defendants, Plaintiffs' only allegations relevant to the substantive due process analysis are that State Patrol Defendants provided security for the construction of a fence surrounding Lincoln Park; that State Patrol Defendants prevented individuals

from entering the park after it was closed; and that the Governor directed these actions. Am. Compl., ¶ 222 (Doc. 46). Plaintiffs do not single out any State Defendant as responsible for creating the danger, but instead contend generally that the actions of "Defendants" were conscience-shocking because Defendants collectively were aware that "the risk of greater exposure to COVID-19 and/or exposure to the elements was obvious and known to Defendants." *Id.* at ¶ 488.

But Plaintiffs' own allegations undercut the basis for this claim against State Defendants. Denver health officials, not State Defendants, chose to close the park due to health concerns. *Id.* at ¶¶ 193, 194. Plaintiffs were given more than four hours to collect their belongings. *Id.* ¶¶ 203, 216. And there are no allegations that State Defendants had any role in participating in cleanups of other camping areas, or in suggesting that homeless individuals be placed in indoor shelters. None of these allegations establish conduct by State Defendants that is so egregious that it rises to the level of shocking the conscience.

At most, Plaintiffs have alleged that State Defendants assisted Denver's efforts to close Lincoln Park, not that State Defendants otherwise prevent outdoor camping, thereby increasing the danger to Plaintiffs. Plaintiffs have not shown, and cannot show, that camping outside Lincoln Park posed a greater danger to Plaintiffs than camping inside the park.

Plaintiffs' allegations are insufficient to show that State Defendants' limited involvement in the Lincoln Park cleanup created a special danger, caused Plaintiffs actual harm, or put them in a position where they faced a substantial risk to their health

and safety. *See Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 433 (N.D. Cal. 2017) (dismissing a substantive due process claim in the absence of evidence that the closure of a homeless encampment on city property increased the dangers to homeless plaintiffs). This defect leads to both dismissal of the Fourth claim and entitles State Defendants to qualified immunity.

## CONCLUSION

For all these reasons, State Defendants request that the Court dismiss all claims against them and reward other relief as is just and proper.

Respectfully submitted this 11th day of December, 2020.

PHILIP J. WEISER, Attorney General


*s/  Kathleen Spalding*
STEPHANIE LINDQUIST SCOVILLE, #31182*
First Assistant Attorney General
KATHLEEN SPALDING, #11886*
Senior Assistant Attorney General
EMILY GARCIA, #55413*
Attorney General Fellow
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: 720-508-6000
Email: Stephanie.scoville@coag.gov;
        Kit.spalding@coag.gov ;
        Emely.garcia@coag.gov
*Counsel of Record
*Attorneys for State Defendants*