**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-2985-WJM-SKC

DENVER HOMELESS OUT LOUD, *et al.,*

     Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO, *et al.,*

     Defendants.

---

**STATE DEFENDANTS'**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT (DOC. 160)**

---

State Defendants, Richard Lee (R. Lee)[1], and Colorado State Patrol Troopers Alec Barkley, J.P. Burt, William Caldwell, Umair Cheema, Jacob Cleveland, Crystal Crenshaw, Colin Daugherty, Gregory Davey, David Dinkel, Joe Dirnberger, Andrew Gasparovic, Christopher Gonzales, Nathan Hardy, Jeremy Harrington, Heidi Jewett, Geoffrey Keeling, Doug Kline, Bryan Larreau, Thomas Major, Sean McCall, Brandon Novy, Haas E. Pratt, Kevin Rae, Kyle Ross, Rusty Sanchez, Victor Sargenti, Tye Simcox, Jonathan Strickland, Nicholas Trujillo, Ryan Voss, Darce Weil, and Patrick Williams (State Troopers) (collectively, State Defendants), move to dismiss Plaintiffs' First Amended Complaint (Doc. 160) under Fed. R. Civ. P. 12(b)(1) and (6).

**STATEMENT REGARDING CONFERRAL**

Counsel are mindful of this Court's practice standards for conferral on Rule 12

---

[1] Because Plaintiffs also sue Denver employee Danica Lee, State Defendants refer to Defendant Richard Lee as R. Lee.

motions, WJM Revised Practice Standards, § III.D.1., and have conferred multiple times about Plaintiffs' claims and the defenses raised in this motion. Many of the grounds for dismissal in this motion are the same ones that State Defendants asserted in response to Plaintiffs' prior complaint. Counsel conferred about the basis for that motion by video conference prior to filing the motion on December 11, 2020. Counsel again conferred by video conference on March 2, 2021 and discussed each one of the grounds asserted for dismissal, including Eleventh Amendment immunity, standing, and failure to state the elements of particular constitutional claims. Undersigned counsel followed up by sharing portions of State Defendants' draft brief, and in another email on March 11 identifying the legal deficiencies in the state constitution claims. On March 17 and 18, 2021, undersigned counsel further engaged in email conferral. Plaintiffs do not agree that any of the claims against State Defendants are legally barred or that the claims are not sufficiently pleaded, and therefore, oppose this motion.

**INTRODUCTION**

State Defendants' response to Plaintiffs' recently amended complaint is largely the same as the Governor's position at the preliminary injunction hearing – State Defendants may not be held liable for policy decisions made by local government officials.

Plaintiffs recently amended their complaint a second time, but the focus of their case remains the same – a challenge to Denver's ordinance banning camping and Denver's past and ongoing decisions to move homeless encampments during the coronavirus pandemic. State Defendants remain in the case only to the extent that state

actors participated in a single incident: Denver's July 29, 2020 clean-up of Lincoln Park. As supported by testimony at the preliminary injunction hearing, there is no dispute that the Lincoln Park operation was planned and ordered by Denver and primarily carried out by its employees. *See, e.g.*, Am. Compl. (Doc. 160), ¶¶ 188-194. Even according to Plaintiffs' newly amended complaint, Denver: planned the sweep, *id.* ¶¶ 188, 192; directed the actions of those on the ground, *id.* ¶ 203; determined what notice should be given and posted the notice that the park would be closed due to health concerns, *id.* ¶¶ 189, 193, 199, 206; advised campers that they needed to remove their belongings, *id.* ¶¶ 208; and seized and destroyed campers' property. *Id.* ¶¶ 194, 210, 212-217, 220, 239, 255, 266. In fact, Plaintiffs acknowledge it was "Denver's customs, policies, and/or practices, and the decisions of its final policymakers, [that] were the moving force" behind the violation of Plaintiffs' constitutional rights. *Id.* ¶¶ 456, 469, 487, 504.

Plaintiffs continue to bring claims against the individual State Troopers who participated in the clean-up of Lincoln Park. As with the prior complaint, of the 629 paragraphs of factual allegations, only a handful mention State Troopers, and none identify the actions of any individual trooper. Plaintiffs claim only that the State Troopers set up and secured a fence along the perimeter of the park, *id.* ¶¶ 207, 211, 253, 264; and prevented campers from re-entering the park to retrieve their property, *id.* ¶¶ 211, 218, 219, 231, 254, 257, 265. The Amended Complaint, however, now explicitly identifies other defendants as the ones who seized and destroyed Plaintiffs' property. *Id.* ¶¶ 194, 210, 212-217, 220, 239, 255, 266.

Although Plaintiffs recently dismissed Governor Polis in his official and individual

capacities, their Amended Complaint substituted an employee of the Colorado Department of Personnel and Administration (DPA), Richard Lee, in his official and individual capacities. But the allegations of the Amended Complaint relating to R. Lee are even thinner than those relating to the Governor. R. Lee is mentioned in only two paragraphs, alleging that he oversaw the DPA contractors, John & Jane Poes 1-20, who erected the fence at Lincoln Park and seized property. *Id*. at ¶¶ 47, 204.

