**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-2985-WJM-SKC

DENVER HOMELESS OUT LOUD, *et al.*,

     Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO, *et al.*,

     Defendants.

---

**ORDER GRANTING DENVER DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT [DOC. # 160]**

---

Before the Court is Defendant City and County of Denver ("Denver" or "City") and the individually named Defendants Mayor Michael Hancock in his individual capacity, Bob McDonald in his individual capacity, Danica Lee in her individual capacity, Murphy Robinson in his individual and official capacities, Kristin Bronson in her individual and official capacities, Charlotte Pitt in her individual capacity, Eliza Hunholz in her individual capacity, Lieutenant Mike Cody in his individual capacity, Sergeant Anthony Martinez in his individual capacity, Corporal Mark Moore in his individual capacity, Officer Thanarat Phuvhapaisalkij in his individual capacity, Officer Rop Monthathong in his individual capacity, Officer Chris Randall in his individual capacity, Officer David Hunter in his individual capacity, Officer Toby Wilson in his individual capacity, Officer Jon Udland in his individual capacity, Officer David Martinez in his individual capacity, Officer Wallace Sam in his individual capacity, Officer James Harvey in his individual capacity, Officer Darren Ulrich in his individual capacity, and Officer Mallory Lutkin in her individual

capacity (collectively, "Denver Defendants"), Motion to Dismiss Plaintiffs' First Amended Complaint[1] (Doc. #160) ("Motion").  (ECF No. 176.)  Plaintiffs Denver Homeless Out Loud, *et al.*, (collectively, "Plaintiffs") filed a response in opposition (ECF No. 196), to which the Denver Defendants replied (ECF No. 216).

For the following reasons, the Motion is granted.

## I. BACKGROUND AND PROCEDURAL HISTORY[2]

### A.    Plaintiffs' Allegations

In the operative Complaint,[3] Plaintiffs bring the following claims against the Denver Defendants in their official and/or individual capacities:

- unlawful seizure in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983 against Defendants[4] (Claim 1);

- unlawful taking in violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 against Defendants (Claim 2);

- deprivation of property without due process in violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 against Defendants (Claim 3);

- danger creation (substantive due process) in violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 against Defendants (Claim 4);

- void for vagueness (Denver Revised Municipal Code ("D.R.M.C.") 49-

---

[1] Although Plaintiffs titled this pleading the First Amended Class Action Complaint and Jury Demand (the "Complaint") (ECF No. 160), the Denver Defendants point out that it is in fact the third iteration of their pleading in this case (ECF No. 176 at 1 n.1).

[2] References to (¶ __), without more, are references to the Complaint.  (ECF No. 160.)

[3] The Court assumes the allegations contained in the Complaint are true for the purpose of resolving the Motion.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4] "Defendants" includes all Defendants named in this case.

246)[5] in violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, against Denver (Claim 6);

- unlawful seizure, pursuant to C.R.S. § 13-21-131 and Colorado Constitution, Article II, § 7 against Defendants John & Jane Boes 1-50,[6] Cody, A. Martinez, Moore, Phuvhapaisalkij, Monthathong, Randall, Hunter, Wilson, Udland, D. Martinez, Sam, Harvey, Ulrich, and Lutkin (Claim 7);

- unlawful taking, pursuant to C.R.S. § 13-21-131 and Colorado Constitution, Article II, § 15 against Defendants John & Jane Boes 1-50, Cody, A. Martinez, Moore, Phuvhapaisalkij, Monthathong, Randall, Hunter, Wilson, Udland, D. Martinez, Sam, Harvey, Ulrich, and Lutkin (Claim 8);

- due process, pursuant to C.R.S. § 13-21-131 and Colorado Constitution, Article II, § 25 against Defendants John & Jane Boes 1-50, Cody, A.

---

[5] D.R.M.C. 49-246 provides:

Sec. 49-246. - Order of removal.

The manager of transportation and infrastructure or the manager's designee (hereinafter in this article, "manager") is authorized to remove or to order the removal of any article, vehicle or thing whatsoever encumbering any street, alley, sidewalk, parkway or other public way or place (any such thing hereinafter in this article to be called an "encumbrance"). The manager may prescribe appropriate methods, specifications, placement and materials for encumbrances in the public right-of-way.

(Code 1950, § 336.1-1; Ord. No. 757-04, § 1, 10-18-04; Ord. No. 39-20, § 109, 2-3-20).

[6] Plaintiffs allege that "[a]t all times pertinent, Defendants John & Jane Boes 1-50 were acting within the scope of their official duties and employment and under color of state law in their capacities as law enforcement officers employed by the [Denver Police Department ("DPD")] DPD."  (¶ 80.)

Martinez, Moore, Phuvhapaisalkij, Monthathong, Randall, Hunter, Wilson, Udland, D. Martinez, Sam, Harvey, Ulrich, and Lutkin (Claim 9);

- danger creation, pursuant to C.R.S. § 13-21-131 and Colorado Constitution, Article II, § 25 against Defendants John & Jane Boes 1-50, Cody, A. Martinez, Moore, Phuvhapaisalkij, Monthathong, Randall, Hunter, Wilson, Udland, D. Martinez, Sam, Harvey, Ulrich, and Lutkin (Claim 10);

- right to use public streets and facilities, pursuant to C.R.S. § 13-21-131 and Colorado Constitution, Article II, § 3 against Defendants (Claim 11);

- equal protection, pursuant to C.R.S., § 13-21-131 and Colorado Constitution, Article II, §§ 3 and 25 against Defendants (Claim 12);

- breach of contract[7] against Defendants Denver and Hancock (Claim 13);

- freedom of speech and assembly in violation of the First Amendment, pursuant to 42 U.S.C. § 1983 against Defendants Denver, Hancock, D. Lee, McDonald, Robinson, and Bronson (Claim 16); and

- equal protection in violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 against Defendants Denver and Hancock (Claim 17).

The Court set forth the Background of this case extensively in its Order Granting In Part And Denying In Part Plaintiffs' Motion for Preliminary Injunction and Expedited Hearing ("PI Order"), issued on January 25, 2021.  (ECF No. 150.)  Therefore, the Court incorporates the Background section of the PI Order by reference here.

---

[7] Plaintiffs allege that Defendants Denver and Hancock breached the settlement agreement reached in *Lyall v. City and County of Denver*, Civil Action No. 1:16-cv-2155-WJM-CBS.  (¶ 587.)  To refer to docket entries from the *Lyall* lawsuit, the Court uses the following format: (*Lyall*, ECF No. __.)