None of Plaintiffs' claims are viable. The State committed significant hours and resources to Governor Polis's defense, resulting in dismissal of the unfounded claims against him. Whether there is a sufficient basis for the claims against the other State Defendants should be resolved at the outset. If discovery should unearth conduct amounting to a constitutional violation by an individual trooper or other State employee, that individual may be added back to the action. But at this stage, Plaintiffs have not plausibly established that any such actions occurred. State Defendants should not be required to continue to participate in litigation on unsupported claims that are fundamentally not about their conduct.

## ARGUMENT SUMMARY

### Official Capacity Claims

Plaintiffs assert federal official capacity claims and state constitutional claims against all State Defendants in their official capacities. Governor Polis's prior defenses in his official capacity now apply to R. Lee and the State Troopers in their official capacities. Chiefly, the official capacity claims are barred by Eleventh Amendment immunity, including because the Eleventh Amendment does not permit federal actions

to enforce state law. An exception to Eleventh Amendment immunity permits suits against state officials seeking to enjoin alleged ongoing violations of federal law, but here, there are no alleged ongoing violations of federal law. And in making a state officer a party defendant, a plaintiff must establish a connection with the enforcement of an act alleged to be unconstitutional. Plaintiffs' Amended Complaint does not plausibly establish a connection between R. Lee's single instance of supervising fence contractors or the State Troopers' single instance of operational support and the enforcement of the municipal codes and city health regulations.

Plaintiffs' official capacity injunctive relief claims further fail because Plaintiffs do not have standing based on the face of their Amended Complaint. The Lincoln Park operation was set in motion and directed by Denver, and so Plaintiffs have not established an ongoing injury-in-fact that was caused by R. Lee or the State Troopers and that could be remedied by any of them. Plaintiffs' state law claims further fail because State Defendants cannot be sued, either for damages or for injunctive or declaratory relief under the provisions of § 13-21-131, C.R.S.

<u>Individual Capacity Claims</u>

The individual capacity claims against all State Defendants fail because Plaintiffs have not alleged facts which, if true, would support a finding that R. Lee or any State Trooper personally violated their constitutional rights. The facts implicating R. Lee are limited and wholly conclusory. Similarly, Plaintiffs fail to establish the personal involvement of any particular State Trooper in a constitutional violation. The Amended Complaint substitutes a group of 32 of the State Troopers' names for "all defendants,"

but this was a change in form, not in substance. Am. Compl. (Doc. 160), ¶¶ 207, 211, 218, 219, 231, 232, 249, 250, 253, 254, 257, 264, 265. Plaintiffs' conclusory pleading results in the dismissal of Plaintiffs' federal claims in two ways: 1) Plaintiffs fail to state § 1983 claims; and 2) State Defendants are entitled to qualified immunity.

Plaintiffs' § 1983 claims further fail because Plaintiffs have not established the elements of the various constitutional violations they allege. Plaintiffs do not allege that any State Defendant took any property, which means that they cannot establish either a Fourth Amendment/seizure, a Fourteenth Amendment/takings claim, or a Fourteenth Amendment/due process claim. Instead, Plaintiffs identify other parties as those responsible for the destruction of property. Plaintiffs' allegations also do not support the elements of Fourteenth Amendment takings, procedural due process, or substantive due process claims. These failures to state a claim require dismissal and entitle State Defendants to qualified immunity.

## ARGUMENT

### I.      Standard of Review.

State Defendants move under Rule 12(b)(1) to dismiss the official capacity claims against all State Defendants. A motion to dismiss based on Eleventh Amendment immunity is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Harris v. Owens*, 264 F.3d 1282, 1288 (10th Cir. 2001). Because federal courts may exercise jurisdiction only when authorized to do so, there is a presumption against federal jurisdiction. *Neiberger v. Hawkins*, 150 F. Supp. 2d 1118, 1120 (D. Colo. 2001). The parties invoking the Court's jurisdiction – Plaintiffs –

bear the burden to establish the Court's jurisdiction. *Id.*

State Defendants also move to dismiss the individual capacity claims for failure to state a claim under Rule 12(b)(6). In reviewing a Rule 12(b)(6) motion for the failure to state a claim for relief, a court must accept well-pleaded allegations as true and view the allegations in a light most favorable to the plaintiff. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). But Rule 12(b)(6) requires that a complaint contain more than conclusory allegations or conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint does not need to include detailed factual allegations, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

As part of their Rule 12(b)(6) motion, State Defendants also assert their right to qualified immunity. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). Plaintiffs bear a heavy burden to establish both a constitutional violation and that the constitutional right was clearly established at the time of the alleged violation. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation omitted).