**B.** **Tenth Circuit's Opinion Vacating the PI Order**

On January 26, 2021, the Denver Defendants filed a notice of appeal as to the PI

Order.  (ECF No. 151.)  On May 3, 2022, the Tenth Circuit vacated the PI Order and

remanded the case for further proceedings consistent with its opinion.  *Denver*

*Homeless Out Loud v. Denver, Colorado*, 32 F.4th 1259 (10th Cir. 2022).

Notwithstanding the fact that the Denver Defendants failed to raise or even mention a

preclusion defense on appeal, the Tenth Circuit saw fit to exercise its discretion to raise

and decide preclusion *sua sponte* because, according to that court, the issue was a

pure matter of law and ultimately dispositive of the dispute before it.  *Id.* at 1269–70.

First, the Tenth Circuit analyzed whether preclusion was part of the Stipulated

Motion for Final Approval of Class Action Settlement ("*Lyall* Settlement"), which ended

the *Lyall* litigation.[8]  (*Lyall*, ECF Nos. 224-1.)  Following a close examination of the

release provisions, the Tenth Circuit concluded that the plain text of the agreement

made it clear that the parties intended that it have preclusive effect.  *Denver Homeless*

*Out Loud*, 32 F.4th at 1271.  Next, the court examined the three elements of claim

preclusion, finding that with respect to the first element, the *Lyall* Settlement constitutes

a final judgment on the merits.  *Id.* at 1271 n.11.

With respect to the second element—privity—the court found that the release

provisions of the *Lyall* Settlement encompass both Plaintiffs and the Denver

Defendants.  *Id.* at 1272–74.  The Tenth Circuit found that it was unnecessary to

establish privity in this case between the individual Defendants and the City because

the plain language of the *Lyall* Settlement "inoculates each individual defendant from

---

[8] The Court explains the background of the *Lyall* litigation later in this Order.  *See infra*,
Part III.A.2.

the relevant claim." *Id.* at 1273.  Because the individual Defendants are all Denver employees or elected officials, they all fall within the parties covered by the release and cannot be sued in their individual capacity.  *Id.* at 1273–74.

Finally, the Tenth Circuit addressed whether the release in the *Lyall* Settlement encompassed the procedural due process claim.  *Id.* at 1274–77.  Again examining the release provisions in detail, the court found that they covered the claim at issue on appeal, as the claim arose from Denver's custom of sending ten or more employees or agents to clear away an encampment of multiple homeless persons by immediately seizing and discarding the property found there.  *Id.* at 1274.

Turning to Plaintiffs' arguments, the Tenth Circuit disagreed with Plaintiffs' argument that the causes of action are different because the events litigated in this lawsuit post-date *Lyall*.  *Id.* at 1275.  Instead, the Tenth Circuit rationalized that the subject of this litigation is the same as that in *Lyall*.  *Id.*  Thus, according to the Tenth Circuit, "the event material to our preclusion analysis is Denver's ongoing implementation of this custom—not the discrete activities occurring at each sweep."  *Id.* The court further found that its analysis "is consistent with [its] pragmatic approach to res judicata, which treats circumstances that 'are related in time, space, origin, or motivation' as singular claims."  *Id.* (citation omitted).  Importantly, the court clarified that the "post-*Lyall* sweeps did not create new materially operative facts" and that the "operative event remains Denver's practice of conducting homeless sweeps in an allegedly constitutionally deficient manner, which began before the *Lyall* litigation."  *Id.*

Next, the court addressed Plaintiffs' argument that the sweeps have materially changed since *Lyall*; specifically, Plaintiffs asserted that the rationale behind Denver's

lack of notice changed and the COVID-19 pandemic did not underlie all of the facts and circumstances in *Lyall*.  *Id.* at 1276.  The Tenth Circuit concluded that neither Denver's new reasons for foregoing notice nor its decision to do so amidst a global pandemic could sustain an independent procedural due process claim.  *Id.*  Further, the court reasoned that Plaintiffs' property interest in their possessions is "identical" to the *Lyall* plaintiffs' property interests.  *Id.*  The Tenth Circuit also addressed Plaintiffs' allegations concerning Denver conducting sweeps to deter protesters and, despite this "more specific reason for [the City's] lack of notice," concluded that Plaintiffs "maintain that criminalizing homelessness to boost economic growth is still the primary motivation underlying the sweeps."  *Id.* at 1277.

Third, the Tenth Circuit rejected Plaintiffs' argument that the *Lyall* Settlement only considered large-scale encumbrance removals and not Denver Department of Public Health and Environment ("DDPHE") area restrictions.  *Id.*  Again, the Tenth Circuit pointed to the sweeping release provisions, which released the parties from "any and all . . . claims" that "might be in any way related to . . . any and all claims arising out of the City's alleged custom or practice . . . of sending ten or more employees or agents to clear away an encampment of multiple homeless persons by immediately seizing and discarding the property found there."  *Id.* (citation omitted).  The court determined that area restrictions are necessarily related to Denver's custom of performing sweeps because they often precede them.  *Id.*  The court broadly stated that the *Lyall* Settlement "therefore covers all the actions taken by the Denver Defendants to remediate homeless encampments."  *Id.*

Finally, the Tenth Circuit rejected Plaintiffs' attempt to distinguish this case

because here they alleged an Eighth Amendment violation not brought in *Lyall*.  *Id.*
However, Plaintiffs' argument failed because the original complaint in *Lyall* included an
Eighth Amendment claim which was later discarded.  *Id.*  According to the Tenth Circuit,
"the inclusion of a new legal theory arising from the same facts does not rebut the
Denver Defendants' preclusion defense."  *Id.* (citing *Plotner v. AT & T Corp.*, 224 F.3d
1161, 1170 (10th Cir. 2000) ("[P]arties cannot defeat [the] application [of res judicata] by
simply alleging new legal theories.")).

Given the foregoing conclusions, the Tenth Circuit found that Plaintiffs procedural
due process claim is claim-precluded and they are unlikely to succeed on the merits
under Federal Rule of Civil Procedure 65.  *Id.* at 1277–79.  The court vacated the PI
Order and remanded for further proceedings.