**II.      The official capacity claims against State Defendants are jurisdictionally barred.**

**A.     State Defendants have Eleventh Amendment immunity**

**1. State Defendants have Eleventh Amendment immunity on the official capacity federal claims.**

Under the Eleventh Amendment, the State and its officers are not subject to suit in federal court. *See, e.g., Eastwood v. Dep't of Corrs. of Okla.*, 846 F.2d 627, 631 (10th Cir. 1988) (The Eleventh Amendment "prohibits suits in federal court against a state by its own citizens."). The *Ex parte Young* doctrine provides a notable exception to this immunity, permitting some suits seeking prospective relief against state officials in order to enforce the observance of federal rights by states. *Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). But that exception is not applicable here because there is no ongoing violation of federal law.

The *Ex parte Young* exception may be invoked only when a plaintiff has plausibly alleged an ongoing violation of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). To determine whether the *Ex parte Young* exception applies, courts need not determine whether an actual violation of federal law occurred. *Id*. Instead, courts "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id*. (internal quotation omitted).

Here, Plaintiffs do not allege any ongoing violation of federal law by R. Lee or State Troopers. Plaintiffs plead only that R. Lee acted in a single instance over seven months ago to oversee contractors who erected a fence on the day of the Lincoln Park sweep. As detailed below, the act of putting up a fence around a park in the past is not

in and of itself a constitutional violation, much less an ongoing violation that must be remedied through injunctive relief. Similarly, State Troopers are alleged to have participated in only one operation. Plaintiffs do not allege, and there are no facts to support, that State Defendants are responsible for any ongoing enforcement actions. Because Plaintiffs have not, and cannot, assert an ongoing violation of federal constitutional rights by State Defendants, they are entitled to Eleventh Amendment immunity on the federal claims.

### 2. State Defendants also are entitled to Eleventh Amendment immunity on the state constitutional claims.

Plaintiffs also bring two claims, Claims Eleven and Twelve, under § 13-21-131, C.R.S. (2020), a new state law that provides a vehicle for asserting claims under the Colorado Constitution, much like § 1983. Plaintiffs sue various Denver Defendants, and in passing, state that they intend to seek relief from "other Defendants" for declaratory and injunctive relief. Am. Compl. (Doc. 160), ¶¶ 517-585. During the conferral process, Plaintiffs clarified that these two claims are intended to be asserted against all State Defendants in their official capacities.

The Eleventh Amendment bar applies with equal force to these state constitution claims. The Eleventh Amendment bars "any suit, in law or equity" brought by citizens of a state against the state itself. *Welch v. Texas Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 472 (1987) (citations omitted). But while the *Ex parte Young* doctrine provides an avenue for a suit against a state to enjoin an ongoing violation of federal law, the doctrine does not permit suits to prevent ongoing violations of state law. *Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995); *see also ANR Pipeline Co. v. Lafaver*,

150 F.3d 1178, 1188 (10th Cir. 1998) ("[F]ederal courts have no jurisdiction to entertain a suit that seeks to require the state official to comply with state law – only allegations of violations of federal law are sufficient to come within the *Ex parte Young* rule."), *abrogated on other grounds by Hill v. Kemp*, 478 F.3d 1236 (10th Cir. 2007). For this reason, Plaintiffs' claims for injunctive relief based on alleged violations of the Colorado Constitution are jurisdictionally barred.

### 3. All State Defendants are entitled to Eleventh Amendment immunity because no State Defendant has the requisite connection to the enforcement of Denver's public health orders.

The *Ex parte Young* exception does not apply to State Defendants for another reason. For a state official to be subjected to an injunction, "it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Peterson v. Martinez,* 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Ex parte Young*, 209 U.S. at 157). "Defendants are not required to have a special connection to the unconstitutional act or conduct. Rather, state officials must have a particular *duty* to enforce the statute in question and a demonstrated willingness to exercise that duty." *Id.* (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007)) (internal quotations omitted) (emphasis added).

Again, State Defendants' involvement on July 29, 2020 was part of an action taken pursuant to municipal ordinances and a municipal public health order. Plaintiffs do not allege, nor is there independent authority for the proposition, that either R. Lee or State Troopers have a duty to enforce municipal ordinances such as the Denver

camping ban or Denver public health orders, even on State property. As a result, the *Ex parte Young* doctrine may not be invoked, and State Defendants may not be sued for prospective injunctive relief.[2]

### B.     Plaintiffs have not established standing for a permanent injunction against State Defendants.

Plaintiffs have not established the basic elements of standing to seek permanent injunctive relief against State Defendants. Plaintiffs must demonstrate standing for each kind of relief they seek. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (noting that a plaintiff may have standing to pursue damages but not injunctive relief). To invoke the Court's jurisdiction, a plaintiff must demonstrate, at an irreducible minimum, that: 1) he has suffered actual or threatened injury as a result of defendant's putatively illegal conduct; 2) the injury is traceable to the challenged conduct; and 3) the injury is likely to be redressed if the requested relief is granted. *PeTA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002). When these elements are not met, allowing courts to oversee executive actions intrudes into the policy making functions of the executive. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Here, Plaintiffs cannot establish any of the elements of standing.