## II. LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

As courts of limited jurisdiction, federal courts may only adjudicate cases that the
Constitution and Congress have granted them authority to hear.  *See* U.S. Const. art.
III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994).  Statutes
conferring jurisdiction on federal courts must be construed strictly.  *See F&S Constr. Co.
v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a
complaint for "lack of jurisdiction over the subject matter."  A Rule 12(b)(1) motion to
dismiss "must be determined from the allegations of fact in the complaint, without regard
to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674,
677 (10th Cir. 1971).  A party challenging the Court's jurisdiction may go beyond
allegations contained in the complaint and challenge the facts upon which subject

matter jurisdiction depends.  *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  *See id.*  A court has wide discretion to allow affidavits, other documents, and may conduct a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  *See id.*

## B.   Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  In reviewing a motion to dismiss under Rule 12(b)(6), the Court will "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.  "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief.  'Factual allegations must be enough to raise a right to relief above the speculative level.'"  *Id.* (quoting *Twombly*, 550 U.S. at 545 & 556).  The plaintiff "does not need detailed factual allegations" but must plead more than merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.*  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177 (quoting *Twombly*, 550 U.S. at 556).

**III. ANALYSIS**[9]

In the Motion, the Denver Defendants argue that there are numerous reasons to dismiss the Complaint in its entirety.  (ECF No. 176.)  First, the Denver Defendants argue that Plaintiffs "impermissibly attempt to reopen claims that were resolved or otherwise precluded by the final judgment in *Lyall*, and challenge the same policies and procedures for encumbrance removal and property storage that were at issue in that suit."  (*Id.* at 2.)  Next, the Denver Defendants argue that to the extent Plaintiffs' claims escape claim preclusion, they still fail because the Complaint fails to establish a constitutional violation, much less a clearly established constitutional violation, which entitles all of the individually named Denver Defendants to qualified immunity.  (*Id.*)  Further, the Denver Defendants argue that Plaintiffs have failed to plausibly plead municipal liability or a breach of contract claim, and their alleged First Amendment claim lacks merit.  (*Id.* at 2–3.)  Thus, the Denver Defendants request that the Court dismiss the Complaint in its entirety.[10]  (*Id.* at 3.)

---

[9] The Denver Defendants explain the difference between the types of enforcement actions at issue in this case, pointing out that Plaintiffs' use of the term "sweeps" conflates the two types of actions.  (ECF No. 176 at 3–4.)  The DDPHE imposes area restrictions.  Denver Department of Transportation and Infrastructure ("DOTI") conducts large-scale encumbrance removals pursuant to a Denver ordinance.  These actions are separate from DDPHE's determination, pursuant to its public-health authority, that an area restriction is necessary to immediately remediate health risks.  *See also Denver Homeless Out Loud*, 32 F.4th at 1264 (explaining differences between "area restrictions" and large-scale "encumbrance removals" and noting these activities are "colloquially known as homeless sweeps").

[10] Because the Court finds that res judicata bars all of Plaintiffs' claims against the Denver Defendants, except their breach of contract claim, the Court need not address the remainder of the Denver Defendants' arguments in favor of dismissal.

A.      **Res Judicata**[11]

The Denver Defendants argue that res judicata bars Plaintiffs' claims that were brought, or could have been brought, in *Lyall*, the settlement of which was approved by the undersigned.  (ECF No. 176 at 4.)  According to the Denver Defendants, Plaintiffs' claims in this case relate to encampment cleanups and property storage by DOTI, and therefore, they collaterally attack the *Lyall* Settlement.  (ECF No. 176 at 4.)  Moreover, the Denver Defendants argue that Plaintiffs' challenge to the DDPHE area restrictions is no different because "that determination is simply the triggering event that requires DOTI to complete the cleanup of the restricted area, with the same procedures for removal and disposal or storage or property established and governed by the *Lyall* settlement."  (*Id.*)

For the following reasons, the Court agrees with the Denver Defendants.

1.      <u>Legal Standard</u>

"[U]nder federal law, settlements have claim-preclusive effect between the parties to the settlement."  *Denver Homeless Out Loud*, 32 F.4th at 1271 (quoting *Nichols v. Bd. of Cnty. Comm'rs of Cnty. of La Plata, Colo.*, 506 F.3d 962, 969 (10th Cir. 2007)).  Federal law applies here, where a federal district court entered the final judgment adopting a settlement.  *Id.* (citing *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999)).  Claim preclusion—also known as res judicata—applies when there is "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."  *Id.* (quoting *Johnson*

---

[11] Where, as here, the Court considers a question which was previously ruled upon in federal court, the federal law of preclusion applies.  *See Denver Homeless Out Loud*, 32 F.4th at 1269 (explaining that federal law determines effects under the rules of res judicata of a judgment of a federal court) (citation omitted).

*v. Spencer*, 950 F.3d 680, 693 (10th Cir. 2020) (quotation marks omitted)).  "Even if these three elements are satisfied, there is an exception to the application of claim preclusion where the party resisting it did not have a full and fair opportunity to litigate the claim in the prior action." *Id*.

Importantly, settlements "are of a contractual nature and, as such, their terms may alter the preclusive effects of a judgment."  *Id*. (quoting *In re Young*, 91 F.3d 1367, 1376 (10th Cir. 1996)).  Stated differently, contractual provisions can supplant traditional preclusion principles "if it is clear that the parties intended preclusion as a part of their agreement."  *Id.*

    2.    <u>*Lyall* Lawsuit</u>

    a.    *Brief Background*

On August 25, 2016, several plaintiffs, who were homeless individuals living on Denver's streets, brought a class action lawsuit under § 1983 against the City, arguing that the City clears homeless encampments through unconstitutional means.  (*Lyall*, ECF No. 1.)

In their Amended Complaint, a putative Federal Rule of Civil Procedure 23(b)(2) class brought several claims against the City, including: denial of constitutional right against unreasonable search and seizure under the Fourth Amendment; violation of constitutional bar against cruel and unusual punishment under the Eighth Amendment; denial of constitutional right to due process of law under the Fourteenth Amendment; and denial of constitutional right to equal protection of the laws under the Fourteenth Amendment.  (*Lyall*, ECF No. 44-1.)  The *Lyall* plaintiffs then withdrew various claims.  (*See id*.)  Additionally, their Amended Complaint contained language indicating that they *could have* alleged various claims in the Amended Complaint, though claims concerning

those issues were not explicitly alleged.[12]

      b.    *Scope of the* Lyall *Settlement*

Following the undersigned's Orders on the City's motion to dismiss and motion

for summary judgment, among other things, the parties settled the *Lyall* lawsuit.  (*Lyall*,

ECF Nos. 84, 167, 212.)  On September 23, 2019, the undersigned approved the *Lyall*

Settlement, thereby ending the *Lyall* litigation.  (*Lyall*, ECF Nos. 224-1 (settlement

agreement), 225 (Court's approval).)