### 1.  Plaintiffs cannot establish an injury-in-fact because they do not face an immediate and substantial threat of injury from State Defendants.

---

[2] State Defendants also note that to the extent Plaintiffs seek unspecified permanent injunctive relief in the form of policy changes in the operation of the Patrol, individual State Troopers are not the right parties for obtaining that relief. There is no allegation in the complaint, nor could there be, that individual troopers determine the policy of the Patrol with regard to participating in an operation such as the one in Lincoln Park.

To seek injunctive relief, Plaintiffs must show that they are under threat of suffering an injury in fact that is concrete and particularized; "the threat must be actual and imminent, not conjectural or hypothetical." *Id*. Put another way, the threatened injury must be "real, immediate, and direct." *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 756 (10th Cir. 2010) (internal citations omitted). The alleged injury must be "certainly impending" and may not be based "merely on subjective apprehensions that the defendant might act unlawfully." *Finstuen v. Crutcher*, 496 F.3d 1139, 1143-44 (10th Cir. 2007) (internal quotations omitted). While past harm may be relevant, past harm alone is not sufficient to establish standing to obtain injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief....") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974)). Claims for prospective relief require a continuing injury. *PeTA*, 298 F.3d at 1202.

Here, Plaintiffs have not established a real or immediate threat that they will again be harmed either by the complained-of conduct by R. Lee or the State Troopers. Plaintiffs recognize that the July 29, 2020 clean-up of the Park was directed by Denver; it was not an enforcement action initiated under state law or the State's independent enforcement authority. *See, e.g.*, Am. Compl. (Doc. 160), ¶ 206. Even according to Plaintiffs' description, R. Lee and the State Troopers provided only limited support services. *See, e.g.*, *Id*. ¶¶ 47, 204, 207, 211. More importantly, Plaintiffs have not established either a continuing injury or a real and immediate threat of future injury. They have not established that there will be another clean-up of Lincoln Park

encampments, and the Park has been fenced since July 2020. As a result, Plaintiffs have not established standing to seek prospective injunctive relief.

**2. Plaintiffs have not established an ongoing injury traceable to State Defendants' conduct or that State Defendants could redress Plaintiffs' claimed injury.**

Plaintiffs also fail to establish standing because their alleged injuries are not traceable to any conduct by any of State Defendants. To demonstrate the requisite causation, a plaintiff must show "a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court…". *State of Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998) (internal citation omitted). Likewise, Plaintiffs have not established that an injunction against R. Lee or State Troopers would redress their injuries when they did not decide to clean-up Lincoln Park. *See Lawrence v. Colo.*, 455 F. Supp. 3d 1063, 1072-73 (D. Colo. 2020).

Plaintiffs challenge Denver's camping ban and Denver's enforcement of that ban. The injunctive relief they seek relates to the enforcement of Denver ordinances and Denver's ongoing decisions to sweep homeless camps. Am. Compl. (Doc. 160), ¶¶130-142. Plaintiffs have not established a similar injury caused by any State Defendant. Because Plaintiffs have not shown that their alleged injuries are traceable to any official decisions or acts of either R. Lee or State Troopers, they cannot establish standing to obtain injunctive relief against State Defendants.

**III.    Plaintiffs fail to state claims for injunctive relief under the State Constitution.**

Even if Plaintiffs' state law claims clear the jurisdictional bars asserted above, the claims seeking injunctive relief from State Defendants fail for three independent reasons and should be dismissed under Rule 12(b)(6).

First, Plaintiffs may not maintain an action for the violation of the Colorado Constitution in the absence of statutory authority permitting it. The Colorado Supreme Court has refused to recognize implied civil remedies under the Colorado Constitution unless there is no other adequate remedy at law. *Bd. of Cty. Comm'rs of Douglas Cty. v. Sundheim*, 926 P.2d 545, 553 (Colo. 1996). In this lawsuit, Plaintiffs seek the very same remedies under the U.S. Constitution as they seek in their state constitutional claims. Because adequate remedies otherwise exist, Plaintiffs' state constitutional claims are barred.

Second, Plaintiffs' state constitutional claims are brought under § 13-21-131, C.R.S. (2020), a new state law that provides a vehicle for asserting some claims against law enforcement officers under the Colorado Constitution, much like § 1983. But this statute does not apply to State Defendants. Section 13-21-131(1) provides for a cause of action against a "peace officer" who is "employed by a local government" for depriving any individual of the rights secured by article II of the Colorado Constitution. Therefore, the only proper defendants under the statute are those who are both peace officers and employees of a local government. R. Lee is plainly neither, and while State Troopers may be peace officers, they are not employed by a local government.