The breadth of the *Lyall* Settlement cannot be overstated.  *See Denver*

*Homeless Out Loud*, 32 F.4th at 1272 (describing the scope of the release in the *Lyall*

Settlement as "far-reaching").  Accordingly, the Court reiterates below various critical

provisions on which it relies in finding that res judicata bars all but one of Plaintiffs'

claims against the Denver Defendants.

The *Lyall* Settlement reiterates the Rule 23 class definition certified by the Court:

      WHEREAS, on April 27, 2017, the Court certified a Fed. R.
      Civ. P. 23(b)(2) Class ("Certified Rule 23(b)(2) Class") for

---

[12] The Court need not perform a side-by-side comparison of all of the claims that were brought or could have been brought in *Lyall*.  However, below, the Court points out a few notable examples of the overlap in *Lyall* and this case.

For example, the Denver Defendants point out that the *Lyall* plaintiffs abandoned a claim concerning "deprivation of property" (*Lyall*, ECF No. 44-1 ¶ 89), which in the current case is alleged in various forms, including a Fourteenth Amendment takings claim and a Colorado Constitution takings claim.

Additionally, the *Lyall* plaintiffs discussed both the Camping Ban, D.R.M.C. 38-86.2, and the Encumbrance Removal Ordinance, D.R.M.C. 49-246, in their Amended Complaint.  (*Lyall*, ECF No. 44-1 at 5 n.4.)  As such, claims related to the constitutionality or legality of those ordinances have been, but were not, brought in the *Lyall* lawsuit.

In the current litigation, Plaintiffs allege a separate substantive due process claim in violation of the Fourteenth Amendment.  However, in the *Lyall* Amended Complaint, the *Lyall* plaintiffs alleged an Eighth Amendment claim for cruel and unusual punishment and Fourteenth Amendment due process claims, both of which demonstrate that they brought or could have brought a substantive due process claim regarding danger creation in the *Lyall* lawsuit.

> injunctive relief defined as follows: "All persons in the City and County of Denver whose personal belongings may in the future be taken or destroyed without due process on account of the City and County of Denver's alleged custom or practice (written or unwritten) of sending ten or more employees or agents to clear away an encampment of multiple homeless persons by immediately seizing and discarding the property found there;"

(ECF No. 14-2 at 2.)

It also emphasizes the hard-fought, arms-length negotiations between the parties that led to the settlement:

> WHEREAS, Counsel for the Parties and Plaintiffs, in their individual capacities and as class representatives, and City officials, participated in extensive settlement discussions between January 17, 2019, and February 26, 2019, including a full-day mediation session with Judge Richard Caschette, and ultimately reached a proposed agreement to resolve the individual and Certified Rule 23(b)(2) Class claims;

(*Id.*) Specifically, it notes that counsel for the plaintiffs[13] "fully investigated the facts and law relevant to the . . . lawsuit," and Plaintiffs' counsel "concluded that the proposed settlement . . . is fair, adequate, reasonable, and in the best interests of the Certified Rule 23(b)(2) Settlement Class Members." (*Id.*)

The City paid the *Lyall* plaintiffs $30,000 as consideration for the resolution of their individual damages claims, unrelated to the Certified Rule 23(b)(2) Class. (*Id.*)

The *Lyall* Settlement contains broad and explicit provisions regarding preclusion of future claims and issues as it pertains to the individually named Plaintiffs and the plaintiffs as class representatives:

> 1. The individually named Plaintiffs, hereby release, acquit,

---

[13] Killmer, Lane & Newman, LLP represented the plaintiffs in *Lyall* and represent the Plaintiffs in the instant action. Similarly, Attorney Andrew McNulty of that firm acted as lead counsel for plaintiffs in both cases.

and forever discharge *the City and County of Denver, and any all other related persons and entities, both past and present, including but not limited to all departments, divisions, principals, attorneys, agents, employees, employers, successors, servants, elected officials, officers, and directors* (the "Released Parties"), of and from *any and all liabilities, claims, demands, rights, controversies, agreements, damages, actions, causes of actions, expenses, attorney fees, interest, compensation, judgment and any and all consequential and punitive damages, of whatsoever kind and nature, either in law or in equity, which might exist or might be in any way related to* or giving rise to above-referenced Lawsuit, including, but not limited to, any and all claims arising out of the City's alleged custom or practice (written or unwritten) of sending ten or more employees or agents to clear away an encampment of multiple homeless persons by immediately seizing and discarding the property found there.

2. Plaintiffs, as Certified Rule 23(b)(2) Class Representatives, hereby release, acquit, and forever discharge the Released Parties, of and *from any and all liabilities, claims, demands, rights, controversies, agreements, actions, causes of actions, and judgment, either in law or in equity, for injunctive or declaratory relief which might exist or might be in any way related to* or giving rise to above-referenced Lawsuit, including, but not limited to, any and all claims  arising out of the City's alleged custom or practice (written or unwritten) of sending ten or more employees or agents to clear away an encampment of multiple homeless persons by immediately seizing and discarding the property found there.

(*Id.* at 3 ¶¶ 1, 2 (emphasis added).)  In defining the "Released Parties," these provisions notably encompass the City *and* its agents, employees, elected officials, officers, directors, and others.[14]  Moreover, these provisions contemplate both legal *and*

---

[14] In addition to defining the Released Parties, the *Lyall* Settlement contains yet *another* paragraph clarifying the binding nature of the agreement on the plaintiffs, the City, and other parties related to the City:

> Plaintiffs and the City and County of Denver, acknowledge and agree that this Agreement, and the terms thereof, shall be binding on their agents, attorneys, servants, employers, employees,

equitable remedies.  Perhaps most importantly, these provisions release the Released Parties from all liabilities and claims, etc., which "might exist or might be *in any way related to* or giving rise to" the lawsuit.  (*Id.* (emphasis added).)

The *Lyall* Settlement contains additional, sweeping preclusion clauses:

> 8. The individual Plaintiffs acknowledge that a portion of the consideration given for this Agreement is being given for the *full and final release of any and all unknown losses, claims, injuries, costs, expenses, and damages which either may have occurred in the past and are not yet known, or which may occur in the future and are not presently known with respect to their claims for individual damages asserted in the above-referenced Lawsuit or which could have been raised as part of their Lawsuit.*  The individual Plaintiffs agree to voluntarily and knowingly assume the risk of any mistake of fact, either mutual or unilateral, with respect to said losses, claims, injuries, costs, expenses, and damages, and shall not, under any circumstances, seek to present further claims on behalf of themselves, or on behalf of their agents, attorneys, servants, employers, employees, heirs, executors, administrators, insurers, successors, assigns and subrogees as against the persons and entities herein released.