Third, Plaintiffs' state constitutional claims are not cognizable. Plaintiff's Claim Eleven asserts that Plaintiffs have "the fundamental rights of freedom of movement and

to use the public streets and facilities in a manner that does not interfere with the liberty of others." Am. Compl. (Doc. 16), ¶¶ 562, 563. But the right that Plaintiffs assert has not been established under the Colorado Constitution. No court has interpreted Colorado's "inalienable rights" of "enjoying and defending [] lives and liberties," art. II, sec. 3, to protect a right to camp on public property. And to the extent Plaintiffs' Claim Eleven is one asserting a constitutional right to travel, Plaintiffs fail to state a claim for the reasons amply described by Denver Defendants, Doc. 176, pp. 28-32. State Defendants adopt that briefing, but in the interest of avoiding prolix briefing, do not fully restate those arguments here.

Plaintiff's Twelfth Claim against State Defendants asserts violation of state guarantees of equal protection. Denver's Motion to Dismiss (Doc. 176) fully addresses the shortcomings of this claim, and State Defendants adopt those arguments. As explained by Denver Defendants, an equal protection claim fails because unhoused persons do not fall within a constitutionally recognized protected class. *See* Doc. 176, pp. 32-36. State Defendants' conduct, therefore, need only be rationally related to a legitimate government interest in health and safety. *Id*.; *see also Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1113-14 (E.D. Cal. 2012) (granting motion to dismiss plaintiffs' equal protection claims based on the classification of the homeless as a suspect class and noting that the city's "cleanups can be justified for numerous reasons, including aesthetics, sanitation, public health and safety"). The alleged conduct of State Defendants in erecting a fence and providing security during a contentious cleanup of Lincoln Park easily clears that bar.

IV.   **Plaintiffs' individual capacity claims against each of State Defendants are barred for failure to sufficiently establish personal participation in the violation of a clearly established federal constitutional right.**

A.   **Plaintiffs fail to state plausible individual capacity claims against R. Lee.**

Plaintiffs' Claims 1 – 4, various § 1983 claims, are against R. Lee in his individual capacity. Personal participation is an essential element of a § 1983 action. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). When a plaintiff asserts a constitutional claim against an individual, he must allege specific facts that demonstrate how that individual personally participated in the constitutional violation. *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (noting that to state a claim against a government official for the violation of an individual's constitutional rights, "a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the constitution."). "A plaintiff's failure to satisfy this requirement will trigger swift and certain dismissal." *Estate of Roemer v. Johnson*, 764 F. App'x 784, 790 n. 5 (10th Cir. 2019).

Moreover, to state a plausible claim for relief, a plaintiff must provide the defendant with the grounds on which the claim rests. *Robbins,* 519 F.3d at 1249. "[I]f [the allegations in a complaint] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555. Conclusory allegations are not entitled to the presumption that the allegations are true. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

Plaintiffs' individual capacity claims are based wholly on the assertion that R. Lee "oversaw" or "directed" contractors who erected a fence around Lincoln Park. Am. Compl. (Doc. 160), ¶¶ 47, 204. But a supervisor may not be held liable simply because he was in charge of other state actors. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). First, there must be an underlying constitutional violation by a supervisee. *Doe v. Woodard*, 912 F.3d 1278, 1290 (10th Cir. 2019). And then a plaintiff must demonstrate an "affirmative link" between the supervisor and the alleged constitutional violation. *Dodds*, 614 F.3d at 1195. An affirmative link is established with facts to demonstrate: 1) personal involvement; 2) sufficient causal connection; and 3) culpable state of mind. *Id*. "The second element requires the plaintiff to show that the defendant's alleged action(s) caused the constitutional violation by setting in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights. *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019).

Plaintiffs' Amended Complaint fails on each of these points. Even assuming that the acts of Poes 1-20 in erecting a fence could be unconstitutional, Plaintiffs do no more than allege that R. Lee "was overseeing" the contractors. Am. Compl. (Doc. 160), ¶¶ 47 204. Plaintiffs do not make any effort to specify actions by R. Lee that would establish his personal involvement, the requisite causation, or his culpable state of mind. As a result, Plaintiffs have established neither that R. Lee's own conduct was wrongful nor

that he may be held responsible for the conduct of the contractors. The individual

capacity claims against him should be dismissed.

### B. Plaintiffs also fail to articulate the personal participation of the individual State Troopers.

The authorities cited above requiring personal participation by an individual

§ 1983 defendant, as well as the authorities requiring plausible, specific allegations

against each individual, apply with equal force to State Troopers.

Collective pleading is insufficient to state a § 1983 claim against individually

named defendants. *See Walker v. Mohiuddin*, 947 F.3d 1244, 1249-50 (10th Cir. 2020);

*Robbins*, 519 F.3d at 1250 ("Given the complaint's use of either the collective term

'Defendants' or a list of the defendants named individually but with no distinction as to

what acts are attributable to whom, it is impossible for any of these individuals to

ascertain what particular unconstitutional acts they are alleged to have committed.").

When multiple defendants are sued under § 1983, "it is particularly important . . . that

the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide

each individual with fair notice as to the basis of the claims against him or her, as

distinguished from collective allegations against the state." *Robbins*, 519 F.3d at 1249-

50 (emphasis in original) (granting motion to dismiss when complaint simply listed

Defendants' names "but with no distinction as to what acts are attributable to whom.").