> 9. The individual Plaintiffs further covenant and agree that they *will not bring any action* at law, proceeding in equity, administrative proceeding, or otherwise, nor prosecute or sue by way of complaint, counterclaim, or by any other manner at all, *relating to the facts and claims which were or could have been asserted in their Claim against the Released Parties or in a subsequent lawsuit relating to the facts and allegations concerning the events outlined in the Amended Complaint or any damage to the class members resulting from the cleanup of homeless encampments by Denver.*

(*Id.* at 4 ¶¶ 8, 9 (emphasis added).)  Of particular relevance is the language stating that

---

> principals, heirs, executors, administrators, insurers, successors, assigns, subrogees, and any and all other persons or entities which have or may have any claim on behalf of themselves or be entitled to share in any settlement thereof.

(ECF No. 14-2 at 3 ¶ 5.)

the plaintiffs released "all . . . claims" which "may occur in the future and are not

presently known."  (*Id.* ¶ 8.)

Substantively, among other things, the *Lyall* Settlement provides the following:

> **Large-Scale Encumbrance Removal/Cleanups** - The City,
> to the extent reasonably possible, shall give at least seven
> days' notice prior to a large-scale encumbrance cleanup and
> shall include such language in its written protocol for large-
> scale encumbrance removal.  The City may conduct large-
> scale cleanups with less than seven days' notice only if the
> City determines that a public health or safety risk exists
> which requires it.  If a large-scale cleanup is conducted with
> less than seven days' notice, the City shall provide
> reasonable notice of the cleanup, with the determination of
> reasonableness based upon the nature of the public health
> and safety risk present in the area. . . .

(*Id.* at 15.)  Further, the agreement explained what information would be included in

written notice provided by the City for any regular or large-scale cleanup.  (*Id.* at 16.)

The *Lyall* Settlement also delineated how Denver would dispose of unattended personal

property, including whether it poses a public health or safety risk, and how it should be

disposed of or stored.  (*Id.* at 16–17.)  In particular, the *Lyall* Settlement provides that

"[a]ny items that present an immediate risk to public health or safety, such as illegal

drugs, used syringes, medical waste, and perishable food items may be disposed of

immediately."  (*Id.* at 17.)

The parties in *Lyall* did not seek or obtain a ruling by this Court to expressly

retain jurisdiction over that litigation in order to adjudicate any future alleged breach of

the settlement agreement.  (*See generally* ECF No. 14-2; ECF No. 176 at 46.)

3.   Res Judicata Bars Claims 1–4, 6–12, 16, and 17

a.   *Final Judgment on the Merits In An Earlier Action*

The Tenth Circuit addressed the first element of claim preclusion in its opinion

17

vacating the PI Order, stating that

> [n]either party disputes the *Lyall* settlement agreement is a final judgment on the merits for res judicata purposes. *See Arizona v. California*, 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (stating settlements "ordinarily support claim preclusion"); *see also Hoxworth v. Blinder*, 74 F.3d 205, 208 (10th Cir. 1996) ("Generally, court-approved settlements receive the same res judicata effect as litigated judgments."). The exceptions are not relevant. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329–30, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) (holding a settlement did not preclude a later action involving a different claim not discussed in the settlement).

*Denver Homeless Out Loud*, 32 F.4th at 1271 n.11.

Relying on the clear guidance from the Tenth Circuit, the Court finds that the *Lyall* Settlement operates as a final judgment on the merits for res judicata purposes. Additionally, the Tenth Circuit concluded that "the plain text of the *Lyall* settlement agreement makes clear the parties intended it to have preclusive effect." *Id*. at 1271. Therefore, the first element of res judicata is satisfied.

### b.   *Identity of Parties or Privies in the Two Actions*

While "[t]here is no definition of 'privity' which can be automatically applied in all cases involving the doctrines of res judicata and collateral estoppel . . . [it] requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same." *St. Louis Baptist Temple, Inc.*, 605 F.2d at 1174 (citation omitted); *see Pelt v. Utah*, 539 F.3d 1271, 1281–82 (10th Cir. 2008) (same) (identifying categories of privity); *see also Taylor v. Sturgell*, 553 U.S. 880, 894–95 (2008) (privity exists when a non-party was "adequately represented by someone with the same interests who [was] a party in the [earlier] suit" (internal citations omitted)).

And it is well settled that prior class-action judgments bind class members—even "absent members," so long as those class members "were 'in fact' adequately represented by parties who are present."  *Pelt*, 539 F.3d at 1284 (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).  That determination turns on "whether the representative, through qualified counsel, vigorously and tenaciously protected the interests of the class."  *Id.* at 1285 (quoting *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973)).

The Tenth Circuit also addressed the second element of claim preclusion in its opinion vacating the PI Order.  *See Denver Homeless Out Loud*, 32 F.4th at 1272–74. With respect to Plaintiffs, the Tenth Circuit observed that the Complaint "acknowledges the DHOL Plaintiffs are members of the plaintiff class in *Lyall*," noting that Plaintiffs are "members of a class . . . which settled [p]laintiffs claims against Defendant Denver in the matter of *Lyall, et al. v. Denver*."  *Id.* at 1272 (alteration in original).  Additionally, the Tenth Circuit found that the *Lyall* Settlement "reaches any current DHOL class member," because the class bound by the *Lyall* Settlement includes "[a]ll persons in the City and County of Denver whose personal belongings *may in the future* be taken or destroyed without due process" during a sweep.  *Id.* (emphasis in original).

Further, the Tenth Circuit reiterated that it is "well settled that prior class-action judgments bind 'absent class members' that were 'adequately represented' in the first case."  *Id.* at 1273 (quoting *Pelt*, 539 F.3d at 1284).  The Tenth Circuit concluded that the "DHOL class members were adequately represented in *Lyall*."  *See id.*  Having presided over *Lyall*, the undersigned agrees and finds that the *Lyall* plaintiffs were adequately represented.

With respect to the Denver Defendants, the Tenth Circuit concluded that "it is not

necessary to establish privity here, where the plain language of a settlement agreement inoculates each individual defendant from the relevant claim." *Id.* (citing *In re Young*, 91 F.3d at 1376).  Comparing the instant action with another civil rights action, *Mata v. Anderson*, 65 F.3d 1250, 1251 (10th Cir. 2011), the Tenth Circuit observed that the *Lyall* Settlement

> releases "the City and County of Denver, and any [and] all other related persons and entities," including its "agents, employees, . . . elected officials, [and] officers," from "any and all liabilities, claims, demands, rights, controversies, [ ] damages, actions, causes of actions, . . . and any and all consequential and punitive damages, of whatsoever kind and nature . . . in any way related to" Denver's homeless sweeps.