To allow a complaint to proceed without this basic information "would impose the cost of

discovery on the defendants for no plausible basis." *Id*. at 1248.

The Amended Complaint makes allegations against all State Troopers

collectively, often grouping them with various Denver and yet-unidentified defendants.

*See, e.g.,* Am. Compl. (Doc. 160), ¶ 211. And while the Amended Complaint has progressed from alleging that unspecified "defendants" took certain actions, listing a group of 32 troopers in addition to scores of other defendants is an amendment that is largely form over substance. The factual allegations still fail to identify a wrongful act of any particular trooper. *See, e.g., id.* ¶ 218 (alleging that State Troopers and Denver officers secured the park).[3] Plaintiffs never identify that any individual trooper seized Plaintiffs' property, failed to provide them with some process, or placed Plaintiffs in danger. As a result, Plaintiffs have not identified any basis for the individual capacity claims against State Troopers.

### C.    R. Lee and State Troopers are entitled to qualified immunity.

For the same reason that the individual capacity claims against State Defendants are deficient, they are also entitled to qualified immunity. A government official is entitled to qualified immunity "when 'the facts that a plaintiff has alleged' fail to 'make out a violation of a constitutional right.'" *Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2108) (quoting *Pearson*, 555 U.S. at 232). Because Plaintiffs plead no facts showing that State Defendants took actions that might plausibly be regarded as unconstitutional, they are entitled to qualified immunity. As a result, Plaintiffs' Claims 1-4 against all State Defendants in their individual capacities should be dismissed.

### V.    Plaintiffs further fail to establish the elements of their federal claims, or that their rights were clearly established.

---

[3] Plaintiffs' Amended Complaint does not include Trooper Jacob Cleveland in any factual allegations relating to Lincoln Park. Because there are no claims made against him, all claims against Trooper Cleveland should be dismissed. State Defendants have raised this issue with Plaintiffs.

### A.    Plaintiffs' Fourth Amendment, takings, and due process claims fail because there was no seizure of property by State Defendants.

In Plaintiffs' Second, Third, and Fourth Claims for Relief, Plaintiffs aver that "[b]y seizing and destroying Plaintiffs' property, unspecified "Defendants" meaningfully and permanently interfered with Plaintiffs' possessory interest in their property and destroyed Plaintiffs' property without just compensation." Am. Compl. (Doc. 160), ¶¶ 451, 465; see also ¶ 483. But as stated above, the Amended Complaint lacks facts showing that any State Defendant actually seized or destroyed Plaintiffs' property. Instead, Plaintiffs repeatedly allege that <u>other</u> defendants were the ones who seized and destroyed Plaintiff's property. Id. ¶¶ 168, 169, 194, 210, 212-217, 220, 239, 255, 266. Denver's actions and policies were "the moving force" behind the violation of Plaintiffs' constitutional rights. Id. ¶¶ 456, 469, 487. State Defendants' presence while other defendants decided to and actually took action to dispose of property is not sufficient to implicate State Defendants in a constitutional violation. Because Plaintiffs do not have any facts to demonstrate that State Defendants took any action to seize or destroy property, Plaintiffs have not plausibly stated a Fourth Amendment seizure claim, a Fourteenth Amendment takings claim, or a Fourteenth Amendment due process claim.

State Defendants are also entitled to qualified immunity for Plaintiffs' federal constitutional claims because Plaintiffs have not shown that their asserted rights are clearly established. "Clearly established law must be 'particularized' to the facts of the case." White v. Pauly, 137 S. Ct. 548, 552 (2017). To be clearly established, there must

be an on-point Supreme Court or Tenth Circuit decision, or the weight of authority from other circuits recognizing the asserted constitutional rights. *Harris v. Mahr*, 2020 WL 7090506, at *2 (10th Cir. 2020). State Defendants have found no authority in the Tenth Circuit or Supreme Court providing that government actors who did not seize property, coordinate the seizure of property, or have control of the property seized were liable for Fourth Amendment seizure, Fourteenth Amendment takings, or Fourteenth Amendment due process claims. State Defendants found only one case, a California district court case, where police officers who did not seize property, but threatened homeless campers with arrest if they attempted to retrieve their property, were deemed "integral participants" in an encampment cleanup and possibly liable under the Fourth and Fourteenth Amendments. *Sanchez v. City of Fresno*, 2013 WL 2100560 at *8 (E.D. Cal. May 14, 2013). This case alone is insufficient to show that the weight of authority from other circuits recognizes Plaintiffs' asserted constitutional rights. Accordingly, State Defendants are entitled to qualified immunity.