*Id.* at 1273–74.  According to the Tenth Circuit, the "individual Defendants are all Denver employees or elected officials, meaning they all fall within the parties covered by the release," and therefore, "[e]ach individual Defendant can thus benefit from the preclusion defense under this court's well-established precedent."  *Id.* at 1274. Additionally, the Tenth Circuit found that the "agreement's waiver of all damages 'of whatsoever kind and nature' precludes claims brought against any of the Denver Defendants in their individual capacity."  *Id.*

Based on the foregoing, the Court finds that the parties in this lawsuit and *Lyall* are in privity.  And while the Tenth Circuit's analysis was limited to the procedural due process claim at issue on appeal, the Court concludes that the *Lyall* Settlement "inoculates each individual defendant" not only from the procedural due process claim, but from all of the claims asserted against them in the Complaint, except Plaintiffs' breach of contract claim.  Therefore, the second element of res judicata is satisfied.

c.  *Identity of the Cause of Action in Both Lawsuits*

The two forms of res judicata (issue and claim preclusion) together forbid "parties or their privies from relitigating issues that were or *could have been raised* in a prior action."  *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Stds.*, 314 F.3d 501, 503–04 (10th Cir. 2002) (emphasis in original).

The Denver Defendants argue that Plaintiffs' claims in this case are "literally identical to those asserted in *Lyall*," specifically comparing the claims for Fourth Amendment seizure, Fourteenth Amendment violation of due process, and denial of equal protection.  (ECF No. 176 at 7 (comparing *Lyall* Amended Complaint, ECF No. 54 at 31–36, *with* ECF No. 160 at 99–101, 103–05, 115–17, 121–23).)  Further, the Denver Defendants contend that Plaintiffs' numerous additional claims, brought under the United States Constitution, Colorado Constitution, and other Colorado state laws, are premised on the same underlying core of factual allegations, and each could have been brought in the prior lawsuit.  (*Id.*)

For support—and clarity, given the numerous claims at issue here—the Denver Defendants prepared a Preclusion Chart, which lists all of the claims in this lawsuit and compares them to *Lyall*, explaining why each claim is barred because of one or more of the following reasons: it is identical to a claim brought in *Lyall*; it could have been brought in *Lyall*; it is a new theory for the same facts; or it is barred by the preclusion clause in the *Lyall* Settlement.[15]  (ECF No. 203-1.)

As explained in great detail above, *see supra* Part III.A.2.b., the Denver

---

[15] The Court notes that the Preclusion Chart contains a scrivener's error, as it switches the Fifth and Sixth Claims.  (ECF No. 203-1 at 1.)  This error does not affect the Court's analysis of the Preclusion Chart or the arguments contained therein.

Defendants also underscore that the *Lyall* Settlement contains a "broad and explicit preclusion of future claims and issues."  (ECF No. 176 at 7 (citing ECF No. 14-2 at 3 ¶ 2).)  Finally, the Denver Defendants also argue that the exceptions to preclusion do not apply.[16]

Based on these principles, the Denver Defendants assert that Plaintiffs' 15 non-contract claims for relief all collaterally attack the final settlement reached in *Lyall*, which "finally resolved the issue of the cleaning of homeless encampments and are precluded even though they are based on cleanups—as fully contemplated in that agreement— that took place after that settlement was entered."  (ECF No. 176 at 10.)

In response, Plaintiffs contend that the *Lyall* lawsuit and settlement are not a basis for claim preclusion, as all of the events in this case post-date the filing of *Lyall* and the subsequent settlement agreement.  (ECF No. 196 at 3.)  They argue it would have been impossible for them to litigate their claims as part of *Lyall*, and that the settlement "did not explicitly settle, or provide that it was releasing claims related to *future* actions by Denver and its agents," nor did it "release any claims relating to class-wide damages."  (*Id.*)

While Plaintiffs concede that both *Lyall* and this action involve alleged Fourth and Fourteenth Amendment violations, they differentiate the two actions by contending that the violations in this case "happened on different days, in different years, at different locations, and implicate different types and degrees of impairments to Plaintiffs' rights." (*Id.*)  In particular, Plaintiffs argue that the "sweeps litigated here deviated from the way

---

[16] As explained earlier, counsel for Plaintiffs also represented the plaintiffs in *Lyall*, so there is no argument that the *Lyall* plaintiffs were not vigorously represented.  Therefore, the Court need not address this exception to the preclusion doctrine.

that sweeps had been conducted prior to the *Lyall* settlement," noting their allegations that the City provided no notice for sweeps because of the First Amendment activity of Denver Homeless Out Loud and the COVID-19 pandemic.  (*Id.* at 3–4.)  Finally, Plaintiffs assert that even if this case is barred by res judicata, because "important human values are at stake," there may be a sufficient basis for concluding that a second action may be brought.  (*Id.* (citing *Whole Woman's Health*, 136 S. Ct. at 2304–09).)

The Court has carefully evaluated both parties' arguments, taking into particular consideration the *Lyall* Settlement, which—given its extraordinary breadth—underlies all aspects of this lawsuit.  Upon due consideration and in light of all of the conclusions reached by the Tenth Circuit in its opinion vacating the PI Order, the Court concludes that Plaintiffs' claims are barred by res judicata.  In doing so, the Court addresses Plaintiffs' arguments to the contrary.

First, Plaintiffs argue that "all of the events litigated in this lawsuit not only post-date the filing of the *Lyall* case, but also the entry of the [*Lyall* Settlement]," making it impossible for them to litigate these claims as part of *Lyall*.  (ECF No. 196 at 3.)  While the Supreme Court established the general rule that res judicata "does not bar claims that are predicated on events that postdate the filing of the initial complaint," *Whole Woman's Health*, 136 S. Ct. at 2305, like the Tenth Circuit concluded in its opinion in this case, the Court concludes that this rule does not apply here.  *See Denver Homeless Out Loud*, 32 F.4th at 1275.  Instead, this case involves "either judgment enforcement or a collateral attack on a prior judgment," as established in *Lucky Brand*, 140 S. Ct. at 1597.  Because a different outcome in this case would "nullify the initial judgment" (here, the *Lyall* Settlement), the Court must apply res judicata to prohibit

claims which would attack previously decided claims.  *See id.*

It is *critical* to acknowledge and examine the language which Plaintiffs agreed to in the *Lyall* Settlement, which bears repeating here:

> Plaintiffs, as Certified Rule 23(b)(2) Class Representatives, hereby release, acquit, and forever discharge the Released Parties, of and from any and all liabilities, claims, demands, rights, controversies, agreements, actions, causes of actions, and judgement, either in law or in equity, for injunctive or declaratory relief *which might exist or might be in any way related to or giving rise to the above-referenced Lawsuit*, including, but not limited to, any and all claims arising out of the City's alleged custom or practice (written or unwritten) of sending ten or more employees or agents to clear away an encampment of multiple homeless persons by immediately seizing and discarding the property found there.