### B. Plaintiffs' takings claim fails because they do not establish a taking for public use.

The takings claim suffers another legal defect. The Takings Clause forbids the taking of property for public use without just compensation. U.S. Const. amend. V. But the seizure of property pursuant to a governmental entity's police power is not a taking for public use. *See Bennis v. Michigan*, 516 U.S. 442, 452–53 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.") (citing cases); *Lawmaster v. Ward*, 125 F.3d 1341, 1351 (10th Cir. 1997)

(finding plaintiff who alleged law enforcement agents seized his property pursuant to a search warrant had nevertheless failed "to allege any facts showing how his property was taken for public use in violation of the Fifth Amendment."); *Lech v. Jackson*, 791 F. App'x 711, 719 (10th Cir. 2019) (holding that because police officers who damaged a residence while pursuing a criminal suspect acted pursuant to its police power, rather than the power of eminent domain, the officers' actions did not constitute a taking for purposes of the Takings Clause). Recognizing this principle, district courts in other circuits have dismissed takings claims for seizures of homeless individuals' property where the officials were not acting pursuant to eminent domain. *See, e.g., Cooley v. City of Los Angeles*, No. 2:18-cv-09053-CAS-PLAx, 2019 WL 1936437 at *5 (C.D. Cal. May 1, 2019); *Sanchez,* 914 F. Supp. 2d at 1106-07 (dismissing takings claim where city seized and destroyed property during cleanup of homeless encampments).

Here, Plaintiffs acknowledge that the Denver Department of Public Health and Environment ordered the closure of Lincoln Park over public health concerns. Am. Comp. (Doc. 160), ¶¶ 193, 206. Because Plaintiffs allege their property was seized pursuant to an exercise of Denver's police power, Plaintiffs fail to state a claim for a taking. The failure to establish a constitutional violation further entitles all State Defendants to qualified immunity. Additionally, as discussed in Denver's Motion to Dismiss, Plaintiffs may not state both a Fourth Amendment seizure and Fourteenth Amendment takings claim, and State Defendants adopt that argument. *See* Denver's Mot. to Dismiss (Doc. 176), p. 18; *see also De-Occupy Honolulu v. City and Cty. of Honolulu,* No. 12-00668-JMS-KSC, 2013 WL 2284942 at *10 (D. Haw. May 21, 2013)

(noting that if a plaintiff establishes a Fourth Amendment claim, then the taking was unlawful and may not be the subject of a Takings Claim, which requires a lawful taking).

### C. Plaintiffs' procedural due process claim fails because State Defendants did not owe Plaintiffs any particular process.

In Plaintiffs' Third Claim for Relief, Plaintiffs state that unspecified defendants seized and destroyed Plaintiffs' property without affording them a pre- or post-deprivation process for challenging the seizure of their property. Am. Compl. (Doc. 160), ¶¶ 479-80. Plaintiffs and Denver Defendants entered into the *Lyall* settlement agreement, which provides the amount of notice Denver must give prior to a cleanup, and procedures for storing seized property. *Id.* ¶¶ 152-156. Denver Defendants planned the Lincoln Park cleanup, *id.* ¶¶ 188, 192; and determined what notice should be given and posted the notice that the park would be closed due to health concerns. *Id.* ¶¶ 189, 193, 199, 206. Plaintiffs do not establish any process that State Defendants, who did not plan the cleanup and did not seize or store any property, were obligated to provide to Plaintiffs. And as with the other claims, this failure to establish a constitutional violation results in the application of qualified immunity.

### D. Plaintiffs' substantive due process rights have not been violated because they have not established that State Defendants created a special danger.

In their Fourth Claim for Relief, Plaintiffs claim State Defendants violated their substantive due process rights by creating a risk to Plaintiffs of greater exposure to COVID-19 and/or the elements in conducting the Lincoln Park cleanup. Am. Compl. (Doc. 160), ¶ 498. Denver's Mot. to Dismiss (Doc. 176), pp. 20-25 ) accurately cites the test for a plaintiff to show that a defendant created a "special danger" sufficient to trigger

substantive due process protections, and correctly emphasizes that a state actor must have created the danger and acted with a conscious disregard of an obvious risk to Plaintiffs' safety. *See, e.g., Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). The test also requires a plaintiff "to do more than show that a government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Id*. "[P]laintiff[s] must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id*. (the standard requires a "high level of outrageousness."). And plaintiffs must allege a link between the danger created by state actors' actions and actual harm suffered by the victim. *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 928 (10th Cir. 2012) ("A 'would-be' victim who averts danger, and thus the harm, may not claim the denial of a constitutional right to be free from state-created dangers.") State Defendants adopt Denver's briefing and the cases Denver cites applying this standard to the rights of homeless persons.

As to State Defendants, Plaintiffs' only allegations relevant to the substantive due process analysis are that: R. Lee oversaw the contractor who erected a fence; State Troopers provided security for the construction of the fence; and State Troopers prevented individuals from entering the park after it was closed. Am. Compl. (Doc. 160), ¶¶ 204, 207, 211. Plaintiffs do not single out any State Defendant as responsible for creating the danger, but instead contend generally that the actions of "Defendants" were conscience-shocking because Defendants collectively were aware that "the risk of greater exposure to COVID-19 and/or exposure to the elements was obvious and known to Defendants." *Id.* at ¶ 498.