(ECF No. 14-2 at 3 ¶ 2 (emphasis added).)  Again, the breadth of the language "which might exist or might be in any way related to or giving rise to the above-reference Lawsuit" cannot be overstated.

While it is true that the events in this action technically post-date the filing of *Lyall* and the *Lyall* Settlement, it is also true—as the Denver Defendants point out—that "the encampment cleanup protocol and notices for large-scale encumbrance cleanups are always conducted by DOTI and directly relate to the policies and protocols at issue in *Lyall* and resolved by the settlement."  (ECF No. 176 at 7.)  As the Tenth Circuit also concluded, both lawsuits implicate the same overarching alleged misconduct by the City and its employees and agents: the cleanups of homeless encampments in Denver, the resulting dispersal of homeless individuals, and the seizure, disposal, and/or failure to properly store homeless individuals' personal property in connection with the cleanups. *See Denver Homeless Out Loud*, 32 F.4th at 1275 (observing that "the events that occurred after the plaintiffs filed this suit do not give rise to new material operative facts

that create a new claim to relief") (alterations omitted).

Under these circumstances, at their core, both lawsuits involve the same "fundamental municipal transactions as the *Lyall* lawsuit, namely the cleaning of homeless encampments."  (ECF No. 176 at 7 (citing *Wilkes*, 314 F.3d at 504 (when new lawsuit involves the same transaction as did a previous lawsuit, it is barred by res judicata))); *see Denver Homeless Out Loud*, 32 F.4th at 1275 (concluding that the "post-*Lyall* sweeps did not create new materially operative facts" and that the "operative event remains Denver's practice of conducting homeless sweeps in an allegedly constitutionally deficient manner").

The Court has examined the Denver Defendants' Preclusion Chart in great detail and compared it with the complaint in *Lyall*.  (*See* ECF No. 203-1.)  The Court notes that Plaintiffs fail to even acknowledge the Preclusion Chart or the factual and legal arguments contained therein, instead relying on broader arguments that their claims are not barred by res judicata for the aforementioned reasons.  However, in *Lyall*, Plaintiffs explicitly agreed to release claims that are "in any way related to" their lawsuit.  Given this "far-reaching" language, the Court agrees with the Denver Defendants' point that even Plaintiffs' First Amendment theory is "in any way related to" the notice policies set forth in the *Lyall* Settlement.  (*Id.* at 8.)  *See Denver Homeless Out Loud*, 32 F.4th at 1277 (rejecting Plaintiffs' argument that the Denver Defendants have a new reason to conduct sweeps, *i.e.*, "to abate the threat of protesters showing up" sufficiently distinguishes this case from *Lyall* to remove it from the bounds of preclusion).

Plaintiffs' arguments that "the *Lyall* settlement agreement did not explicitly settle, or provide that it was releasing claims related to *future* actions by Denver and its

agents" and that it "did not release any claims relating to class-wide damages" are not only unavailing, they are incorrect.  (ECF No. 196 at 3 (emphasis in original).)   The *Lyall* class definition included those "whose personal belongings may *in the future* be taken or destroyed."  (ECF No. 14-2 at 1 (emphasis added).)  *See also Denver Homeless Out Loud*, 32 F.4th at 1272 (relying on same release to conclude that the "plain text of the *Lyall* settlement agreement makes clear the parties intended it to have preclusive effect").  The settlement explicitly released "any and all unknown losses, claims, injuries, costs, expenses, and *damages . . . which may occur in the future*," and the *Lyall* plaintiffs covenanted not to bring any future suit for "any *damage to the class members* resulting from the cleanup of homeless encampments by Denver."  (ECF No. 14-2 at 3 ¶¶ 8, 9 (emphasis added).)  As noted above, in the Complaint in this action, Plaintiffs explicitly included themselves in the *Lyall* class.  (¶ 152); *Denver Homeless Out Loud*, 32 F.4th at 1272 ("The Amended Complaint acknowledges that the DHOL Plaintiffs are members of the plaintiff class in *Lyall*.").

To the extent Plaintiffs argue that their claims cannot be precluded because the COVID-19 pandemic was not present in 2016 when *Lyall* was filed and the danger of the virus to the homeless population or other public health emergencies could not have been contemplated when the *Lyall* Settlement was approved, the Denver Defendants respond that "not every change in external circumstances creates a new cause of action or invalidates the preclusive effect of a prior lawsuit."  (ECF No. 176 at 9.)  Even the Denver Defendants acknowledge that the COVID-19 pandemic is "unexpected and unprecedented."  (*Id.*)  However, they argue that if the Court were to permit reopening of these claims due to the changed circumstances presented by COVID-19 or any other

public health risk like those DDPHE identified in the homeless encampments at issue in this lawsuit, the "doctrine of res judicata would be entirely compromised."  (*Id.*)

Relying on the all-encompassing language of the *Lyall* Settlement explained in detail above, the Court agrees with the Denver Defendants.  The *Lyall* Settlement obviously did not specifically contemplate the COVID-19 pandemic.  However, Plaintiffs knowingly and voluntarily released claims which "may occur in the future and are not presently known with respect to their claims."  (ECF No. 14-2 at 4 ¶ 8.)  The *Lyall* Settlement clearly intended to govern future, related transactions between the parties; resolved claims for declaratory or injunctive relief; and established the legality of the continuing conduct into the future.  *See Hatch*, 471 F.3d at 1150–51.  "There is no exception to the doctrine of res judicata based on potential changes in the impact of conduct litigated in a previous lawsuit."  (ECF No. 176 at 10 (citing *Johnson v. Spencer*, 950 F.3d 680, 696 (10th Cir. 2020) (res judicata favors finality)).)  The Tenth Circuit also addressed Plaintiffs' arguments that the COVID-19 pandemic did not underlie all of the facts and circumstances in *Lyall* and concluded that the procedural due process claim was nevertheless precluded.  *Denver Homeless Out Loud*, 32 F.4th at 1276.  The Court finds that the same result applies to all of Plaintiffs' claims against the Denver Defendants, except the breach of contract claim.