But Plaintiffs' own allegations undercut the basis for this claim against State Defendants. Denver health officials, not State Defendants, decided to close the park due to health concerns. *Id.* at ¶¶ 193, 194, 206. Plaintiffs were given more than four hours to collect their belongings. *Id.* ¶¶ 205, 218, 232. And there are no allegations that State Defendants had any role in participating in cleanups of other camping areas, or in suggesting that homeless individuals be placed in indoor shelters. None of these allegations establish conduct by State Defendants that is so egregious that it rises to the level of shocking the conscience.

At most, Plaintiffs have alleged that State Defendants assisted Denver's efforts to close Lincoln Park, not that State Defendants otherwise prevent outdoor camping, thereby increasing the danger to Plaintiffs. Plaintiffs have not shown, and cannot show, that camping outside Lincoln Park posed a greater danger to Plaintiffs than camping inside the park. Nor have Plaintiffs shown that they suffered any actual, serious harm due to State Defendants' actions. Notably, Plaintiffs allege the sweeps expose them to increased dangers, including COVID-19, the elements due to not having their tents, and violence from moving to unfamiliar areas. *Id.* at ¶¶ 398, 400-06. But Plaintiffs do not allege that any individual Plaintiff in fact contracted COVID-19 due to the Lincoln Park sweep, or suffered injuries from exposure to the elements, or were victims of violence due to moving to a new location. And mere allegations of a possible exposure to increased risks, with no actual showing of actual, serious injury, are insufficient to state a substantive due process claim based on a "danger creation" theory. *Gray*, 672 F.3d at 928 (holding that a state actor's "affirmative act creating the danger or rendering the

victim more vulnerable to it does *not* constitute a constitutional deprivation.") (emphasis in original); *Sanchez,* 2013 WL 2042058 at *10 (dismissing homeless plaintiffs' substantive due process claim and noting that "the Court has exhaustively examined the body of precedent from within and without this Circuit and has been unable to locate a single example of a court imposing danger creation liability based upon anything other than *actual, serious* bodily injury.") (emphasis in original).

Plaintiffs' allegations are insufficient to show that State Defendants' limited involvement in the Lincoln Park cleanup created a special danger, caused Plaintiffs actual harm, or put them in a position where they sustained substantial risk to their health and safety. *See Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 433 (N.D. Cal. 2017) (dismissing a substantive due process claim in the absence of evidence that the closure of a homeless encampment on city property increased the dangers to homeless plaintiffs). Because Plaintiffs have failed to state the elements necessary for a substantive due process claim, and because the actions of State Defendants do not rise to the outrageous, conscience-shocking behavior required to establish such a claim, the Fourth Claim should be dismissed, and State Defendants are entitled to qualified immunity.

E.   **Plaintiffs' claims that R. Lee violated the constitution are particularly deficient.**

Although the claims against R. Lee are subject to dismissal for all the reasons stated above, State Defendants call out the allegations against R. Lee as particularly void of substance. To the extent Plaintiffs assert that R. Lee violated Plaintiffs' constitutional rights by playing a part in the construction of a fence around

Lincoln Park, Plaintiffs have failed to state any viable constitutional claim. The basis of Plaintiffs' constitutional claims is that Plaintiffs were forced to move from the park with no notice, or insufficient notice, and lost their belongings as a result. But the existence of a fence, with numerous exit and entry points, did not cause any of these alleged wrongs to occur. There is no allegation that either R. Lee or employees of the fence contractor took any action to prevent campers from leaving the park, or returning to the park, through the entry points the fence provided. Am. Compl. (Doc. 160), ¶¶ 218; 238-39; 254; 265. Nor is there any allegation that either R. Lee or the contractor's employees removed, or even touched, campers' property.

R. Lee is entitled to qualified immunity because the claims made against him fail both prongs of the qualified immunity analysis. Plaintiffs have failed to state facts establishing that the construction of a fence around a public park violates the constitutional rights of individuals who use it. And State Defendants have unearthed no authority to demonstrate that public employees who do nothing more than construct a fence around a public park may be held liable for the violation of park users' constitutional rights.

Because Plaintiffs plead no facts implicating R. Lee in the violation of Plaintiffs' clearly established constitutional rights, all claims asserted against him (Claims One - Four) should be dismissed.

## CONCLUSION

For these reasons, State Defendants request that the Court dismiss all claims against them and reward other relief as is just and proper.

Respectfully submitted this 25th day of March, 2021.

PHILIP J. WEISER, Attorney General

*s/ Kathleen Spalding*
STEPHANIE LINDQUIST SCOVILLE, #31182*
First Assistant Attorney General
KATHLEEN SPALDING, #11886*
Senior Assistant Attorney General
EMELY GARCIA, #55413*
Attorney General Fellow
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: 720-508-6000
Email: Stephanie.scoville@coag.gov;
         Kit.spalding@coag.gov ;
         Emely.garcia@coag.gov
*Counsel of Record
*Attorneys for State Defendants*