Next, Plaintiffs argue that the application of res judicata in this case would be "absurd," because "no homeless individual could ever again sue Denver for injunctive relief because every claim could have been brought as part of the *Lyall* case."  (ECF No. 196 at 3.)  The Court finds this argument is hyperbolic and without merit.  Homeless individuals can bring countless claims against Denver that are not barred by the *Lyall*

Settlement, though the Court will not speculate as to what those claims might encompass.  In *this* lawsuit, Plaintiffs, who bargained for and received a revised policy on cleanups in *Lyall*, now assert that the policy changes established in *Lyall* established new circumstances.  They argue in their response that the "sweeps litigated here deviated from the way that sweeps had been conducted prior to the *Lyall* settlement." (ECF No. 176 at 4.)  Suffice it to say that the Second Circuit Court of Appeals said it best:

> This semantic cartwheel would virtually eliminate the doctrine of res judicata for a significant subset of those claims resolved by settlement agreement.  Parties would have no incentive to modify a controversial policy if the amended version was subject to renewed attack.  The efficiencies created by a mutually agreeable settlement would be lost.

*Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 289 (2d Cir. 2000).

Finally, Plaintiffs argue:

> Even if the well-established rule that incidents that post-date the filing of a complaint are not barred by res judicata did not apply to this case (which it does), Supreme Court precedent dictates that where "important human values are at stake," such as those implicated in this lawsuit, "even a slight change of circumstances may afford a sufficient basis for concluding that a second action may be brought[.]"  *Whole Woman's Health*, 136 S. Ct. at 2304-09; *Cheshire Bridge Holdings, LLC v. City of Atlanta*, 777 F. App'x 310, 320 (11th Cir. 2019).  That is the case here.  "[T]ime and experience" have shown that Denver Defendants are violating Plaintiffs constitutional rights in new ways.  *Whole Woman's Health*, 136 S. Ct. at 2305.

(ECF No. 196 at 5.)  The quoted language comprises the totality of Plaintiffs' argument on this point.

Again, the Court determines that Plaintiffs' argument fails.  As an initial matter,

Plaintiffs merely state in a conclusory manner that "important human values are at stake," but they do not attempt to define what those values are, do not explain what binding, factually similar precedent might militate in favor of such values outweighing the application of res judicata, and do not otherwise develop this argument. *See United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (cursory argument not meaningfully developed by any analysis or citation is deemed waived); *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record."). Instead, Plaintiffs appear to rely on the Court to supply their arguments for them. However, the Court is "not charged with making the parties' arguments for them." *Meyer v. Bd. of Cnty. Comm's*, 482 F.3d 1232, 1242 (10th Cir. 2007); *Est. of McIntire ex rel. McIntire v. City of Boulder*, 61 F. App'x 639, 643 (10th Cir. 2003) ("It is not the responsibility of the court to search the record to find justification for representations made in the briefs.") (citations omitted).  This the Court will not do.

Regardless, the Court finds it important to highlight an important fact: that Plaintiffs are not without a remedy for their claims.  They may still bring a claim for breach of the *Lyall* Settlement in state court.

**B.     Breach of Contract (Claim 13)**

The Supreme Court has spoken regarding federal courts' jurisdiction to enforce settlement agreements.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994.  In short, enforcing a settlement agreement is usually a question of enforcing a contract under state law and creates no federal jurisdiction unless

> the parties' obligation to comply with the terms of the
> settlement agreement had been made part of the order of
> dismissal—either by separate provision (such as a provision

> "retaining jurisdiction" over the settlement agreement) or by
> incorporating the terms of the settlement agreement in the
> order.  In that event, a breach of the agreement would be a
> violation of the order, and ancillary jurisdiction to enforce the
> agreement would therefore exist.

*Id.* at 381.

As previously noted in the PI Order (ECF No. 150 at 25), this Court did not retain

jurisdiction over the litigation post-judgment, nor did it incorporate the terms of the *Lyall*

Settlement into the Final Judgment that dismissed the case.  (ECF No. 14-2); *see Lyall*

*v. City of Denver*, Case No. 16-v-2155-WJM-SKC, ECF No. 226 (D. Colo. Sept. 23,

2019).  Thus, no federal jurisdiction exists to enforce the *Lyall* Settlement simply

because it led to dismissal of the lawsuit.  In these circumstances, in order to enforce

any alleged breach of the *Lyall* Settlement, Plaintiffs have no alternative but to file an

independent breach of contract action in the appropriate state court.

Moreover, the Tenth Circuit has expressed a strong preference for trial courts to

decline the exercise of supplemental jurisdiction when, as here, all federal claims have

been dismissed.  *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th

Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law,

'the federal court should decline the exercise of jurisdiction by dismissing the case

without prejudice.'") (quotation omitted).  In its Order vacating the PI Order, the Tenth

Circuit could not have been clearer in concluding that this Court lacks jurisdiction to

enforce the *Lyall* Settlement, stating:

- " . . . the district court correctly concluded it lacked jurisdiction to enforce
  the agreement."  *Denver Homeless Out Loud*, 32 F.4th at 1268;

- " . . . the district court correctly noted it lacked jurisdiction to enforce the

*Lyall* settlement agreement . . ." *Id.*;

- "We agree with the district court that we lack jurisdiction to enforce the terms of the *Lyall* settlement agreement." *Id.* at 1269;

- "The *Lyall* Final Judgment neither incorporated the agreement's terms nor expressly retained jurisdiction over the agreement.  As a result, enforcement of the *Lyall* settlement agreement is a matter for a state court." *Id.* (citation omitted); and

- "We need not retain jurisdiction over *Lyall* or its attendant settlement agreement to exercise subject matter jurisdiction over the federal question raised in this new suit." *Id.* (citation omitted).

Given these clear statements by the Tenth Circuit, the Court declines to exercise supplemental jurisdiction over the breach of contract claim and dismisses it without prejudice.

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS that:

1. The Denver Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #160) (ECF No. 176) is GRANTED;

2. Plaintiffs' Complaint (ECF No. 160) is DISMISSED as follows:

    a.    Plaintiffs' breach of contract claim is DISMISSED WITHOUT PREJUDICE; and

    b.    All of Plaintiffs' remaining claims against the Denver Defendants are DISMISSED WITH PREJUDICE, as they are precluded by the *Lyall* Settlement.

Dated this 15th day of December, 2022.

BY THE COURT:

William J. Martinez
United States District Judge